UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JUAN VARGAS, individually and on behalf of
all other similarly situated persons,

                              **Docket No. 15-cv-5101**

                         Plaintiffs,

               -against-

CHARLES W. HOWARD and CALL-A-HEAD
CORP.,

                         Defendants.
-------------------------------------------------------------------X

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT PURSUANT TO FRCP RULE 56(a)

THE SCHER LAW FIRM, LLP
One Old Country Road, Suite 385
Carle Place, New York 11514
(516) 746-5040

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES .........................................................................................ii

PRELIMINARY STATEMENT ....................................................................................1

POINT I.     STANDARD OF REVIEW FOR A MOTION FOR
             SUMMARY JUDGMENT ......................................................................1

POINT II.    PLAINTIFFS' POST-LIMINARY TIME IS NOT
             COMPENSABLE UNDER THE FLSA..................................................3

    A.     Plaintiffs' Principal Activities As A Pump Driver For CAH .......................4

    B.     The Post-liminary Activities ........................................................................5

    C.     Legal Analysis Of Post-liminary Time ........................................................6

        1. Almanzar v. C & I Assocs. ........................................................................7

        2. Perez v. City of New York.........................................................................8

        3. Bonds v. GMS Mine Repair & Maint., Inc................................................9

        4. Jones v. Hoffberger Moving Servs. LLC...................................................10

        5. Alanis v. Tracer Indus. Mgmt. Co. ...........................................................11

        6. Brand v. Comcast Corp..............................................................................12

        7. Gaytan v. G&G Landscaping Constr., Inc.................................................14

POINT III.   THE PLAINITFFS HAVE NOT PLED NOR ASSERTED
             CLAIMS FOR "GAP-TIME" AND SHOULD NOT BE
             PERMITTED TO ADD TO ITS CLAIM IN RESPONSE
             TO THIS MOTION ...............................................................................15

CONCLUSION.............................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Alanis v. Tracer Indus. Mgmt. Co.,* 2016 U.S. Dist. LEXIS 108145, *5-8,
2016 WL 4371535 (E.D. Tex. Aug. 16, 2016) ............................................................ 11

*Alanis v. Tracer Indus. Mgmt. Co.,* 2016 U.S. Dist. LEXIS 108542, *39-40
(E.D. Tex. July 31, 2016)............................................................................................ 12

*Almanzar v. C & I Assocs.,* 175 F. Supp. 3d 270, (S.D.N.Y. 2016) ............................ 7

*Bonds v. GMS Mine Repair & Maint., Inc.,* 2015 U.S. Dist. LEXIS 127769,
2015 WL 5602607 (W.D. Pa. 2015) ............................................................................. 9

*Brand v. Comcast Corp.,* 135 F. Supp. 3d 713, 731 (N.D. Ill. 2015) .................... 12, 13

*Gaytan v. G&G Landscaping Constr., Inc.,* 145 F. Supp. 3d 320, 325
(D.N.J. 2015)............................................................................................................... 14

*Integrity Staffing Solutions, Inc. v. Busk,* 135 S. Ct. 513 (2014) ......................... 4, 6, 15

*Jones v. Hoffberger Moving Servs. LLC,* 92 F. Supp. 3d 405, 411-412 (D.
Md. 2015)..................................................................................................................... 10

*Lener v. Hempstead Pub. Sch.,* 55 F. Supp. 3d 267, 283-286 (E.D.N.Y.
2014) ...................................................................................................................... 17, 19

*Lloyd v. City of New York,* 2017 U.S. Dist. LEXIS 49526, *24-25 (S.D.N.Y.
Mar. 31, 2017) (Woods, J.).......................................................................................... 1

*Lundy v. Catholic Health Sys. of Long Island, Inc.,* 711 F.3d 106, 118 (2d
Cir. 2013).............................................................................................................. 15, 19

*Mergers & Acquisition Servs. v. Eli Global, LLC,* 2017 U.S. Dist. LEXIS
45028, *18-19 (S.D.N.Y. Mar. 27, 2017) (Woods, J.) ................................................ 2

*Nakahata v. New York-Presbyterian Healthcare Sys.,* 723 F.3d 192, 201-
202 (2d Cir. 2013)....................................................................................................... 16

*Perez v. City of New York,* 832 F.3d 120, 123 (2d Cir. 2016) ..................................... 8

*Wolman v. Catholic Health Sys. of Long Island,* 2013 U.S. Dist. LEXIS
46327, *5-7, 2013 WL 1335748 (E.D.N.Y. Mar. 29, 2013)....................................... 17

*Wolman, et al. v. Catholic Health System of Long Island, Inc. d/b/a Catholic Health Services of Long Island, et al.*, E.D.N.Y. Docket Number 10-cv-1326(JS)(MLO)....................................................................................................................... 15

**Statutes**

29 U.S.C. § 254(a)(2)................................................................................................................. 8

N.Y. Labor Law § 663.1. ......................................................................................................... 20

**Rules**

FRCP Rule 16(b)....................................................................................................................... 20

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted by the Defendants CHARLES W. HOWARD ("Howard") and CALL-A-HEAD CORP. ("CAH") (collectively referred to as "Defendants") in support of their Motion for Summary Judgment, submitted pursuant to FRCP Rule 56(a), seeking an Order dismissing the claims of the Plaintiff Juan Vargas ("Vargas") and the opt-in Plaintiffs (collectively referred to as "Plaintiffs") with respect to post-liminary, alleged off-the-clock time alleged to be work time of at least forty-five minutes a day.  *See,* **Exhibit M,** a copy of the Plaintiffs' Memorandum of Law in support of Rule 23 Motion, at page 5.

