hcl2varC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    -------------------------------x

3    JUAN VARGAS, *et al.*,

4                    Plaintiffs,              New York, N.Y.

5              v.                             15 Civ. 5101(GHW)

6    CALL-A-HEAD CORP. & CHARLES
     HOWARD,
7
                    Defendants.
8
     -------------------------------x
9
                                             December 21, 2017
10                                           2:10 a.m.

11   Before:

12                      HON. GREGORY H. WOODS,

13                                           District Judge

14

15

                            APPEARANCES
16                         (via telephone)

17

     THE MARLBOROUGH LAW FIRM, P.C.
18        Attorneys for Plaintiffs
     BY:  CHRISTOPHER MARLBOROUGH
19

20   SLATER SLATER SCHULMAN LLP
          Attorneys for Plaintiffs
21   BY:  ADAM P. SLATER
          ANTHONY R. PORTESY
22

23   THE SCHER LAW FIRM LLP
          Attorneys for Defendants
24   BY:  AUSTIN R. GRAFF

25

hcl2varC

1        (In chambers)

2        THE COURT:  This is Judge Woods.  Do I have counsel

3    for plaintiffs on the line?

4        MR. MARLBOROUGH:  Your Honor, for plaintiffs, it is

5    Chris Marlborough, of the Marlborough Law Firm, and Anthony

6    Portesy and Adam Slater of Slater Slater Shulman.

7        THE COURT:  Thank you very much.

8        Do I have counsel for defendants on the line?

9        MR. GRAFF:  Yes, your Honor.  It is Austin Graff.

10   Good afternoon.

11       THE COURT:  Thank you very much.  Good afternoon.

12       I scheduled this conference to discuss the pending

13   summary judgment motion.  I also hope to discuss at least

14   briefly the class action certification motion that's currently

15   pending before the court.  I have reviewed all of the

16   submissions in connection with the summary judgment motion and

17   have considered the parties' arguments and the affidavits

18   submitted in support of those motions.

19       I wanted to hear either if either party wanted to add

20   anything to the written submissions or arguments presented to

21   the court.

22       Counsel for defendants.

23       MR. GRAFF:  Your Honor, after the court scheduled this

24   conference, I did a little additional research and I just want

25   to point one additional case that came out November of 2017

hcl2varC

1    from the Western District of New York.

2              THE COURT:  Thank you.  Proceed.

3              MR. GRAFF:  It is *Garmon v. The Board of Education.*

4    Sorry I only have the Lexis site.  It is *Garmon v. Board of*

5    *Education*, 2017 U.S. Dist. LEXIS 182825.  In that case, the

6    court addressed whether the cleaning of security officers'

7    security clothing was compensable, and the court found that it

8    was not because it was not activities which are integral to the

9    task of security, and I think this is similar to what we are

10   arguing, that the meeting with Mr. Howard at the end of every

11   day is not integral to the work done by the drivers in cleaning

12   portable toilets.

13             Other than that, I rest on my papers.

14             THE COURT:  Thank you very much.

15             Counsel for plaintiffs, is there anything that you

16   would like to add?

17             MR. MARLBOROUGH:  No, your Honor.

18             I briefly reviewed that case, and my examination of it

19   was that, much like the donning and doffing cases, with putting

20   on clothes and taking off clothes, which money in those cases

21   can go either way, depending upon the nature of the items to

22   which people are putting on.

23             I think this situation is very different because

24   people have not been dismissed from work.  They are still at

25   work until they have essentially a performance review.  So it

hcl2varC

1    is very different than a situation where someone is on their

2    own time and has to clean their clothes.  I certainly don't

3    bill my clients for my laundry.

4              THE COURT:  Thank you.  Good.  Thank you both very

5    much.

6              A few introductory remarks:

7              First, the court will be issuing a written decision

8    shortly regarding the plaintiffs' motion for class

9    certification in the case.  I expect to grant plaintiffs'

10   motion.  Today I am going to rule on the defendants' pending

11   motion for summary judgment, which was filed on April 10, 2017,

12   at Dkt. No. 221.

13             I would ask you to place your phones on mute while I

14   review the reasoning for my decision.

