UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                     :
JUAN VARGAS, *individually and on behalf of all others* :
*similarly situated*,                                :
                                      :
                          Plaintiffs, :
                                      :
                        -v -                  :
                                      :
CHARLES W. HOWARD and CALL-A-HEAD :
CORP.,                                      :
                                      :
                          Defendants. :
                                      :
------------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 01/10/2018

1:15-cv-5101-GHW

<u>MEMORANDUM OPINION
AND ORDER</u>

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

       Defendant Call-A-Head Corp. ("Call-A-Head") is a portable toilet rental and service

company. The company's portable toilet service technicians ("PTSTs") performed manual labor

cleaning portable toilets at worksites in New York City, Westchester, and Long Island. As if their

job cleaning toilets was not challenging enough on its own, the plaintiffs here allege that the

defendants forced them to work overtime hours for which they were not paid, in violation of both

federal and state labor laws. The Court previously granted conditional certification of a collective

action pursuant to the Fair Labor Standards Act ("FLSA"), and the plaintiffs now move for class

certification of their New York Labor Law ("NYLL") claims pursuant to Federal Rule of Civil

Procedure 23. Because the statutory prerequisites for class certification are readily satisfied here, the

plaintiffs' motion for class certification is GRANTED.

## II.    BACKGROUND

       Call-A-Head is a portable toilet delivery and sanitation business. Dkt. No. 32, First Am.

Compl. ("Compl.") ¶ 1. It conducts its business throughout New York City and the surrounding

area.  Much of the business' work is performed by its squadron of PTSTs, whose responsibilities include delivering, picking up, and cleaning portable toilets.  Compl. ¶ 26.  Defendant Charles W. Howard is the president, chairman, and chief executive officer of Call-A-Head.  He is a hands-on manager and controls the schedules and pay of the company's PTSTs.  Compl. ¶ 13.

Mr. Vargas, together with the ninety-six additional PTSTs who have opted into this suit ("Plaintiffs"), describe a long litany of illegal policies and practices that resulted in the PTSTs not being paid overtime as required by law.  It is not necessary to review them all in detail here.  Some examples of these common practices suffice.  For instance, Defendants are alleged to have paid PTSTs only for the first ten hours worked per day, although they were regularly required to work between twelve and fifteen hours every day.  Compl. ¶ 37.  In addition, Plaintiffs allege that Defendant Howard instructed PTSTs to only record their time Monday through Thursday, despite often requiring Friday and weekend work.  Compl. ¶¶ 32-34.  Plaintiffs further allege that Defendants failed to provide each of its employees with an annual notice pursuant to the Wage Theft Prevention Act ("WTPA"), as they were required to do since law took effect in 2011. Compl. ¶¶ 40-41.

## III.    PROCEDURAL HISTORY

On June 30, 2015, Mr. Vargas brought this lawsuit against Defendants Call-A-Head and Charles Howard.  He amended his complaint in August 2015.  Dkt. No. 32.  Defendants answered the amended complaint and asserted counterclaims against Mr. Vargas and "all other opt-in Plaintiffs" for breach of fiduciary duty and conversion, alleging that the employees "would steal time" from Defendants by not performing work while driving and by "idling on [their] route," effectively, in Defendants' view, stealing their gasoline.  Dkt. No. 60 ("Answer") ¶¶ 145, 151. Defendants also asserted a counterclaim against Mr. Vargas for defamation because of statements made by him to a newspaper.  Answer ¶¶ 153-61.

Plaintiffs moved the Court to conditionally certify this action as a FLSA collective action on behalf of a class of current and former non-exempt employees who worked for Defendants since June 30, 2009.  On February 1, 2016, the Court granted Plaintiffs' motion for conditional certification, and authorized the mailing of a notice of pendency to potential class members.  Dkt. No. 100.  Since then, ninety-six current and former PTSTs have opted in to the FLSA collective action.