As discussed at length in this Memorandum of Law, the Affidavit of Charles W. Howard, sworn to on the 7th day of April 2017 ("Howard Affidavit") and in the Defendants' Local Rule 56.1(a) Statement of Material Facts As To Which There Is No Genuine Issue To Be Tried, this Court should grant the Defendants' Motion for Summary Judgment.

## POINT I.      STANDARD OF REVIEW FOR A MOTION FOR SUMMARY JUDGMENT

In *Lloyd v. City of New York,* 2017 U.S. Dist. LEXIS 49526, *24-25 (S.D.N.Y. Mar. 31, 2017) (Woods, J.) this Court held the standard of review for a Motion for Summary Judgment is:

> [u]nder Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that it is entitled to summary judgment. *See id.* at 256.
>
> In evaluating a motion for summary judgment, the Court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (quoting *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)).

1

"[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 65 (2d Cir. 1997)). The Court's job is not to "weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002) (citing *Anderson*, 477 U.S. at 249). "Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citing *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000)).

In *Mergers & Acquisition Servs. v. Eli Global, LLC,* 2017 U.S. Dist. LEXIS 45028, *18-19 (S.D.N.Y. Mar. 27, 2017) (Woods, J.) this Court held the standard of review for a Motion for Summary Judgment is:

A moving party is entitled to summary judgment if it can "show[ ] that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

To defeat a motion for summary judgment, the non-moving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting former Fed. R. Civ. P. 56(e)). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citations and internal quotations omitted). A party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002). Rather, the Court must decide whether a rational juror could find in favor of the nonmoving party. *Id.* In resolving cross-motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (citing *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir. 1981)).

The Defendants have produced admissible evidence in the form of the Plaintiffs' sworn testimony that reveals that there are no genuine issues of material fact as to whether the post-liminary time is compensable under the Fair Labor Standards Act ("FLSA"). The undisputed facts establish that the time is not compensable. Accordingly, the Court should grant the Defendants' Motion.

## POINT II.   PLAINTIFFS' POST-LIMINARY TIME IS NOT COMPENSABLE UNDER THE FLSA

A significant component of the Plaintiffs' claim for unpaid overtime is the alleged forty-five minute wait each day to speak with Howard. *See,* **Exhibit M,** at page 5. The Plaintiffs allege that they always clocked-out and then waited to speak with Howard so the time was not recorded and they were not paid for this time. *See,* **Exhibit F,** a copy of the deposition transcript of Edward Kubinski, at page 27, lines 3-19.[1]

Despite the Plaintiffs' argument to the contrary, this time is not compensable under the FLSA.

---

[1] While the Plaintiffs, including Jeury Marte ("Marte"), repeatedly testified that they clocked-out before waiting for Howard to speak with them, Marte recorded audio and video of himself talking with Howard and then clocking-out. *See,* **Exhibit K,** a copy of video recordings. *See,* **Exhibit L,** a copy of an audio recording.

In *Integrity Staffing Solutions, Inc. v. Busk,* 135 S. Ct. 513 (2014) the Supreme Court held that time spent waiting to undergo and undergoing security screenings is not compensable under the FLSA.  The Court held that the time was not compensable because the screenings were not "integral and indispensable" to the employees' duties as warehouse workers.

The Court held that "an activity is not integral and indispensable to an employee's principal activities unless it is an intrinsic element of those activities and one … which the employee cannot dispense [with] if he is to perform those activities." *Integrity Staffing Solutions, Inc. v. Busk,* 135 S. Ct. at 518.

It is important therefore, to examine how the Plaintiffs self-described their principal activities while working for CAH to see if the post-liminary activities were integral and indispensable to the Plaintiffs' principal activities as an employee of CAH.

**A.      Plaintiffs' Principal Activities As A Pump Driver For CAH**

Carlos Velasquez ("Velasquez") testified that his job function was to

> basically clean the [portable toilet] units.  And we used to have a
> certain amount of stops each day.  Clean those units, to the best of
> our abilities.  And after I completed my route, if you can complete
> the route, take the stuff, the feces over to a certain location, dump it
> and come back.

**Exhibit G,** a copy of the deposition transcript of Carlos Velazquez, at page 8, line 25 through page 9, line 15.

Vargas testified that CAH would give the Plaintiffs "a route with thirty stops so that I can go clean bathrooms."  **Exhibit J**, a copy of the deposition transcript of Juan Vargas, at page 9, lines 10-13.

Howard told prospective employees that the Plaintiffs' job "would be cleaning Porta Potties" and the Plaintiffs were hired to clean Porta Potties. **Exhibit F,** a copy of the deposition transcript of Edward Kubinski, at page 7, lines 14-19; page 8, lines 9-15.