15             Defendants' motion is fundamentally flawed and must be

16   denied.  The motion properly states the law applicable to the

17   compensation of postliminary work.  But there are clear issues

18   of fact that must be determined by the jury regarding whether

19   the work conducted by plaintiffs qualified as non-compensable

20   postliminary work, and, if it did, the quantity of the

21   plaintiffs' time that was non-compensable.  Since the jury will

22   have to decide how much, if any, time was not compensable

23   postliminary work, this is an issue that must go to the jury.

24             The parties are well aware of the factual background

25   of this case.  I will not restate it in full here.  Instead, I

hcl2varC

will simply identify certain of the disputed issues of fact
that preclude the entry of summary judgment in my analysis.

              Standard of Review.

              A.   Summary Judgment.

              Summary judgment is appropriate when "the movant shows
that there is no genuine dispute as to any material fact and
the movant is entitled to judgment as a matter of law."  Fed.
R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S.
317, 322 (1986) ("Summary judgment is proper 'if the pleadings,
depositions, answers to interrogatories, and admissions on
file, together with the affidavits, if any, show that there is
no genuine issue as to any material fact and that the moving
party is entitled to a judgment as a matter of law.'" (internal
quotes and emphasis omitted)(quoting former Fed. R. Civ. P.
56(c)).  A genuine dispute exists where "the evidence is such
that a reasonable jury could return a verdict for the nonmoving
party," while a fact is material if it "might affect the
outcome of the suit under the governing law."  *Anderson v.
Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Factual
disputes that are irrelevant or unnecessary will not be
counted."  *Id.*

              The movant bears the initial burden of demonstrating
"the absence of a genuine issue of material fact," and, if
satisfied, the burden then shifts to the non-movant to present
"evidence sufficient to satisfy every element of the claim."

hcl2varC

*Holcomb v. Iona College,* 521 F.3d 130, 137 (2d Cir. 2008)

(citing *Celotex*, 477 U.S. at 323-24).  To defeat a motion for

summary judgment, the non-movant "must come forward with

'specific facts showing that there is a genuine issue for

trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1996) (quoting former Fed R. Civ. P. 56(e)).

"The mere existence of a scintilla of evidence in support of

the [non-movant's] position will be insufficient; there must be

evidence on which the jury could reasonably find for the [non-

movant]."  *Anderson*, 477 U.S. at 252.  Moreover, the non-movant

"must do more than simply show that there is some metaphysical

doubt as to the material facts," *Matsushita*, 475 U.S. at 586,

and he "may not rely on conclusory allegations or

unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express*

*Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation

marks and citation omitted).

        In determining whether there exists a genuine dispute

as to a material fact, the court is "required to resolve all

ambiguities and draw all permissible factual inferences in

favor of the party against whom summary judgment is sought."

*Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal

quotation marks and citation omitted).  The court's job is not

to "weigh the evidence or resolve issues of fact." *Lucente v.*

*Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002).

"Assessments of credibility and choices between conflicting

hcl2varC

versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citation omitted). "The Judge must ask . . . not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* (quoting *Anderson*, 477 U.S. at 252).

B. The Integral and Indispensable Standard.

There is no dispute regarding the test to be applied in order to determine whether the plaintiffs' waiting time following completion of their shifts constituted non-compensable postliminary work. Ultimately, the question is whether or not those activities are an integral and indispensable part of the employee's principal activities. On the heels of the Supreme Court's decision in *Integrity Staffing Solutions, Inc., v. Busk*, 135 S.Ct. 513 (2014), the Second Circuit articulated the test in *Perez v. City of New York*, 832 F.3d 120, 123-24 (2d Cir. 2016), as follows:

"The FLSA generally mandates compensation for 'the principal activity or activities which [an] employee is employed to perform,' 29 U.S.C. § 254(a)(1), including tasks -- even though completed outside a regularly scheduled shift -- that are 'an integral and indispensable part of the principal activities,' *IBP, Inc., v. Alvarez,* 546 U.S. 21, 30, 126 S.Ct 514, 163 L.Ed.2d 288 (2005) (quoting *Steiner v. Mitchell,* 350

hcl2varC

U.S. 247, 256, 76 S.Ct. 330, 100 L.Ed. 267 (1956)).  But the

FLSA does not require payment for time spent on 'activities

which are preliminary to or postliminary to' an employee's

principal activities.  29 U.S.C. § 254(a)(2) . . . .