Plaintiffs filed their motion for class certification on March 22, 2017, seeking to certify a class of PTSTs dating back to 2009.  Dkt. No. 201 ("Pls.' Mot.").  Plaintiffs also seek to certify a subclass of all members employed after April 9, 2011, when the WTPA's notification requirement came into effect (the "WTPA subclass").  Defendants filed their opposition on April 27, 2017.  Dkt. No. 224 ("Defs.' Opp'n").  Plaintiffs filed their reply on May 12, 2017.  Dkt. No. 237 ("Pls.' Reply").

## IV.   LEGAL STANDARD

"A plaintiff seeking certification of a Rule 23(b)(3) class action bears the burden of satisfying the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—as well as Rule 23(b)(3)'s requirements:  (1) that 'the questions of law or fact common to class members predominate over any questions affecting only individual members' (the 'predominance' requirement); and (2) that 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy' (the 'superiority' requirement)."  *In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017) (quoting Fed. R. Civ. P. 23(a) and (b)(3)).  In addition to the express requirements of Rule 23, the Second Circuit has recognized an implied requirement that the class be ascertainable, that is, "defined using objective criteria that establish a membership with definite boundaries."  *Id.* at 264.

"Rule 23 does not set forth a mere pleading standard."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  "The party seeking class certification bears the burden of establishing by a

preponderance of the evidence that each of Rule 23's requirements have been met." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015); *see also In re Am. Int'l. Grp., Inc. Sec. Litig.*, 689 F.3d 229, 237-38 (2d Cir. 2012) ("The party seeking class certification must affirmatively demonstrate . . . compliance with the Rule, and a district court may only certify a class if it is satisfied, after a rigorous analysis, that the requirements of Rule 23 are met.") (citation and internal quotation marks omitted). "The ultimate question is not whether the plaintiffs have stated a cause of action or will prevail on the merits but whether they have met the requirements of Rule 23." *Gortat v. Capala Bros.*, 257 F.R.D. 353, 362 (E.D.N.Y. 2009) (citing *Cortigiano v. Oceanview Manor Home for Adults,* 227 F.R.D. 194, 203 (E.D.N.Y. 2005)). The same standards apply to the certification of subclasses: "a court must assure itself that each subclass independently meets the requirements of Rule 23." *Ramirez v. Riverbay Corp.*, 39 F. Supp. 3d 354, 362 (S.D.N.Y. 2014) (citations omitted).

"The Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction, and it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 124 (S.D.N.Y. 2011) (quoting *Gortat*, 257 F.R.D. at 361). "Courts have wide discretion in determining whether to certify a class, and where a collective action under the FLSA that is based on the same set of facts has been approved, there is an inclination to grant class certification of state labor law claims." *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202-203 (S.D.N.Y. 2006) (citing *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 96 (S.D.N.Y. 2001)).

## V.   DISCUSSION

### A.   The Proposed Class Satisfies the Numerosity Requirement

Plaintiffs must show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Courts in this Circuit presume that the numerosity requirement has been met when the putative class has at least forty members. *See Consol. Rail Corp. v.*

*Town of Hyde Park*, 47 F.3d 472, 483 (2d Cir. 1995), *cert. denied*, 515 U.S. 1122 (1995).

The numerosity requirement is readily satisfied.  Since June 30, 2009, Defendants have had "approximately 1,000 drivers who clean portable toilets."  *See* Dkt. No. 226, Affidavit of Charles W. Howard ("Howard Aff.") ¶ 3.  In addition, in response to the Court's order granting Plaintiffs' motion for conditional certification, Defendants have identified over 550 PTSTs who worked for Defendants in the three years preceding the date on which this action was filed.  *See* Dkt. No. 209, Decl. of Anthony Portesy in Supp. of Pls.' Mot. to Certify a Class ("Portesy Decl.") ¶ 9.  Ninety-six plaintiffs have already opted-in to the conditionally certified FLSA collective.  These facts support the Court's finding that the numerosity requirement is satisfied with respect to both the proposed class and the WTPA subclass.