The Plaintiffs' duties were to clean toilets and drive trucks. *See,* **Exhibit E,** a copy of the deposition transcript of Jeury Marte, at page 8, lines 2-8.

The Plaintiffs were pump drivers which, Girolamo Genova ("Genova") defined as "[d]rive, go to stops, clean toilets." **Exhibit D,** a copy of the deposition testimony of Girolamo Genova , at page 7, line 23 through page 8, lines 2-3.

Peter Fowler ("Fowler") testified that he drove a vehicle to places to clean toilets. *See,* **Exhibit C,** a copy of the deposition of Peter Fowler, at page 7, lines 14-25.

The Plaintiffs' testimony is consistent with their allegation in their Amended Complaint in this Action that the Plaintiffs were drivers of trucks to locations where they cleaned portable toilets. *See,* **Exhibit A,** a copy of the Amended Complaint, at ¶ 26.

B.     **The Post-liminary Activities**

The Plaintiff Ricardo Whitaker ("Whitaker") testified that after returning from driving the trucks and cleaning portable toilets, he would go to the office to "hand in my route." **Exhibit H,** a copy of the deposition transcript of Ricardo Whitaker, at page 21, lines 2-8; page 49, lines 17-20.

Velazquez testified that upon returning to CAH's facilities at the end of the day, he would go into CAH's offices to "turn in my paperwork." **Exhibit G,** at page 29, lines 6-9.

Vargas testified that he was required to wait for Howard "to look over the paperwork." **Exhibit J,** at page 30, lines 4-7. Kubinski testified that the Plaintiffs would "bring our paperwork, wait for them to go over it." **Exhibit F,** at page 66, lines 15-20. Marte testified that the people

who would review the Plaintiffs' paperwork were the "dispatchers." **Exhibit E**, at page 28, lines 19-25.

Howard testified that when the Plaintiffs were handing in their paperwork, he would communicate with them during this post-liminary time to discuss with them lost accounts, if they did not dump correctly, got a ticket, or got into an accident. *See*, **Exhibit I**, at page 51, line 5 through page 52, line 8.

Marte video recorded and audio recorded several post-liminary interactions with Howard. *See*, **Exhibit K**, videos recorded by Marte and disclosed during discovery. *See*, **Exhibit L**, an audio recording by Marte and disclosed during discovery. These audio recording and video recordings are consistent with the Plaintiff's and Howard's testimony.

The alleged post-liminary time spent waiting to speak with Howard was not integral and indispensable to the Plaintiffs' principal activities of driving a truck and cleaning portable toilets. The waiting time and communications with Howard were not an intrinsic element of their job duties for CAH.

### C.     Legal Analysis Of Post-liminary Time

The Court in *Integrity* held

> an activity is not integral and indispensable to an employee's principal activities unless it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform those activities. The screenings were not an intrinsic element of retrieving products from warehouse shelves or packaging them for shipment. And Integrity Staffing could have eliminated the screenings altogether without impairing the employees' ability to complete their work.

*Integrity Staffing Solutions, Inc. v. Busk,* 135 S. Ct. at 518.

Following *Integrity Staffing Solutions, Inc.*, numerous Courts across the country have had an opportunity to analyze fact patterns to determine whether post-liminary or preliminary time was compensable. Numerous Courts have held that, like in this case, when the activities are not integral and indispensable to the employee's principal activities, the time is not compensable.

      1.     *Almanzar v. C & I Assocs.*

The post-liminary time at issue in this case is very similar to the time that the Court in *Almanzar v. C & I Assocs.*, 175 F. Supp. 3d 270, (S.D.N.Y. 2016) held was not compensable. In *Almanzar*, the Court held

> [t]he time that plaintiffs spend in the evening returning equipment and completing paperwork is different. Plaintiffs are employed to install, maintain, and upgrade cable systems for Cablevision customers, (Pls.' 56.1 ¶ 2; Defs.' 56.1 ¶ 2), not to return equipment to a warehouse or to fill out paperwork. The tasks completed during the evening return time are thus not principal activities. *Busk*, 135 S. Ct. at 517. Similarly, those tasks are not "integral and indispensable" to any principal activity. Simply put, dispensing with the evening return time would not hamper the technicians' ability to efficiently and effectively service Cablevision's customers. Any arguments to the contrary were rejected in *Busk*. It is irrelevant that Associates and Telecom required the evening return time; that they could have shortened the duration of that time; and that the time primarily benefited the employer. *Id.* at 519. The evening return time is postliminary, not "integral and indispensable," and thus not compensable.

*Almanzar v. C & I Assocs.*, 175 F. Supp. 3d at 277-278.

The Plaintiffs repeatedly testified that the post-liminary time was spent handing in their route and paperwork. *See,* **Exhibit H**, at page 21, lines 2-8; page 49, lines 17-20; **Exhibit G**, at page 29, lines 6-9; **Exhibit J**, at page 30, lines 4-7; **Exhibit F**, at page 66, lines 15-20; **Exhibit E**, at page 28, lines 19-25.