         "An activity qualifies as 'integral' if it is

'intrinsically "connected with"' a principal activity that an

employee was hired to perform.  *Gorman v. Consol. Edison Corp.,*

488 F.3d 586, 591 (2d Cir. 2007) (quoting *Mitchell v. King*

*Packing Co.*, 350 U.S. 260, 262; 76 S.Ct 330, 100 L.Ed. 267

(1956)).  And an activity is 'indispensable' if it is

'necessary' to the performance of a principal activity.  *Id.* at

592.  An activity is therefore 'integral and indispensable to

the principal activities that an employee is employed to

perform if it is an intrinsic element of those activities and

one with which the employee cannot dispense if he is to perform

his principal activities.'  *Integrity Staffing Sols., Inc. v.*

*Busk* –– U.S. –– 135 S.Ct. 513, 517, 190 L.Ed.2d 410 (2014).

         "Although this standard is markedly 'fact dependent,'

*Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 359 (2d Cir.

2011), prior decisions have identified several considerations

that may serve as useful guideposts for its application.  As we

have explained, "the more the [pre- or post-shift] activity is

undertaken for the employer's benefit, the more indispensable

it is to the primary goal of the employee's work and the less

choice the employee has in the matter, the more likely such

hcl2varC

work will be found to be compensable.'  *Reich v. NYC Transit Auth.*, 45 F.3d 646, 650 (2d Cir. 1995).  Relatedly, an employer's requirement that pre- or post-shift activities take place at the workplace may indicate that the activities are integral and indispensable to an employee's duties.  See *Alvarez v. IBP, Inc.*, 339 F.3d 894, 903 (9th Cir. 2003) (concluding that donning and doffing of protective gear were integral and indispensable activities in part because they had to be performed at the workplace, aff'd, 546 U.S. 21, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005); cf. *Bamonte v. City of Mesa*, 598 F.3d 1217, 1231 (9th Cir. 2010) (concluding that donning and doffing of police uniforms were not integral and indispensable activities in part because they were 'not required by law, rule, the employer, or the nature of the police officers' work to be performed at the employer's premises')."

III.  Discussion.

I cannot determine as a matter of law that the work conducted by defendants' employees was not integral and indispensable to their primary work activities.  As the Circuit highlighted in *Perez*, the test is highly fact dependent.  A reasonable jury could conclude that the mandatory post-schedule off-the-clock performance review conducted by Mr. Howard was integral to the principal work activities of the plaintiffs. First, I observe that the post-schedule reviews took place in the workplace and, as alleged, the plaintiffs were required to

hcl2varC

wait after clocking out of their shifts in order to conduct the

review.  Mr. Howard required plaintiffs to conduct a number of

activities in connection with the performance reviews.  One of

the tasks that he required plaintiffs to perform was to clean a

toilet in front of him.  *See*, e.g., declaration of Girolamo

Genova, Dkt. No. 230, at Paragraph 17.  The task of cleaning a

toilet during the post-schedule performance review is one that

a reasonable jury could readily find to be integral to the

workers' jobs; arguably, that was the workers' job.  This

example alone shows why summary judgment is inappropriate.

However, a number of the other features of the

post-schedule performance review could also support a

reasonable jury's conclusion that the reviews were integral and

indispensable to the workers' jobs.  As plaintiffs point out,

Mr. Howard personally inspected toilets, discussed customer

complaints, disciplined workers, and reviewed the employees

routes.  *See* plaintiffs' 56.1 statement at paragraphs 42-48.

Viewed in the light most favorable to plaintiffs, these

activities could reasonably be found to support the conclusion

that the reviews were integral to the workers' jobs.

Because the court cannot conclude as a matter of law

that the performance reviews were not indispensable or integral

to the plaintiffs' work, the court cannot conclude that the

time spent waiting for those reviews was not compensable.  My

colleague Judge Stanton described how to ascertain whether

hcl2varC

waiting time was properly compensable in *Moon v. Kwon*, 248

F.Supp.2d 201, 229 (S.D.N.Y. 2002).  As he wrote:

      "Time that an employee spends waiting for work

assignments is compensable if the waiting time is spent

'primarily for the benefit of the employer and his business.'

*Owens v. Local No. 169*, *Ass'n of W. Pulp & Paper Workers*, 971

F.2d 347, 350 (9th Cir. 1992) (quoting *Wantock*, 323 U.S. at

132, 65 S.Ct. 165).  The question of whether time is spent

predominately for the employer's benefit and therefore

constitutes time 'worked' under FLSA 'depends upon particular

circumstance.' 29 C.F.R. § 785.14.  The 'facts may show that

the employee was engaged to wait,' making the time compensable,

or that the employee instead 'waited to be engaged,' rendering

the time not compensable.  *Skidmore v. Swift & Co.*, 323 U.S.