B.  The Proposed Class Satisfies the Commonality Requirement

Plaintiffs must also show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  A question of law or fact is common to the class if the question is "capable of classwide resolution—which means that its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  "The claims for relief need not be identical for them to be common; rather, Rule 23(a)(2) simply requires that there be issues whose resolution will affect all or a significant number of the putative class members." *Johnson*, 780 F.3d at 137-38 (citing Joseph M. McLaughlin, *McLaughlin on Class Actions* § 4:7 (11th ed. 2014)).  "In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." *Spencer v. No Parking Today, Inc.*, No. 12-civ-6323 (ALC)(AJP), 2013 WL 1040052, at *15 (S.D.N.Y. Mar. 15, 2013), *report and recommendation adopted* No. 12-civ-6323, 2013 WL 2473039 (S.D.N.Y. June 7, 2013) (citing *Poplawski v. Metroplex on the Atl., LLC*, No. 11-CV-3765, 2012 WL 1107711, at *7 (E.D.N.Y. Apr. 2, 2012)).

Here, Plaintiffs have established commonality in a number of ways.  For instance, Plaintiffs' claims share several common questions of fact, such as whether Defendants required that Plaintiffs work over forty hours per week, whether Defendants failed to pay overtime, and whether Defendants failed to record all of the time worked by their employees.  All of the named plaintiffs submitted declarations asserting that Defendants maintained policies that resulted in PTSTs working overtime, such as automatically deducting thirty minutes for breaks despite the fact that they did not permit PTSTs to take lunch breaks.  *See* Dkt. No. 203 ("Fowler Decl.") ¶¶ 20-21; Dkt. No. 204 ("Genova Decl.") ¶¶ 22-23; Dkt. No. 205 ("Kubinski Decl.") ¶¶ 25-26; Dkt. No. 206 ("Vargas Decl.") ¶¶ 22-23; Dkt. No. 207 ("Whittaker Decl.") ¶¶ 22-23.  All of those plaintiffs also stated that Defendants maintained a policy of requiring PTSTs to clock out but not permitting them to leave upon clocking out, and that Defendants directed all PTSTs to not punch in or out on the Fridays they worked.  *See* Fowler Decl. ¶¶ 22; 26-27; Genova Decl. ¶¶ 24-25; 29-30; Kubinski Decl. ¶¶ 28-29, 34-35; Vargas Decl. ¶¶ 24-25, 30-32; Whittaker Decl. ¶¶ 26, 30-31.  A common question arises regarding whether NYLL was violated by Defendants' alleged pay practices.  *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (finding commonality satisfied "since the Plaintiffs' NYLL class claims all derive from the same compensation policies" and "all of the class plaintiffs' claims arise under the same New York State statutes and regulations").

The commonality requirement is also easily met for the WTPA subclass.  Plaintiffs have asserted that Defendants maintained a policy of not issuing a proper Wage Theft Prevention Act Notification of Pay Rate.  *See* Fowler Decl. ¶¶ 28-29.; Genova Decl. ¶¶ 31-32; Kubinski Decl. ¶¶ 36-37; Vargas Decl. ¶¶ 33-34; Whittaker Decl. ¶¶ 32-33.  The factual question of whether employees were provided appropriate wage notices, and therefore the legal question of whether Defendants complied with their obligations under the WTPA, are common to the PTSTs' claims against Defendants and are capable of classwide resolution.

Indeed, Defendants concede that the PTSTs were subject to common workplace policies: Mr. Howard admits that "every one of the Drivers were treated the same" and that "[t]he policies of [Defendants] were universally applied to everyone in the same way." Howard Aff. ¶ 3. Defendants nevertheless raise a number of arguments against commonality. First, they contend that this common treatment was not illegal. In doing so, Defendants ignore the Supreme Court's decision in *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds,* in which the Court explained "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." 568 U.S. 455, 459 (2013) (emphasis in original). Defendants also argue that differences between Plaintiffs, such as the route each driver took and how long it took each driver to complete their route, defeat commonality. *See* Defs.' Opp'n at 13. However, "[t]he differences among the Plaintiffs as to the number of hours worked, the precise work they did, and the amount of pay they received concern the amount of damages to which any individual Plaintiff might be entitled if and when liability is found," and do not go to whether there are common questions of law and fact amongst the class members. *Ansoumana*, 201 F.R.D. at 86. Finally, Defendants contend that damages are "so individualized" as to preclude class certification. Defs.' Opp'n at 14-15. This argument also fails, as "[t]he need for individualized determinations of the putative class members' damages does not, without more, preclude certification of a class under Rule 23(b)(3)." *Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 419 (S.D.N.Y. 2014).