The Plaintiffs' tasks for CAH were driving a truck, cleaning the portable toilets and dumping the feces at a waste station. *See,* **Exhibit G,** at page 8, line 25 through page 9, line 15; **Exhibit J**, at page 9, lines 10-13; **Exhibit F**, at page 7, lines 14-19; page 8, lines 9-15; **Exhibit E,** at page 8, lines 2-8; **Exhibit D**, at page 7, line 23 through page 8, lines 2-3; **Exhibit C**, at page 7, lines 14-25.

Handing in paperwork and discussing issues regarding their day with Howard was not integral and indispensable to their principal activities for CAH.

The Court in *Almanzar* determined that the plaintiffs' evening post-liminary work was not compensable, as a matter of law on a summary judgment motion. The facts in this case are very similar and this Court should similarly hold that the Plaintiffs' post-liminary time is not compensable.

>           2.     *Perez v. City of New York*

In *Perez v. City of New York,* 832 F.3d 120, 123 (2d Cir. 2016) the Court, quoting 29 U.S.C. § 254(a)(2), held that "the FLSA does not require payment for time spent on 'activities which are preliminary to or postliminary to' an employee's principal activities."

The Court in *Perez* stated that "an employee's pre-and post-shift preparation of items used to perform principal activities can qualify as integral and indispensable" and it went on to point out that "Courts have also concluded that an employee's pre-and post-shift efforts to protect against heightened workplace dangers can qualify as integral and indispensable." *Perez v. City of New York,* 832 F.3d at 124.

In this case, the post-liminary waiting time and communications with Howard did not require the Plaintiffs to perform any activities, prepare anything for work the next day, or take any steps to protect themselves from workplace dangers. *See,* Howard Affidavit, at ¶ 2. They did not don and doff clothes or perform any tasks that were integral to the principal activities of their duties as drivers and cleaners of portable toilets during the waiting period or in their communications

with Howard. *See,* Howard Affidavit, at ¶ 2. They were simply dropping off their paperwork. *See,* **Exhibit H**, at page 21, lines 2-8; page 49, lines 17-20; **Exhibit G**, at page 29, lines 6-9; **Exhibit J**, at page 30, lines 4-7; **Exhibit F**, at page 66, lines 15-20; **Exhibit E**, at page 28, lines 19-25.

This Court should hold that the Plaintiffs' post-liminary time is not compensable.

3.     *Bonds v. GMS Mine Repair & Maint., Inc.*

In *Bonds v. GMS Mine Repair & Maint., Inc.,* 2015 U.S. Dist. LEXIS 127769, 2015 WL 5602607 (W.D. Pa. 2015) the Court determined that pre-shift safety meetings for miners are not compensable preliminary activities. The miners "perform underground labor related to its contracted mining operations — constructing (ventilation) walls, building track, masonry, spraying walls, gopher drilling, longwall set up/recovery, etc. — as well as the above-ground activities (such as readying parts and resupplying) which were actually necessary to conduct and complete that work." *Bonds v. GMS Mine Repair & Maint., Inc.,* 2015 U.S. Dist. LEXIS 127769, * 36.

> Nor were the pre-shift safety meetings "integral and indispensable" to those principal activities. Attendance at a pre-shift safety meeting (while perhaps desirable) is not an intrinsic element of conducting underground mining activities. It is instead the sort of activity that is "two steps removed" from the productive activity that, in this case, occurs underground. GMS also could have eliminated the pre-shift safety meetings altogether without impairing the miners ability to conduct their work. In other words, the miners are able to perform underground labor regardless of whether they attended the pre-shift meetings

*Bonds v. GMS Mine Repair & Maint., Inc.,* 2015 U.S. Dist. LEXIS 127769, *36-37.

Just like in *Integrity Staffing Solutions Inc.* and *Bonds,* CAH could have eliminated the waiting time and meeting with Howard altogether without impairing the Plaintiffs' ability to complete their work for CAH. *See,* Howard Affidavit, at ¶ 4.

Similarly, in this case, the post-liminary meetings are not "integral and indispensable" to the Plaintiffs' principal activities of driving to job sites and cleaning portable toilets. The waiting time and communications with Howard is not an intrinsic element of cleaning portable toilets.

*Bonds* is consistent with the Defendants' argument that the Court should determine that the Plainitffs' post-liminary time is not compensable.

4.    *Jones v. Hoffberger Moving Servs. LLC*

In *Jones v. Hoffberger Moving Servs. LLC*, 92 F. Supp. 3d 405, 411-412 (D. Md. 2015) the Court, on summary judgment, held that time spent by movers waiting at a warehouse before traveling to job sites was not compensable.   The Court held that "[w]ithout waiting at the warehouse each morning, Plaintiffs would have still been able to load and unload Defendants' trucks for Defendants' clients—the job Plaintiffs were employed to perform—by arriving directly at the jobsites."

In *Jones*, the Court held

> [t]he Supreme Court expressly directed that courts should neither consider simply "whether the activity is for the benefit of the employer," nor should courts focus on whether an employer *required* a particular activity." *Integrity Staffing*, 135 S. Ct. at 519. Instead, "[t]he integral and indispensable test is tied to the productive work that the employee is *employed to perform*." *Id.* Taking the facts in the light most favorable to Plaintiffs, no reasonable jury could find that Plaintiffs' time spent waiting at the warehouse each morning is integral and indispensable to loading and unloading moving trucks for Defendants' clients, and thus this wait time is not compensable under the FLSA.