134, 137, 65 S.Ct 161, 89 L.Ed. 14 (1944).  For example, when

periods of inactivity are 'unpredictable . . . [and] usually of

short duration,' and the employee 'is unable to use the time

effectively for his own purposes,' then the employee is

'engaged to wait,' and the inactive time constitutes 'work'

time under FLSA -- even if 'the employee is allowed to leave

the premises or the job site during such periods of

inactivity.' 29 C.F.R. § 785.15."

      I recognize, as defendants argue, that *Moon* was

decided years before *Integrity Staffing*, but the Supreme Court

did not displace the principles described in it.

hcl2varC

1          Here, the facts viewed in the light most favorable to

2     plaintiffs support a reasonable conclusion that plaintiffs were

3     "engaged to wait" until the time of their performance reviews.

4     Plaintiffs were not permitted to leave the premises while

5     waiting for their performance reviews.  *See* plaintiffs' 56.1

6     statement at paragraph 45.  And, as I have described already, a

7     reasonable jury could conclude that the performance reviews

8     themselves were integral to the employee's work.  So, too,

9     could they conclude that the time spent waiting for those

10    reviews was compensable.

11         So material issues of fact preclude the entry of

12    summary judgment on defendants' behalf with respect to this

13    issue.  The jury will have the opportunity to review the facts

14    and to determine whether the post-schedule reviews and the time

15    spent waiting for them constitute compensable labor and, if so,

16    the amount of time attributable to those tasks.

17         Defendants also argue in their motion that plaintiffs

18    should not be permitted to pursue recovery for gap time.

19    Plaintiffs disclaim that they are pursuing a claim for gap

20    time.  *See* defendants' opposition at 15-18.  Given that

21    stipulation, the court need not rule on the application to deny

22    plaintiffs the opportunity to do something that they have

23    disclaimed.

24         For these reasons, the defendants' motion for summary

25    judgment is denied.  I have not directly addressed all of

hcl2varC

1   defendants' arguments against summary judgment in this

2   decision, but I have considered them all.  Fundamentally, I

3   have concluded that many of defendants' arguments are

4   meritless.  For example, defendants would have me not consider

5   facts averred by plaintiffs that defendants believed to be

6   inconsistent with other statements made by them, or that

7   defendants brand as self-serving.  But the court's job in a

8   motion for summary judgment is not to weigh the evidence or to

9   evaluate the credibility of the witnesses, so these arguments

10  are unpersuasive.  I have identified a number of issues of

11  material fact on the record that preclude summary judgment.

12  The jury will parse the evidence to determine whether the

13  activities conducted during the employees' reviews were

14  integral or indispensable or not."

15          So thank you very much for your patience.  That

16  concludes my decision on this issue.  As I said during the

17  course of the decision, there were significant issues with

18  respect to this matter.  I will note, too, counsel for

19  defendants, that the jury will need to determine what the

20  amount of time is that is captured by this window because this

21  is a motion for partial summary judgment and in order for the

22  jury to evaluate the amount of time that the plaintiffs worked

23  in excess of the 40 hours a week, even if they conclude that

24  this time is integral and indispensable to their general hours,

25  the finder of fact will need to determine how much time this is

hcl2varC

1    in order to determine whether or not the employees worked in

2    excess of 40 hours without compensation.  So that is still

3    another reason why this motion, I believe, was not well

4    founded.  Ultimately I did not deny it on that basis, but

5    because of the existence of these disputed issues of fact, but

6    it was an issue that might have been considered in preparing

7    and filing the motion.

8            So as I said, I expect that I will be issuing a

9    decision on class certification in short order.  I think that

10   we should begin to discuss trial schedule for this because at

11   this point I anticipate that I am going to be granting

12   plaintiffs' request, as I said earlier.

13           Counsel for plaintiffs, do you have a sense of the

14   anticipated duration of trial?  And I would like to hear in

15   particular about how the plaintiffs are going to be seeking to

16   prove damages in the case.

17           (Pause)

18           THE COURT:  Please unmute your phones.

19           MR. MARLBOROUGH:  I apologize for that.  I was talking

20   away, obviously still muted.