## C.   The Proposed Class Satisfies the Typicality Requirement

Pursuant to Rule 23(a)(3), Plaintiffs must show that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285,

291 (2d Cir. 1992)); *see also Indergit v. Rite Aid Corp.*, 293 F.R.D. 632, 654 (S.D.N.Y. 2013) (finding typicality satisfied where the representative plaintiff's claims were "clearly based on the same legal theory and arise from the same practice or course of conduct as the other class members") (quoting *In re Playmobil Antitrust Litig.,* 35 F. Supp. 2d 231, 241 (E.D.N.Y. 1998) (internal quotation marks omitted). While the class representatives' claims need not be identical for typicality to be satisfied, "plaintiff's claim and the class claims must be so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 175 (S.D.N.Y. 2008) (citing *Marisol,* 126 F.3d at 376) (internal quotation marks and punctuation omitted).

In the Second Circuit, analysis of Rule 23(a)(3)'s typicality requirement often converges with that of commonality. *See Marisol*, 126 F.3d at 376 (citing *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 157 n.13 (1982)). Here, for substantially the same reasons discussed above in connection with the commonality requirement, the proposed class representatives' claims and defenses are typical of the claims of absent class members. The proposed class representatives all worked as PTSTs for a number of years within the defined class period. *See* Fowler Decl. ¶ 3; Genova Decl. ¶ 4; Kubinski Decl. ¶ 4; Vargas Decl. ¶ 7; Whittaker Decl. ¶ 4. The representatives' claims against Defendants, like the claims of the absent class members, arise out Defendants' policies and course of conduct regarding the ways in which PTSTs were paid for their labor. *See, e.g.*, Fowler Decl. ¶¶ 26-27 ("PTSTs were directed not to punch in or out on Fridays . . . Defendant Howard told me not to punch in or out on Fridays."); Genova Decl ¶¶ 29-30 (same); Kubinski Decl. ¶¶ 34-35 (same); Vargas Decl. ¶¶ 30-31 (same); Whittaker Decl. ¶¶ 30-31 (same). Furthermore, all of the proposed class representatives aver that Defendants failed to pay overtime, and that Defendants did not provide the notices required by the WTPA. *See* Fowler Decl. ¶¶ 28-29; Genova Decl. ¶¶ 31-32;

Kubinski Decl. ¶¶ 36-37; Vargas Decl. ¶¶ 33-34; Whittaker Decl. ¶¶ 32-33. The typicality requirement is satisfied here for both the class of PTSTs and the WTPA subclass.

Small variances in the employees' hours do not defeat typicality. Defendants' argument "[n]o two drivers' set of facts are the same" is therefore unavailing. Defs.' Opp'n at 16; *see Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002) (finding typicality satisfied despite "differences in departments, job duties, and [] factual variations in plaintiffs' claims" where all plaintiffs claimed they were allegedly denied overtime pay while working for defendant).