*Jones v. Hoffberger Moving Servs. LLC*, 92 F. Supp. 3d at 412.

Similarly, in this case, the Plaintiffs were employed to perform driving, cleaning portable toilets, and driving to a waste station. *See,* **Exhibit G,** at page 8, line 25 through page 9, line 15; **Exhibit J,** at page 9, lines 10-13; **Exhibit F,** at page 7, lines 14-19; page 8, lines 9-15; **Exhibit E,**

at page 8, lines 2-8; **Exhibit D**, at page 7, line 23 through page 8, lines 2-3; **Exhibit C**, at page 7, lines                                                                                                                        14-25.

The Plaintiffs' time spent waiting to speak with Howard was not integral and indispensable to their principal activities with respect to their work for CAH.  The Defendants' Motion for Summary Judgment should be granted.

5.    *Alanis v. Tracer Indus. Mgmt. Co.*

In *Alanis v. Tracer Indus. Mgmt. Co.,* 2016 U.S. Dist. LEXIS 108145, *5-8, 2016 WL 4371535 (E.D. Tex. Aug. 16, 2016), the Court upheld a Magistrate Judge's Report and Recommendation denying the plaintiffs compensation for time when they were doffing and donning personal protective equipment ("PPE").  The Court rejected the plaintiffs' argument that because the PPE was required by the employer's standard safety protocol the time putting on and taking off the equipment was compensable.  The Court stated:

> [a]fter considering the record, the Court agrees that the PPE at issue here was not integral and indispensable to the plaintiffs' work. Even if it were integral and indispensable, the plaintiffs' PPE claim does not rise above the level of *de minimis* because their own testimony shows that it took no more time to don and doff their PPE than it would to dress in regular clothes.

*Alanis v. Tracer Indus. Mgmt. Co.,* 2016 U.S. Dist. LEXIS 108145, *7-8.

The Magistrate Judge in his Report and Recommendation described what the plaintiffs were allowed to do during the waiting period.

> While waiting, the plaintiffs were permitted to engage in personal activities such as eating, resting, talking and smoking. Simply waiting for work to begin does not constitute compensable time when it is not an integral part of the employee's principal activities. *See Busk*, __ U.S. __, 135 S. Ct. at 519.  Plaintiffs point to evidence that they were required to report to work 15-20 minutes early and were ready to start working at that time. *See Response*, at p. 21.

However, during this time, plaintiffs were permitted to engage in personal activities. They have not pointed to evidence supporting the contention that by simply being there 15-20 minutes early and waiting constitutes a principal activity for which they were employed. Of course, the Court found that factual issues exist on the compensability of pre-shift time engaging in certain alleged work-related activities as discussed above. However, to the extent that the plaintiffs are claiming that they are entitled to compensation solely based on the contention that they appeared for work 15-20 minutes early and had to wait to begin their workday, the defendant has carried its summary judgment on those claims based on the evidence and circumstances of the case. Tracer is therefore entitled to summary judgment on the plaintiffs' straight waiting time claims.

*Alanis v. Tracer Indus. Mgmt. Co.*, 2016 U.S. Dist. LEXIS 108542, *39-40 (E.D. Tex. July 31, 2016).

In this case, during the Plaintiffs' waiting time they were permitted to engage in personal activities such as eating, resting, talking, and smoking. *See,* Howard Affidavit, at ¶ 3. *See,* **Exhibit K**. In addition, despite the Plaintiffs' claims that they waited up to forty-five minutes to speak with Howard every day, they have no documentary or testimonial evidence of this claim, other than their own self-serving statements.

However, the video recordings and audio recording made by Marte (**Exhibits K** and **L**) reflect that the time waiting is not forty-five minutes, but more like Howard's testimony of five, maybe fifteen minutes at most. *See,* **Exhibit I**, at page 51, lines 5-8. In one audio recording, Marte states he was waiting for Howard for twenty-five minutes. *See* **Exhibits L**, at approximately 12:00.

The facts in the *Alanis* case is similar to the facts in this Action and its holding is consistent with what this Court should determine in this Action.

6.    *Brand v. Comcast Corp.*

In *Brand v. Comcast Corp.*, 135 F. Supp. 3d 713, 731 (N.D. Ill. 2015) held that "communication between the employee and employer to receive assignments or instructions, or to transmit advice on work progress or completion, as well as 'routine vehicle safety inspections or

other minor tasks' are included among the incidental activities which are not compensable under the [Employee Commuting Flexibility Act]."[2]