21           We retained an expert, we submitted an expert report

22   which indicated that damages would be calculable in the event

23   that class cert. was granted, and then we are going to look at

24   the methodologies he referenced using certain sampling

25   methodologies that obviously the expert will be more familiar

hcl2varC

1    with than I am based on the testimony, based on certain

2    admissions by defendant and what the plaintiffs testified to

3    and also, to the extent that time records have been produced,

4    based on those time records.

5              THE COURT:  Thank you.

6              Can you give me a sense of the anticipated duration of

7    the trial to the extent that you have a view of that at this

8    time, counsel for plaintiff?

9              MR. MARLBOROUGH:  Your Honor, we have 100 opt-in

10   plaintiffs.  We have no shortage of a number of witnesses.  I

11   think it would be helpful for plaintiffs to discuss with

12   defendants what a view of the length of the trial is, because

13   certainly our trial, with all the evidence that we could

14   potentially present, could be extremely -- run weeks and weeks,

15   although I would imagine, given the size of the case and some

16   of the things, the issues that we need to prove, in excess of a

17   week.

18             THE COURT:  Thank you.  I very much expect that this

19   trial will last well in excess of a week.

20             MR. MARLBOROUGH:  Yeah.

21             THE COURT:  Let me ask you, counsel for plaintiffs, to

22   please think about that issue.  I am also going to ask you to

23   confer with counsel for defendant about the anticipated

24   duration of the trial.

25             Let me turn to counsel for defendant.

hcl2varC

1          Counsel, what is your view regarding the anticipated

2    duration of your case?  I know that you have some counterclaims

3    and I understand that your defense consists in part of

4    allegations that the individual plaintiffs were stealing time

5    from the company by spending more time than they needed to in

6    their toilet cleaning trucks.

7          What is your assessment of the anticipated duration of

8    the trial?

9          MR. GRAFF:  Thank you, your Honor.

10         We anticipate one primary witness that could take

11   several days.  That's Mr. Howard.  Then we have got several

12   employees of the company who would testify.  I anticipate a

13   week or two just for the defense.  Obviously plaintiffs go

14   first, and we would have to see how that plays itself out, but

15   probably a week or two for defense.

16         THE COURT:  Good.  Thank you.  I appreciate that.

17         Let me ask the parties, can you please confer about

18   the anticipated duration of the trial.  It sounds to me as

19   though it may be prudent for me to set aside three weeks or so

20   for this trial.  I would like to hear from you how much time

21   you think the trial will need.  Please write me with that

22   information, and I will use that to set a trial date.  From the

23   trial date, I will work backwards to create a schedule for

24   pretrial submissions, including jury instructions, *voir dire*,

25   and the like.

hcl2varC

1          Since I have you here, let me give you some
2    instructions about the pretrial submissions.
3          Please look at my individual rules of practice in
4    civil cases.  That contains a rule describing the pretrial
5    submissions that the court requires.  You will see that the
6    rule requires a number of joint submissions.  It requires a
7    joint pretrial order, joint jury instructions, joint proposed
8    *voir dire*.
9          Let me talk to you briefly about each of those things
10   just as an introduction.
11         The joint pretrial order requires a number of things.
12   The categories of information that are required are articulated
13   in the rule.  I note that one of the things that is required in
14   the joint pretrial order is a complete list of all of the
15   exhibits that each of the parties anticipates introducing at
16   trial.  When you present that list, you are to identify each of
17   the documents with an exhibit letter or number.  You are to
18   identify the document or other exhibit by name or title, and
19   then, in a chart format, you are to identify whether or not
20   there is a basis for an objection or whether or not there is an
21   objection to the proposed piece of evidence, and then, in a
22   separate column in the chart, identify what the specific basis
23   is for the objection, for the introduction of that evidence.
24         I highlight this because it illustrates that you will
25   need to do a significant amount of preparation in advance of

hcl2varC

submitting the joint pretrial order.  You will need to have

identified all of your exhibits.  You will need to have shared

them with your opponent and given your opponent sufficient time

to review them and to evaluate whether or not there is an

articulable basis for an objection to the introduction of the

exhibit.  Part of the purpose for this process is to require

that the parties confer about the admissibility of records well

in advance of trial so that we can simplify the process at

trial, and it may be that the parties will identify documents

or other exhibits that the parties can stipulate to with

respect to their admissibility.