D.  The Proposed Class Representatives Satisfy the Adequacy Requirement

Rule 23(a)(4) requires that class representatives "fairly and adequately protect the interest of the class." "Adequacy of representation is evaluated in two ways:  (1) by looking to the qualifications of plaintiffs' counsel; and (2) by examining the interests of the named plaintiffs." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 164 (S.D.N.Y. 2014) (citing *Flores v. Anjost Corp.*, 284 F.R.D. 112, 128-29 (S.D.N.Y. 2012). With respect to the latter, to satisfy Rule 23(a)(4), "the named plaintiffs must possess the same interests and suffer the same injuries as the class members." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (internal punctuation omitted)). "Adequacy is twofold:  the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir. 2006). In evaluating this requirement, courts consider whether the class representatives are familiar with the action and "whether they are of sufficient moral character to represent a class." *Espinoza*, 280 F.R.D. at 124. Further, "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation," certification of the class is not appropriate because the representative cannot act in the best interest of the class. *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000)

(internal citation and quotation marks omitted).[1]

The Court is satisfied that the attorneys of the Marlborough Law Firm, PC and Slater Slater Shulman LLP have the requisite experience and qualifications to represent the class.  Christopher Marlborough, the principal attorney of the Marlborough Law Firm, has been a practicing attorney for fourteen years, nearly a decade of which has been spent working on complex class and collective action cases.  Portesy Decl., Ex. AA (The Marlborough Law Firm Resume), at 3.  He has represented several certified classes in wage theft cases.  *Id.* at 4-5.  The attorneys of Slater Slater Shulman also have substantial experience in wage and hour litigation.  *See* Portesy Decl., Ex. Z (Slater Slater Shulman LLP, "About the Firm").  Defendants do not challenge the adequacy of Plaintiffs' counsel.  In light of Plaintiffs' counsel's experience, compounded with their efforts in the case to date, the Court finds that counsel can adequately represent the class.

The Court also finds that the class representatives satisfy the adequacy requirement.  All five proposed representatives worked as PTSTs for Defendants and were subject to the same policies. *See* Fowler Decl. ¶ 3; Genova Decl. ¶ 4; Kubinski Decl. ¶ 4; Vargas Decl. ¶ 7; Whittaker Decl. ¶ 4. All have substantially the same claims against Defendants, and all assert that they were not provided with proper wage theft prevention notifications as required by the WTPA.  *See* Fowler Decl. ¶¶ 28-29.; Genova Decl. ¶¶ 31-32; Kubinski Decl. ¶¶ 36-37; Vargas Decl. ¶¶ 33-34; Whittaker Decl. ¶¶ 32-33.  Because they share their overtime and WTPA claims with absent class members, the Court concludes that these representatives are capable of vigorously pursuing the claims of the class and of the WTPA subclass.  *See Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) ("The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will

---

[1] While the Court addresses here whether unique defenses defeat the adequacy requirement of class certification, the Court notes that "courts routinely consider that argument under the typicality, commonality, and/or the adequacy prongs of Rule 23(a)."  *Lapin*, 254 F.R.D. at 179 (collecting cases).

vindicate those of the class.").  In addition, all class representatives have responded to interrogatories, sat for depositions, and submitted declarations in support of the motion for class certification, indicating they are familiar with the case and are actively pursuing their claims.

Defendants challenge the adequacy of Juan Vargas, Gerolamo Genova, and Edward Kubinski, but the arguments that they present border on nonsensical.  First, Defendants raise concerns about the consistency of Mr. Vargas and Mr. Kubinski's testimony in order to assert that those Plaintiffs are liars who cannot ethically serve as class representatives.  For instance, they note that Vargas' declaration states he "generally worked between up to twenty unpaid overtime hours per week," Vargas Decl. ¶ 17, while in his deposition, he testified that his route took "twelve to fifteen hours."  Dkt. No. 206, Ex. A, Vargas Dep. Tr. at 17:18-22.  Similarly, Kubinski's declaration stated that he "generally worked up to twenty hours of unpaid overtime per week," Kubinski Decl. ¶ 17, while he testified that he thinks worked "about fifteen, twenty" hours of overtime each week, Dkt. No. 225, Ex. E, Kubinski Dep. Tr. at 37:20-22.  The problem with Defendants' argument, of course, is that a statement that one "generally worked *up to* twenty hours of unpaid overtime per week" is not necessarily inconsistent with a statement that one worked "about fifteen, twenty" hours overtime; it is similarly not necessarily inconsistent for one to state that he worked up to twenty hours of unpaid overtime per week and that a particular task during that time required twelve to fifteen hours.  Even if Plaintiffs' statements were internally inconsistent, such a finding would not defeat adequacy, as these variations in testimony do not rise to the level of untruths that the Court can escry on this record, and thus do not give rise to sufficient concerns about these Plaintiffs' ability to serve as class representatives.  *See Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 211 (E.D.N.Y. 2015) (holding that inconsistencies in a plaintiff's testimony "do not cas[t] a shadow of doubt so severe so as to disqualify him from serving as a class representative").  Defendants' arguments as to these two Plaintiffs are unpersuasive.