The Court in *Brand* reasoned

> It is clear that Comcast required these tasks, and that they were necessary by-products of the plaintiffs' use of Comcast vehicles in the course of their commute. But that is not the same as demonstrating that they are indispensable activities to the work Comcast employs them to perform—namely, repairing cable outages. "The fact that certain pre-shift activities are necessary for employees to engage in their principal activities does not mean that those pre-shift activities are 'integral and indispensable' to a 'principal activity.'" *IBP, Inc. v. Alvarez*, 546 U.S. 21, 40-41, 126 S. Ct. 514, 163 L. Ed. 2d 288 (2005). Nor does the fact that a given task increases the efficiency of a principal activity mean that it is integral and indispensable to that activity. *Dinkel v. MedStar Health Inc.*, 99 F. Supp. 3d 37, No. 11-998, 2015 U.S. Dist. LEXIS 49819, 2015 WL 1735078, at *3-4 (D.D.C. Apr. 16, 2015). The plaintiffs simply have not shown that the activities they point to are intrinsic aspects of the work of a line technician or are indispensable to that work. For these reasons, the court agrees with Comcast that under the ECFA, the pre- and post-shift activities the plaintiffs claim they engaged in here are incidental to their use of a Comcast vehicle for commuting purposes, and therefore are not compensable under the ECFA. *See* 29 U.S.C. § 254(a).

*Brand v. Comcast Corp.*, 135 F. Supp. 3d at 733-734.

This Court should similarly hold that the post-liminary time in this case is not compensable because it is not integral and indispensable to the principal activities and duties of the Plaintiffs. The communications between the Plaintiffs and Howard regarding his advice about their work performance (**Exhibit I**, at page 50, line 16 through page 51, line 4) are incidental activities, which are not compensable.

---

[2] The Employee Commuting Flexibility Act ("ECFA") "clarifies the rules regarding payment for time employees spend using employer-provided vehicles for their commute." *Brand v. Comcast Corp.*, 135 F. Supp. 3d at 730.

7.      *Gaytan v. G&G Landscaping Constr., Inc.*

In *Gaytan v. G&G Landscaping Constr., Inc.,* 145 F. Supp. 3d 320, 325 (D.N.J. 2015) the Court examined whether loading trucks with necessary tools and materials, checking the tire pressure, oil and other fluids in the truck, and greasing machines needed for that particular day was compensable time. The Court held that the work by the Plaintiffs, who were landscapers, "that this kind of work was 'integral and indispensable to the principal activities.' *See Integrity Staffing*, 135 S. Ct. at 517. As such, the Shop Time Work is compensable time under the FLSA."

The Plaintiffs do not allege, nor do they testify that they performed any work to load their trucks or prepare their trucks for the next day during the post-liminary time. They simply testified that they went to the office to hand in their paperwork from their route. *See,* **Exhibit H**, at page 21, lines 2-8; page 49, lines 17-20; **Exhibit G**, at page 29, lines 6-9; **Exhibit J**, at page 30, lines 4-7; **Exhibit F**, at page 66, lines 15-20; **Exhibit E**, at page 28, lines 19-25.

This case is distinguishable from *Gaytan*. While *Gaytan* is distinguishable on its facts, it provides this Court with a contrast between facts where a Court has deemed post-liminary time compensable with the facts in this case where the Court should determine the Plaintiffs' post-liminary time not compensable.

**************

The Plaintiffs will argue that the post-liminary time was required by the Defendants and therefore compensable. This argument was rejected by the Court in *Integrity Staffing Solutions, Inc.*

> If the test could be satisfied merely by the fact that an employer required an activity, it would sweep into "principal activities" the very activities that the Portal-to-Portal Act was designed to address. The employer in *Anderson*, for instance, required its employees to walk "from a timeclock near the factory gate to a workstation" so that they could "begin their work," "but it is indisputable that the Portal-to-Portal Act evinces Congress' intent to repudiate

> *Anderson*'s holding that such walking time was compensable under the FLSA." *IBP*, *supra*, at 41, 126 S. Ct. 514, 163 L. Ed. 2d 288.  A test that turns on whether the activity is for the benefit of the employer is similarly overbroad.

*Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. at 519.

The Court must examine whether what occurred during this post-liminary time is integral and indispensable to the principal activities that CAH employed the Plaintiffs to perform.  Since they are not, this Court should grant the Defendants' Motion for Summary Judgment and hold that the Plaintiffs' claim for post-liminary time, alleged to be up to forty-five minutes per day, is not compensable under the FLSA.

**POINT III.   THE PLAINTIFFS HAVE NOT PLED NOR ASSERTED CLAIMS FOR "GAP-TIME" AND SHOULD NOT BE PERMITTED TO ADD TO ITS CLAIM IN RESPONSE TO THIS MOTION**

In *Wolman, et al. v. Catholic Health System of Long Island, Inc. d/b/a Catholic Health Services of Long Island, et al.*, E.D.N.Y. Docket Number 10-cv-1326(JS)(MLO) ("Wolman Action") the plaintiffs alleged that they were entitled to pay for pre- and post-schedule work.  *See,* **Exhibit N**, a copy of the Complaint in *Wolman*, at ¶¶ 101 through 128.

The Plaintiffs make no such allegations in their Amended Complaint.  *See,* **Exhibit A**.  The Plaintiffs' causes of action only allege unpaid overtime under the FLSA and the New York Labor Law.  *See,* **Exhibit A**, at ¶¶ 79 through 98.  The Plaintiffs assert no claims in their Amended Complaint for post-liminary work.  *See,* **Exhibit A**.