        So that is one thing that I highlight with respect to

the joint pretrial order.  The principal take away should be

that it requires a significant amount of advance planning and

identification of all of your prospective exhibits.

        The other thing that I want to point out is that I

require that the parties submit joint jury instructions.  When

I say that, I am not requiring that you agree on everything in

the jury instructions.  I don't think that would be

appropriate.  Instead, what I ask you to do is to prepare a

single set of jury instructions that includes all of the I will

call it general jury instructions, so the instructions about

the trial process, review of evidence, and testimony and the

like, and then also provide me with a full set of substantive

instructions for the jurors.

hcl2varC

1          Where there are disagreements, please include a

2     footnote that specifies the language that is the subject of the

3     disagreement.  Please state what the basis is for the

4     disagreement, provide me with alternative language that is

5     proposed by the party who is designated as having the

6     disagreement, and the alternative language should be supported

7     by case law or citation to other precedent or secondary

8     sources.  All of the instructions that are presented to me

9     should have footnotes that refer me to the relevant case law or

10    other precedent that is the basis for the instruction so that I

11    can review the provenance and legal support for the proposed

12    instruction as I review your proposals.

13          Similarly, for the joint *voir dire* questions, I don't

14    require by asking you to give me joint proposals that you agree

15    on everything.  My hope is that you will be able to present me

16    with a single set of *voir dire* questions.  If there are

17    particular questions that one party believes are inappropriate

18    or additional questions that they believe should be inserted,

19    please just identify those.  My hope is, as with the jury

20    instructions, that we will be able to identify specific

21    differences of opinion which will make it easier for me to

22    efficiently resolve those differences.

23          So that is what I would like to highlight for you.

24          As you go through the rule and as you are preparing

25    the pretrial submissions and for trial in general, generally,

hcl2varC

1   please feel free to write me jointly if you would like to

2   discuss trial preparation generally or if you have questions

3   about the requirements of my individual rules.  I would be

4   happy to schedule a conference to discuss those things if it

5   would be helpful to you.

6           I expect that I will schedule a final pretrial

7   conference for this case significantly in advance of the trial

8   itself.  I say that in part because I want to have a discussion

9   about the process in more depth with the benefit of your

10  pretrial submissions in hand with enough time to modify the

11  parties' proposed approach to the trial to the extent that I

12  think that would be useful and also to provide you with

13  feedback on any motions *in limine* that you may seek to bring at

14  the time that you submit your pretrial submissions required by

15  my rules.

16          So I hope that's helpful.  Is there anything that we

17  should discuss on either of your behalf?

18          First counsel for plaintiffs.

19          MR. MARLBOROUGH:  I'm sorry.  Could you repeat the

20  question, your Honor?  Anything that would be --

21          THE COURT:  Anything else that you would like to

22  discuss during this conference?

23          MR. MARLBOROUGH:  Not at this time.  Do you have -- do

24  you anticipate issuing the decision within -- on the class

25  certification within a week or two?  In which case we may

hcl2varC

```
1    address some issues with defendants' counsel prior to that

2    decision.  Or is it more within the next couple of days, if

3    that's an appropriate question?  If it is not, I apologize.

4              THE COURT:  Let me ask you a question.  I can make it

5    come out sooner or later if the parties have a preference.  I

6    would be happy to defer its issuance for a couple of weeks if

7    that would be beneficial for the parties' discussions for any

8    reason.

9              MR. MARLBOROUGH:  Well, let me say that our first task

10   is to give you an idea of what we anticipate the trial to be,

11   and we can issue that to you within one week and we can include

12   any other additional information in that letter.  Is that

13   satisfactory to the court?

14             THE COURT:  That's fine.  I will not issue the

15   decision until the beginning of January.  I will issue it no

16   sooner than January 2.  That said, if there are any

17   developments that would impact the labor that the court is

18   going to put into finalizing the opinion, please let me know

19   about it as promptly as you can.

20             MR. MARLBOROUGH:  Thank you, your Honor.

21             MR. GRAFF:  Thank you.

22             THE COURT:  Good.

23             Anything on behalf of counsel for defendants?

24             MR. GRAFF:  No, your Honor.

25             THE COURT:  Good.  Thank you all.
```

hcl2varC

1            MR. GRAFF:   Thank you.

2                              oOo