Defendants also argue that Mr. Genova is not an adequate class representative because he performed different duties than the other Plaintiffs, including delivering and picking up portable toilets and working with salespeople.  Defs.' Opp'n at 18.  Defendants contend that because Mr. Genova began work at a different hour depending on which task he was performing, and because he wore different clothes depending on the task, he is not an adequate representative.  *Id.* Mr. Genova's testimony and declaration indicate, however, that he served as a PTST for three years. Dkt. No. 225, Affirmation of Austin Graff ("Graff Aff."), Ex. N, Genova Dep. at 9:3-9.  In addition, Mr. Genova's declaration submitted in support of Plaintiffs' class certification motion states that he was subject to the same workplace policies as the class, including Defendants' policy of only compensating PTSTs for the first ten hours worked, Defendants' policy of automatically deducting thirty minutes from the PTSTs' pay for lunch breaks they were not permitted to take, and the policy of requiring PTSTs to wait for paperwork to be reviewed after clocking out.  Genova Decl. ¶¶ 15, 21, 24.  Mr. Genova therefore shares the same interests and suffered the same injuries as absent class members, and there is no evidence that his interests are antagonistic to those of the class.

Finally, although Defendants fail to raise this issue in their opposition to Plaintiffs' motion, the Court does not find that the proposed class representatives are subject to unique defenses that would become the focus of the litigation and thereby render the representatives unable to defend the interests of the class.  In order for a unique defense to defeat class certification, "[t]he defendant need not show at the certification stage that the unique defense will prevail, only that it is meritorious enough to require the plaintiff to devote considerable time to rebut the unique defense." *Lapin*, 254 F.R.D. at 179 (quoting *Hallet v. Li & Fung Ltd.,* No. 95 Civ. 8917, 1997 WL 621111, at *3 (S.D.N.Y. Oct. 6, 1997)).  Moreover, "[t]he rule barring certification of plaintiffs subject to unique defenses is not 'rigidly applied in this Circuit;' in fact, 'a representative may satisfy the typicality

requirement even though that party may later be barred from recovery by a defense particular to him [or her] that would not impact other class members." *In re Frontier Ins. Grp., Inc. Sec. Litig.*, 172 F.R.D. 31, 41 (E.D.N.Y. 1997) (quoting *Langner v. Brown,* No. 95 CV 1981, 1996 WL 709757, at *3 (S.D.N.Y. Dec. 10, 1996)).

Here, Defendants assert three counterclaims: (1) for breach of fiduciary duty, (2) for conversion, and (3) for defamation. Answer ¶¶ 137-63. The first two counterclaims are asserted against Mr. Vargas "and all other opt-in Plaintiffs;" the defamation claim is asserted only against Mr. Vargas. *See id.* ¶¶ 137-52, 153-63. As such, the only "unique" defense that could present a challenge to adequacy is the Defendants' defamation claim against Mr. Vargas. Defendants allege that Mr. Vargas falsely told the New York Daily News that he had been instructed by Defendants not to clock in on Fridays. Defendants assert that those false statements damaged Defendants' reputations. The Court does not believe that this counterclaim would require Mr. Vargas to "devote considerable time" to rebut the allegation. *Lapin*, 254 F.R.D. at 179. Indeed, the truth or falsity of the statement at issue—*i.e.*, that Mr. Vargas was told not to clock in on Fridays—is at issue in Plaintiffs' affirmative case against Defendants. Thus, in addition to not impacting other class members, the defamation counterclaim will not require considerable time and effort to defend. As a result, the existence of this unique counterclaim does not defeat the Court's finding that Mr. Vargas is an adequate class representative.