In *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 118 (2d Cir. 2013) (the Wolman Action), the Court recognized, for the first time, a claim for "gap-time" pursuant to New York Labor Law § 663.1., which provides for full recovery of all unpaid straight-time wages owed.  The Defendants have found no New York State Court that recognized such a claim under the New York Labor Law.

In *Nakahata v. New York-Presbyterian Healthcare Sys.*, 723 F.3d 192, 201-202 (2d Cir. 2013) the Court expanded upon its holding in *Lundy*

> Gap-time claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Lundy*, 711 F.3d at 115.
>
> As discussed in *Lundy*, the FLSA does not provide a cause of action for unpaid gap time. *Id.* at 116-17. The FLSA statute requires payment of minimum wages and overtime wages only, *see* 29 U.S.C. §§ 201-19 (2006); therefore, the FLSA is unavailing where wages do not fall below the statutory minimum and hours do not rise above the overtime threshold. *Lundy*, 711 F.3d at 115. The FLSA is unavailing even when an employee works over 40 hours per week and claims gap-time wages for those hours worked under 40 per week, unless the wages fall below the minimum threshold. This is because the statutory language simply does not contemplate a claim for wages other than minimum or overtime wages. *Id.* at 116-17. For this reason, we affirm the District Court's dismissal with prejudice of any gap-time claims made pursuant to the FLSA.
>
> Plaintiffs may, however, have a gap-time claim pursuant to the NYLL. *Lundy* acknowledged, without deciding, that a gap-time claim would be consistent with the language of NYLL § 663(1), which states that "[i]f any employee is paid by his or her employer less than the wage to which he or she is entitled . . . he or she shall recover in a civil action the amount of any such underpayments...." N.Y. Lab. Law § 663(1) (McKinney Supp. 2012), as amended by Wage Theft Prevention Act, ch. 564, § 16, 2010 N.Y. Sess. Laws 1446, 1457 (McKinney); *Lundy*, 711 F.3d at 118. *Lundy* remanded the NYLL gap-time claim because, while the District Court had acknowledged the possibility of such a claim, it inconsistently dismissed all of the NYLL claims with prejudice. *Lundy*, 711 F.3d at 118.
>
> In this case, the District Court dismissed the gap-time claims on the same basis as the overtime claims without acknowledging the separate standard for a gap-time claim. Unlike an overtime claim, a gap-time claim requires no predicate showing of minimum hours worked; rather, an allegation of hours worked without compensation may give rise to a gap-time claim. Nonetheless, in the first instance it is for the trial court to decide whether the allegations in the complaints are plausible. Because the District Court did not

consider the NYLL gap-time claims separately from the overtime claims, and because Plaintiffs will have an opportunity to amend their pleadings, we remand the NYLL gap-time claims to the District Court to consider in light of any amended pleadings.

On remand from the Second Circuit, the Court in *Wolman* again dismissed the plaintiff's New York Labor Law claim for "gap-time." The Court reasoned that despite numerous attempts to amend the complaint, the plaintiff could not adequately plead that the defendants were the plaintiffs' employer and permitting a further amendment would be futile. *See, Wolman v. Catholic Health Sys. of Long Island,* 2013 U.S. Dist. LEXIS 46327, *5-7, 2013 WL 1335748 (E.D.N.Y. Mar. 29, 2013).

In this Action, the Plaintiffs have failed to plead a claim for "gap-time." The Plaintiffs' Amended Complaint does not assert any facts that the post-liminary time that the Defendants argue is not compensable under the FLSA, is a claim the Plaintiffs seek to receive compensation for under the New York Labor Law. *See,* **Exhibit A.**

In *Lener v. Hempstead Pub. Sch.,* 55 F. Supp. 3d 267, 283-286 (E.D.N.Y. 2014) the Court addressed the amendment of the plaintiff's complaint at the summary judgment stage of the Action.

> Federal Rule of Civil Procedure 15(a) ("Rule 15") applies to motions to amend the pleadings. Under Rule 15(a), leave to amend "shall be freely granted when justice so requires." Motions for leave to amend should be denied only for reasons such as undue delay, bad faith, futility of the amendment or prejudice to the other party. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 603-04 (2d Cir. 2005); *see also Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("One appropriate basis for denying leave to amend is that the proposed amendment is futile."). Generally, a proposed amendment interposed in response to a motion to dismiss will be deemed futile if it would be subject to dismissal for failure to state a claim. *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)). The standard governing the propriety of an amendment

> is different where ... the cross-motion [to amend] is
> made in response to a [Rule] 56 motion for summary
> judgment, and the parties have fully briefed the issue
> [of] whether the proposed amended complaint could
> raise a genuine issue of fact and have presented all
> relevant evidence in support of their positions.  In the
> latter situation, even if the amended complaint would
> state a valid claim on its face, the court may deny the
> amendment as futile when the evidence in support of
> the plaintiff's proposed new claim creates no triable
> issue of fact and the defendant would be entitled to
> judgment as a matter of law under [Rule] 56(c).