E.   The Proposed Class Satisfies the Predominance Requirement

In addition to the four prerequisites of Rule 23(a), Plaintiffs must also satisfy the requirements of Rule 23(b)(3), the first of which is that "the questions of law or fact common to the class members predominate over any questions affecting only individual members." The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. As such, the requirement is satisfied "if

resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Myers v. Hertz Corp.,* 624 F.3d 537, 547-48 (2d Cir. 2010) (citing *Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1252 (2d Cir. 2002)).

The Court concludes that the Plaintiffs have carried their burden to establish by a preponderance that common questions predominate over individual ones. Defendants' common policies and practices in failing to pay overtime, making unlawful deductions, and failing to comply with the notification requirements of the NYLL constitute the gravamen of Plaintiffs' claims. Courts in this district have found that the types of individual questions that exist in wage-and-hour cases, such as the hours worked or the exact damages to which each Plaintiff might be entitled, do not defeat the predominance requirement. *See Iglesias-Mendoza*, 239 F.R.D. at 373 (holding that questions of liability concerning whether class members were supposed to be paid overtime "are about the most perfect questions for class treatment"); *see also, Espinoza,* 280 F.R.D. at 128 ("Courts have often found the predominance requirement satisfied despite individual differences in the amount of damages."). Because questions concerning Defendants' liability predominate over individual questions that each Plaintiff may raise in this action, the class satisfies the predominance requirement of Rule 23(b)(3).

F.   The Proposed Class Satisfies the Superiority Requirement

In addition, the proposed class action must satisfy the second prong of Rule 23(b)(3), which requires a court to find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In analyzing this requirement, the court must consider: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the

14

claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

The superiority requirement is easily satisfied here, and Defendants' arguments against class adjudication are easily dismissed. It is clear that certification would be preferable to hundreds of separate lawsuits challenging Defendants' same policies and practices. Although some PTSTs may be entitled to more unpaid overtime than others, leading to greater recovery, the amount of recovery is not great enough that employees are likely to initiate individual actions on their own. *Jackson*, 298 F.R.D. at 169. In addition, because the class is composed of individuals who worked in and around New York City, adjudication of the claims in this forum is appropriate. Finally, the Court does not foresee any difficulties in managing this class action; damages for absent class members can be determined using standard statistical sampling techniques. *See Rosario v. Valentine Ave. Disc. Store, Co., Inc.*, 2013 WL 2395288, at *9 (E.D.N.Y. May 31, 2013), *report and recommendation adopted*, 2013 WL 4647494 (E.D.N.Y. Aug. 29, 2013) ("The question of whether class members were properly paid can be addressed by class-wide proof regarding the accuracy of defendants' payroll records, defendants' financial records, and testimony.").

The Court is aware that another lawsuit has been recently filed against Defendants in the Eastern District of New York. *See Kelly v. Call-A-Head Corp., et al.*, 17-cv-5737 (E.D.N.Y.). In that case, the court has entered a stay of "all class allegations" pending the motions for summary judgment and class action in this case. *Id.* at Dkt. No. 6. As a result, the Court does not find that this other pending litigation has any meaningful impact on its finding that a class action is a superior method of adjudication in the instant case. The proposed class meets the superiority requirement.

### G. The Proposed Class is Ascertainable

Finally, there is an implied requirement that the class be sufficiently ascertainable. *In re Petrobras*, 862 F.3d at 269. As the Second Circuit recently explained, ascertainability is a "modest

threshold requirement" that precludes certification only if a "proposed class definition is indeterminate in some fundamental way." *Id.* "That is, a class must be 'sufficiently definite *so that* it is administratively feasible for the court to determine whether a particular individual is a member'; a class must be 'defined by objective criteria' *so that* it will not be necessary to hold 'a mini-hearing on the merits of each case.'" *Id.* at 266-67 (citations omitted) (emphasis in original).