*Id.*

If the Plaintiffs seek permission to amend their Amended Complaint, it should be denied. Despite conducting discovery on this matter, including responding to deposition questions regarding the post-liminary time (*see,* **Exhibit H**, at page 21, lines 2-8; page 49, lines 17-20; **Exhibit G**, at page 29, lines 6-9; **Exhibit J**, at page 30, lines 4-7; **Exhibit F**, at page 66, lines 15-20; **Exhibit E**, at page 28, lines 19-25) and responding to Interrogatories where the Interrogatory Responses included claims for post-liminary time waiting for Howard, the Plaintiffs never sought to amend the Amended Complaint.  *See,* **Exhibit O,** a copy of Interrogatory Responses for Edward Kubinskio, at Interrogatory Response Numbered 7.

The Plaintiffs would only be proposing to amend the Amended Complaint to assert a claim that, in the twenty-two months this Action has been litigated, has not yet been asserted.

Additionally, FRCP Rule 16(b)

> applies to motions to amend the pleadings for cases that have
> progressed beyond the deadline set for amendments to the pleadings.
> By limiting the time for amendments, the rule is designed to offer a
> measure of certainty in pretrial proceedings, ensuring that at some
> point both the parties and the pleadings will be fixed. *U.S.
> Underwriters Ins. Co. v. Ziering*, No. 06-CV-1130 (JFB)(WDW),
> 2010 U.S. Dist. LEXIS 88883, 2010 WL 3419666, at *3 (E.D.N.Y.
> Aug. 27, 2010) (quoting *Parker v. Columbia Pictures Indus.*, 204
> F.3d 326, 339-40 (2d Cir. 2000)).  Under Rule 16(b), a party may
> obtain a modification of the scheduling order only "upon a showing
> of good cause."  According to the Second Circuit, "the primary

consideration" in determining whether good cause has been shown
"is whether the moving party can demonstrate diligence." *Kassner
v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).

*Lener v. Hempstead Pub. Sch.,* 55 F. Supp. 3d at 284, at fn. 15.

Any proposed amendments would be in violation of this Court's Scheduling Order. *See,*
**Exhibit P,** a copy of the Court's Scheduling Order, at § 4. The deadline set by the Court to amend
the pleadings was 30 days after August 14, 2015 or September 13, 2015. *See,* **Exhibit P**. Any
proposed amendment is untimely and no good cause can be shown by the Plaintiffs because the
Plaintiffs have failed to act with diligence to amend their Amended Complaint to assert "gap-time"
claims.

Finally, any alleged "gap-time" claim would be futile for two reasons.

First, no New York State Court nor the New York State Commissioner of Labor has opined
about "gap-time" claims in New York. The first Court to do so was *Lundy* and the subsequent
cases that discuss "gap-time" claims all cite to *Lundy*, yet the Court in *Lundy* made clear that

> [w]e express no view as to the merits of NYLL gap-time claims, or
> as to the adequacy of Plaintiffs' pleading. But because New York
> law may recognize Plaintiffs' NYLL gap-time claims, the district
> court erred in dismissing them with prejudice based solely on its
> dismissal of Plaintiffs' FLSA claims. We therefore affirm the
> dismissal of Plaintiffs' NYLL overtime claims, but vacate the
> dismissal of Plaintiffs' NYLL gap-time claims and remand for
> further consideration in that narrow respect.

*Lundy v. Catholic Health Sys. of Long Island, Inc.,* 711 F.3d at 118.

The *Lundy* Court simply stated that New York Labor Law **_may_** recognize gap-time claims,
not that New York Labor Law **_does_** recognize such a claim.

This Court should not expand the New York Labor Law. This Court should leave it, in the first instance, to the New York State Legislature to write such a gap-time claim into the law, and it should not be judicially created by a federal court in New York.

Second, N.Y. Labor Law § 663.1., which was cited by *Lundy* as the basis for a gap-time claim, provides an affirmative defense to any employer who is accused of underpaying its employees. N.Y. Labor Law § 663.1. states:

> By employee. If any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments, together with costs all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due. Any agreement between the employee, and the employer to work for less than such wage shall be no defense to such action.

The Defendants, believe, in good faith, that the post-liminary time is not compensable under the precedent of *Integrity Staffing Inc*. The Defendants have a good faith belief that the time waiting for Howard was not compensable and was not covered by the New York Labor Law. *See,* Howard Affidavit, at ¶ 5. This Court should not create a new claim for gap-time when one does not exist under the New York Labor Law.

Accordingly, the Plaintiffs' potential claim for gap-time should be rejected by the Court.

## CONCLUSION

The Defendants' Motion for Summary Judgment should be granted.

The post-liminary time waiting for Howard is not compensable and this Court should rule, as a matter of law, that what the Plaintiffs were required to do during that post-liminary time is not "integral and indispensable" to the Plaintiffs' principal activities for CAH.

Finally, this Court should not impose upon the Defendants a new, unrecognized claim for gap-time that was not pled and has not been recognized by any New York State Court.

Accordingly, the Defendants' Motion for Summary Judgment should be granted.

Dated:      Carle Place, New York
            April 10, 2017

                          Respectfully submitted,

                          THE SCHER LAW FIRM, LLP

                          Austin Graff
                          *Attorneys for the Defendants*
                          One Old Country Road, Suite 385
                          Carle Place, New York 11514
                          (516) 746-5040