This requirement is easily satisfied for Plaintiffs' proposed class of PTSTs and for the WTPA subclass. Defendants have produced a list of all PTSTs employed after June 30, 2009; membership of both the class and the WTPA subclass of PTSTs employed after April 9, 2011 can be ascertained from that list. *See Masoud v. 1285 Bakery Inc.*, No. 15 CIV. 7414, 2017 WL 448955, at *4 (S.D.N.Y. Jan. 26, 2017) ("Defendants produced a document listing the banquet servers who worked at Pulse from September 18, 2009, onward . . . Class membership can definitely be ascertained by analyzing this document."). The proposed class therefore satisfies all of the prerequisites for class certification.

### H. Defendants' Remaining Arguments Are Without Merit[2]

#### 1.   Defendants' General Releases Argument

Defendants assert that class certification is not appropriate because several former employees have executed general releases of claims, including claims for unpaid wages. Defs.' Opp'n at 25. Defendants do not assert that any of the employees who supposedly executed releases are proposed class representatives, nor do they provide any additional information about the releases beyond the fact of their existence. Even assuming the releases are valid, their existence does not preclude certification, but merely narrows the size of the potential class. *See Gortat v. Capala Bros.,*

---

[2] To the extent Defendants challenge the evidence presented in support of Plaintiffs' motion, those challenges are wholly unpersuasive. Defendants' attempts to challenge the merits of Plaintiffs' claims is also inappropriate here, where Plaintiffs' burden is to show that the putative class meets the statutory requirements of Rule 23. *See Gortat*, 257 F.R.D. at 362.

No. 07-CV-3629, 2010 WL 1423018, at *3 (E.D.N.Y. Apr. 9, 2010), *aff'd,* 568 F. App'x 78 (2d Cir. 2014) (rejecting defendants' attempt to use nonjoinder affidavits to "preemptively and vicariously opt these potential plaintiffs out of any class action that might be certified"); *see also Dover v. British Airways, PLC (UK)*, No. 12-CV-5567, 2017 WL 1251083, at *7 (E.D.N.Y. Mar. 31, 2017), *leave to appeal denied,* No. 17-1121, 2017 WL 2590319 (2d Cir. June 14, 2017) (holding that the applicability of a waiver of release as to some of the putative class members does not destroy predominance).

### 2.   Defendants' Liquidated Damages Argument

Finally, Defendants argue that class certification should be denied because New York's class certification statute, New York Civil Practice Law and Rules § 901(b), prohibits class actions seeking liquidated damages "[u]nless a statute . . . specifically authorizes the recovery thereof in a class action."  *See* N.Y. C.P.L.R. § 901(b).  The class in this case is not being certified pursuant to that statute, however; this class seeks certification pursuant Federal Rule of Civil Procedure 23.  The Supreme Court has addressed New York's rule against liquidated damages in this context, and determined that the New York statute is procedural in nature and therefore is superseded by Rule 23.  *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408-10 (2010).  The cases Defendants cite to in support of their argument notably pre-date the Supreme Court's decision in *Shady Grove.*  As Rule 23 contains no bar on liquidated damages, Defendants' argument is devoid of merit.  *See Lopes and Naranjo v. Heso, Inc., et al.*, No. 16-cv-6796, 2017 WL 4863084, at *3 (E.D.N.Y. Oct. 27, 2017) ("Because it is now firmly established that Rule 23, and not state law, governs the certification of state law class actions brought in federal court, NYLL claims may be brought as class actions, so long as the court otherwise has jurisdiction (either through supplemental jurisdiction, with FLSA claims as the anchor, or through diversity jurisdiction when they are brought as stand-alone actions).").

**VI.    CONCLUSION**

For the reasons stated above, Plaintiff's motion for class certification is granted.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 201.

SO ORDERED.

Dated: January 10, 2018
       New York, New York

_____
GREGORY H. WOODS
United States District Judge