UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JUAN VARGAS, individually, and on behalf
of all others similarly situated,

                                                                          Civ. Action No.
                              Plaintiffs,                                 15-CV-05101 (DCF)

                    -against-

CHARLES W. HOWARD and
CALL-A-HEAD CORP.,
                                          Defendants.
--------------------------------------------------------X

## STIPULATION OF SETTLEMENT AND RELEASE AGREEMENT

This Stipulation of Settlement and Release Agreement ("Agreement") is entered into by and between Court appointed Class Representatives Juan Vargas, Peter Fowler, Girolamo Genova, Ricardo Whittaker and Edward Kubinski ("Class Representatives") and their counsel, The Marlborough Law Firm, P.C. and Slater, Slater Schulman LLP (collectively referred to as "Class Counsel") on behalf of themselves individually and the Participating Class Members on the one hand, and named defendants Charles W. Howard ("Howard"), and Call-A-Head Corp. ("Call-A-Head"), collectively with Howard ("Defendants"), as well as Call-A-Head shareholder Kenneth Howard, and related entities, Call-A-Head Portable Toilets, Inc, and Call-A-Head Fuel Division, Inc. (collectively, with Defendants, the "Releasees") on the other hand.

## RECITALS AND BACKGROUND

WHEREAS, on June 30, 2015, Plaintiff Juan Vargas filed a Complaint in this Action against Defendants under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and New York's State Labor Laws ("NYLL") claiming that Defendants failed to pay overtime wages ("the Action"). The Complaint also contains claims for violations of the wage statement and wage rate notification requirements of the Wage Theft Prevention Act (NYLL § 195);

WHEREAS, on July 31, 2015, Defendant Call-A-Head asserted counterclaims against Plaintiff Vargas for conversion of gasoline and breach of fiduciary duty. Defendants Call-A-Head and Howard also filed a counterclaim against Plaintiff Vargas for defamation;

WHEREAS, on August 4, 2015, Named Plaintiff Juan Vargas filed an amended complaint asserting individual claims for retaliation based on allegedly retaliatory counterclaims asserted against him by Defendants in their Answer to the initial Complaint.

WHEREAS, on January 31, 2016, the Court issued an order certifying this action as a collective action pursuant to 29 U.S.C. 216(b). The FLSA Collective is currently comprised of 96 (ninety-six) opt-in Plaintiffs ("Opt-in Plaintiffs") who filed consents to join the action as Plaintiffs and worked for Defendants as Portable Toilet Service Technicians;

WHEREAS, on January 10, 2018, the Court issued an order certifying a Class of Portable Toilet Service Technicians with respect to Plaintiffs' New York State Law claims pursuant to Federal Rules of Civil Procedure Rule 23. Thereafter notice was issued to the class based on the contact information produced by Defendants. Notice was also issued to approximately 400 Call-A-Head employees who Defendants mistakenly identified as members of the Class. Twenty-six prospective Class Members opted out of the Class. The Certified Class as currently constituted consists of approximately 1,275 members, who worked as Portable Toilet Service Technicians;

WHEREAS, the Parties have engaged in extensive formal and informal discovery during the course of the Action, including financial discovery of Defendants and other Releasees (defined below);

WHEREAS, the Parties have engaged in numerous and protracted formal and informal settlement negotiations to arrive at the settlement described herein, including a full-day mediation session before Michael Patrick McKenna, Esq. and an in-person and multiple telephonic settlement conferences before the Honorable Debra C. Freeman, United States Magistrate Judge;

WHEREAS, Defendants have denied and continue to deny all of the allegations made by Plaintiffs in the Action and have denied and continue to deny that they are liable or owe unpaid wages or damages to anyone with respect to the alleged facts or causes of action asserted in the Action. Nonetheless, without admitting or conceding any liability or that they owe any money to anyone whatsoever, Defendants have agreed to settle the Action on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Action;

WHEREAS, the purpose of this Agreement is to settle fully and finally: 1) all wage and hour FLSA claims during the Class Period for persons cashing their settlement checks and 2) all state law wage and hour claims (whether pursuant to statute, regulation and/or case law), between the Defendants and any Portable Toilet Service Technician who worked for Defendant Call-A-Head from June 30, 2009 through January 10, 2018 who has not previously opted out of the Class (collectively referred as "Class Members"), did not receive judicial approval of a prior settlement, or does not file a Settlement Opt-out Statement including all claims and counterclaims asserted in the Action in order to avoid the burden, expense, and uncertainty of continuing the Action; and

WHEREAS, Class Counsel has analyzed and evaluated the merits of the claims made against Defendants and the impact of this Agreement on the Class Members and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Action, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, Class Counsel and the Class Representatives are satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of the Class Members;

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Action on the following terms and conditions:

1.    **DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1    **The Action**. "The Action" shall mean the lawsuit pending in the Southern District of New York, styled *Vargas v. Howard, et al.,* under Docket Number 15-cv-5101(DCF).

1.2    **Agreement.** "Agreement" means this Stipulation of Settlement and Release Agreement.

1.3    **Call-A-Head.** "Call-A-Head" shall refer to Defendant Call-A-Head Corp.

1.4    **Class or Class Members**. "Class" or "Class Members" shall be defined as all persons employed by Defendants as Portable Toilet Service Technicians at any time between June 30, 2009 through the Class Certification date on January 10, 2019 who have not opted out of the Action.  The Class shall exclude individuals who have previously executed a court-approved Settlement Agreement with Defendants for all of their work performed during the Class Period.

1.5    **Class Counsel or Plaintiffs' Counsel.** "Class Counsel" or "Plaintiffs' Counsel" shall mean The Marlborough Law Firm, P.C., 445 Broad Hollow Road, Suite 400, Melville, New York 11747 and Slater, Slater Schulman LLP, 488 Madison Avenue, 20th Floor, New York, New York 10022.  Class Counsel represents that as of the date of the execution of this Agreement, Class Counsel does not represent any former or current employees of the Defendants with respect to any claims asserted or to be asserted against the Defendants, except those resolved by this Settlement Agreement.

1.6    **Class Member List.** "Class Member List" shall mean the list of all potential claimants, identified by: (i) name; (ii) last known address; (iii) employment start date; (iv) employment end date; and (v) social security number. Defendants shall produce the class Member List in excel format with columns as set forth above within twenty days of the execution of this Agreement. Defendants represent that the Class Member List is true complete and accurate. Social Security Numbers shall only be used for the following purposes: 1) to perform a search for any returned mailings or identifying class members; 2) for tax reporting of the settlement payments; and 3) for contacting class members with respect to the Settlement.

1.7    **Class Representatives**. "Class Representatives" shall mean Juan Vargas, Girolamo Genova, Peter Fowler, Ricardo Whittaker and Edward Kubinski.

1.8    **Corrective Notice.** "Corrective Notice" shall mean the Court-approved notice to individuals previously identified by Defendants as class members, who defendants maintain are not class members and mistakenly received Notice of Pendency of the Lawsuit following the Court's decision on Plaintiffs' Motion to Certify the Class, annexed hereto as Exhibit A, along with a Spanish language translation of that document. Subject to Defendants' confirmation, there are approximately 400 workers who will be entitled to Corrective Notice under this settlement because they did not work as Portable Toilet Service Technicians as defined by this Agreement during the Class Period.

**1.9**     **Costs and Fees.** "Costs and Fees" shall mean Class Counsel's attorneys' fees, costs and expenses.

**1.10**     **Court.**  "Court" shall mean the United States District Court for the Southern District of New York.

**1.11**     **Class Period.** "Class Period" shall mean the period from June 30, 2009 through January 10, 2018.

**1.12**     **Cy Pres Recipient.** "Cy Pres Recipient" shall mean the IRC 501(c)(3) not-for-profit organization authorized by the Court to receive the amounts remaining in the Settlement Fund after all other payments have been made pursuant to this Agreement.

**1.13**     **Days.** "Days" shall mean calendar days.

**1.14**     **Defendants.** "Defendants" shall mean named defendants Charles W. Howard and Call-A-Head Corp.

**1.15**     **Defense Counsel or Defendants' Counsel.** "Defense Counsel" or "Defendants' Counsel" shall mean The Scher Law Firm, LLP, One Old Country Road, Suite 385, Carle Place, New York 11514.

**1.16**     **Effective; Effective Date.** "Effective" shall mean the occurrence of all of the following, and "Effective Date" shall be the latest date that the following occurred:

(A)     the Court has entered Judgment and ruled on the motions for Service Awards pursuant to Section 3.2(C) and for attorneys' fees and reasonable costs pursuant to Section 3.3; and

(B)     the Judgment and the rulings on such motions have become Final.  "Final" means the later of:

(1)     Thirty-one (31) days after the Court enters Judgment if no reconsideration or rehearing or appeal is sought;

(2)     If rehearing or reconsideration is sought, after any and all avenues of rehearing or reconsideration have been exhausted and no further rehearing or reconsideration is permitted, and the time for seeking such review has expired, and the Judgment and rulings on Service Awards and attorneys' fees and reasonable costs have not been modified, amended or reversed in any way.

(3)     If a Notice of Appeal is filed, the latest of the following, if applicable, has occurred: (i) any appeal from the Final Order has been finally dismissed; (ii) the Final Order has been affirmed on appeal in a form substantially identical to the form of the Final Order entered by the Court; (iii) the time to petition for review with respect to any appellate decision affirming the Final Order has expired; and (iv) if a petition for review of an appellate

4

decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Order in a form substantially identical to the form of the Final Order entered by the Court.

1.17 **Event of Default.** "Event of Default" shall mean any event set forth in Section 3.4(A) of this Agreement.

1.18 **Fairness Hearing.** "Fairness Hearing" shall mean the hearing held before the Court, relating to the Motion for Final Approval.

1.19 **Fee Award.** "Fee Award" shall mean the Court-approved attorneys' fees, costs and expenses as described in Section 3.3.

1.20 **Final Order.** "Final Order" shall mean the Order entered by the Court after the Fairness Hearing or the Motion for Final Approval, approving the terms and conditions of this Agreement, including the distribution of the settlement payments and Service Awards, the approval of professional fees and costs, and dismissal of this Action.

1.21 **Implementing Order.** "Implementing Order" shall mean the Order entered by the Court: (i) preliminarily approving the terms and conditions of this Agreement; (ii) authorizing the form and manner of notice of the settlement to the Class; (iii) setting the dates and deadline for effectuating the settlement, including the Opt-out/Objection Bar Date, date of the mailing of the Notice and the date for the Fairness Hearing.

1.22 **Mediator**. "Mediator" shall mean Patrick Michael McKenna, Esq.

1.23 **Notice.** "Notice" shall mean the Court-approved Notice of Proposed Settlement of the FLSA Collective Action and Class Action, which includes notice of an opportunity to opt-out and/or object to the proposed settlement, annexed hereto as Exhibit B, along with a Spanish language translation of that document.

1.24 **Objector.** "Objector" shall mean an individual, including a Named Plaintiff, who properly and timely files an objection to the proposed settlement and does not opt out of the Settlement as described in Section 2.6, below.

1.25 **Opt-in Plaintiffs**. "Opt-in Plaintiffs" shall mean all Class Members who submitted consent to join forms in this Action prior to January 10, 2019.

1.26 **Opt-out/Objection Bar Date.** "Opt-out/Objection Bar Date" shall mean the last date for a Class Member to perform one of the following acts as further defined in this Agreement: (i) file an Opt-out Statement, or (ii) file timely written Objections to the proposed settlement. The Statements shall be postmarked no later than sixty (60) days after the initial mailing of Notice of Proposed Settlement of Class Action Lawsuit.

1.27 **Opt-out Statement.** "Opt-out Statement" shall mean the statement that Class Members must timely submit to the Settlement Administrator in order to opt-out of the Settlement.

5

**1.28**   **Participating Class Members**. "Participating Class Members" shall mean all Class Members other than those Class Members who submit valid Opt-out Statements in accordance with the procedures set forth below.

**1.29**   **Parties**. "Parties" shall mean the Defendants, Class Representatives, Opt-in Plaintiffs, and Participating Class Members.

**1.30**   **Portable Toilet Service Technicians.** "Portable Toilet Service Technicians" shall mean pump truck drivers, flatbed truck drivers, route drivers, water truck drivers, plumbers and those whose job titles are identified in Defendants' employment records as "pimp," "field," or "swing" employed by one or more of the Defendants during the Class Period.

**1.31**   **Qualified Settlement Fund or QSF**. "Qualified Settlement Fund" or "QSF" shall mean the account established by the Settlement Administrator for the Settlement Amount paid by Defendants. The QSF will be controlled by the Settlement Administrator subject to the terms of this Agreement, an agreement between the Settlement Administrator and the Parties and the Court's Orders for Preliminary Approval and Final Approval. Interest earned on the QSF will become part of the Net Settlement Fund. Except in the event of a default, the total amount of money in the QSF to be funded by the Defendants shall not exceed $7,140,000.00.

**1.32**   **Released FLSA Claims.** "Released FLSA Claims" shall mean the federal wage-related claims released pursuant Section 4.1(A) of this Agreement.

**1.33**   **Released State Law Claims.** "Released State Law Claims" shall mean the State wage-related claims released pursuant Section 4.1(B) of this Agreement.

**1.34**   **Releasees.** "Releasees" shall mean Charles W. Howard, Kenneth Howard, Call-A-Head Corp., Call-A-Head Fuel Division, Inc. and Call-A-Head Portable Toilets, Inc., their individual and collective trusts, estates, heirs, executors, administrators, spouses, subsidiaries, parents, affiliates, partners (general and limited), members, shareholders, lenders, (including any administrative agent or collateral agent for such lenders), creditors, managers, owners, directors, employees, agents, representatives, attorneys, trustees, transferees and assigns of any and all of them in their individual and/or representative capacities.

**1.35**   **Settlement Administrator.** "Settlement Administrator" shall mean a qualified entity selected by Class Counsel to provide Notice to Class Members and administer the distribution of the settlement funds.

**1.36**   **Settlement Checks.** "Settlement Checks" shall mean the checks issued to Participating Class Members from the Qualified Settlement Fund as calculated by the Settlement Administrator in accordance with this Agreement.

**2.**   **SETTLEMENT PROCEDURES**

**2.1**   **Preliminary Approval Motion**

6

(A)    Within thirty (30) days of complete execution of this Agreement, Class Counsel shall file a Motion for Preliminary Settlement Approval ("Preliminary Approval Motion"). In connection with the Preliminary Approval Motion, Class Counsel will submit to the Court: (i) the proposed Notice and Corrective Notice, (ii) the proposed Implementing Order, (iii) an executed version of this Agreement, and (iv) the necessary documents, memorandum, affidavits and exhibits for the purposes of seeking preliminarily approval of the settlement. Defendants will be given five (5) days to provide approval of the terms, form, and content of the proposed Notice, Implementing Order, and Final Settlement Approval Order before those documents are filed with the Court. Defendants may review the terms of the proposed Orders to ensure they are consistent with this Agreement. The Preliminary Approval Motion will also seek the setting of a date for individuals to submit Opt-out Statements or written Objections to the settlement, and the scheduling of a Fairness Hearing on the earliest practicable date.

(B)    In the Preliminary Approval Motion, Class Counsel shall inform the Court of the intended process to obtain a "Final Order" in accordance with the Court-approved schedule, so that at the Fairness Hearing, the Court may, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the Releases, as described herein; (3) dismiss the Action with prejudice, while reserving jurisdiction over the enforcement of the Settlement Agreement; (4) award Costs and Fees and any Service Awards; and (5) grant *res judicata* and collateral estoppel effect to the Final Order with respect to any claims released in accordance with this Agreement; and (6) authorize distribution and payment to Participating Class Members.

(C)    Plaintiffs will file the Preliminary Approval Motion as "unopposed." Defendants may not oppose such application so long as it is consistent with the terms and conditions of this Agreement.

**2.2    Retention of the Settlement Administrator and Responsibilities of the Settlement Administrator, Defendants and Class Counsel.**

(A)    Class Counsel shall engage a Settlement Administrator that is agreeable to the Defendants, who shall be paid out of the Qualified Settlement Fund. The Settlement Administrator shall be responsible for:

1.    promptly providing an IRS Form W-9 to Defendants' Counsel following the Settlement Administrators engagement by the parties; and

2.    preparing, printing and disseminating the Notice to the Class and Corrective Notice in accordance with the Implementing Order; and

3.    copying counsel for all Parties on material correspondence and promptly notifying all counsel for the Parties of any material requests or communications made by any Party; and

4.  receiving, reviewing and promptly furnishing to counsel for the Parties copies of any Opt-out Statements, objections or other written or electronic communications from Class Members which the Settlement Administrator receives; and

5.  filing with the Court any Opt-out Statements or written objections; and

6.  keeping track of Opt-out Statements including maintaining the original mailing envelope in which the request was mailed; and

7.  ascertaining current address and addressee information for each Notice, and Settlement Check returned as undeliverable and the mailing of Notice, and Settlement Checks; and

8.  responding to inquiries of Class Members regarding procedures for filing objections, and Opt-out Statements; and

9.  referring to Class Counsel all inquiries by the Class regarding matters not within the Settlement Administrator's duties specified herein; and

10. responding to inquiries from Class Counsel and Defense Counsel consistent with the Settlement Administrator's duties specified herein; and

11. promptly apprising Class Counsel and Defense Counsel of the activities of the Settlement Administrator; and

12. maintaining adequate records of its activities, including the dates of the mailing of Notice(s) and receipt of Opt-out Statements, returned mail and other communications and attempted written or electronic communications with the Class; and

13. preparing drafting and mailing W-2 and 1099 forms, Settlement Checks, and Service Awards as applicable to ParticipatingClass Members; and

14. providing Defendants' counsel with timely written notice of instructions as to where to send Defendants' funding checks; and

15. providing an accounting to Class Counsel and Defense Counsel following each distribution for how the settlement proceeds were distributed and whether the checks were cashed/deposited by the Class Members; and

16. such other tasks upon which the Parties mutually agree.

(B)  In addition, on a rolling basis throughout the claims period, and no later than fifteen (15) days prior to the Fairness Hearing, the Settlement Administrator shall certify to Class Counsel and to Defense Counsel in electronic format: (i) a list of all Class Members who opt-out of the settlement at any time during the opt-out period, and (ii) estimated calculations for each class member, as well as the Settlement

8

Administrator's fees, costs, and expenses. The Settlement Administrator shall also provide counsel for the Parties with an updated address list for the Class. Throughout the period of settlement administration, the Settlement Administrator will provide reports to the Parties upon request by either Party, regarding the status of the mailing of the Notices to the Class, and any other aspect of the Settlement administration process.

(C)     Defendants' Counsel shall be responsible for: (i) promptly and simultaneously copying Class Counsel and the Settlement Administrator on material correspondence; (ii) reasonably cooperating with the Settlement Administrator; (iii) providing accurate information necessary to calculate the amounts of the Settlement Checks; (iv) providing reasonably available data to assist the Settlement Administrator in locating Class Members; (v) providing additional documents and information as reasonably requested by Class Counsel or the Settlement Administrator in connection with the approval and/or administration of the Settlement, to the extent such documents and/or information are in Defendants' possession, and (vi) providing other reasonably available information related to the administration of the Settlement.

(D)     The Parties will have equal access to the Settlement Administrator.  Class Counsel and Defendants agree to use their best efforts to cooperate with the Settlement Administrator and provide reasonable assistance in administering the Settlement.

**2.3     Notice**

(A)     **Class List to Counsel**. Within ten (10) days of the Implementing Order being signed by the Court, Defendants' Counsel shall confirm the accuracy of the Class List. With respect to any Participating Class Members who entered into a prior severance agreement or settlement agreement whose terms were not approved by a Court, Defendants' Counsel shall provide sufficient details about the prior agreement and employment dates of the Participating Class Member to pro rate the amount of any reduction in their award in this Action based on the time worked during the Class Period.

(B)     **Mailing of Notice.** The Notice, which shall be sent both in English and in Spanish, shall inform Class Members about this Settlement and shall also advise them of the opportunity to object to, or opt-out of the Settlement pursuant to this Agreement, and/or to appear at the Fairness Hearing. Within thirty (30) days of the entry of the Implementing Order by the Court, the Settlement Administrator shall mail to all Class Members, the Court–approved Notice of Proposed Class Action Settlement via First Class United States mail in English and Spanish. The Settlement Administrator will take all reasonable steps to obtain the correct address of any Class Member for whom a Notice is returned by the post office as undeliverable, including a skip trace, and shall attempt a re-mailing to any Class Member for whom it obtains a more recent address. The Settlement Administrator shall notify Class Counsel and Defense Counsel of any Notice sent to a Class Member that is

9

returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

(C)   **Opt-out/Objection Bar Date.** Class Members shall have sixty (60) days from the initial mailing to submit an Opt-out Statement or written objections to the Settlement. Opt-out Statements and written Objections submitted without a postmark must be received by the Settlement Administrator on or before the Opt-out/Objection Bar Date.

To the extent that the envelope, fax or email does not contain a postmark or sending date, the date that the Settlement Administrator stamps the envelope, written objection or Opt-out Statement 'received' shall apply.

An additional fifteen (15) days will be given for individuals that can demonstrate good cause including not receiving notice, military service, hospitalization, or other circumstances. Good cause will be determined by the Parties acting in good faith. If the Parties cannot resolve the dispute, the Parties will request judicial intervention to resolve the dispute.

(D)   **Skip Trace.** To the extent that a Notice is returned without a forwarding address, the Settlement Administrator will conduct a skip-trace to locate the Class Member, and re-mail the Notice shall have until the Opt-out/Objection Bar Date or fifteen (15) days from the date of re-mailing, whichever is later to Opt-out or Object to the Settlement.

**2.4   Approval of the Implementing Order.**

(A)   Class Counsel shall apply to the Court for preliminary approval of the Settlement and approval of the proposed Notice, upon execution of this Agreement.

(B)   The proposed Implementing Order shall seek the setting of a deadline of sixty (60) days from the initial mailing of Notice to Class Members: (a) for Class Members to file Opt-out Statements; and/or (b) to file written objections to the settlement. The Proposed Implementing Order shall also seek to set a date for the Fairness Hearing for Final Approval of the Settlement which shall be no earlier than one hundred days (100) days following the date that the Court enters the proposed Implementing Order.

(C)   Class Counsel shall inform the Court of the intended process to obtain a "Final Order" that will, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the Releases; (3) have *res judicata* and collateral estoppel effect with respect to any claims released in accordance with this Agreement; (4) dismiss the Action; and (5) award Class Counsel's fees, expenses and costs.

(D)   Class Counsel shall provide a "Microsoft Word" version of the Preliminary Approval Motion, including the Memorandum of Law and Declaration in Support to Defendants' Counsel for review and comment reasonably in advance of any

deadline to file the same.  Upon completion of such review, Class Counsel may file the motion as "unopposed." Defendants reserve the right to oppose such application, however, only if the motion is inconsistent with the terms and conditions of this Agreement.

(E)     The Parties shall work together, diligently and in good faith, to obtain expeditiously an Implementing Order, Final Order, and dismissal in accordance with this Agreement with prejudice.  Any disputes which arise between the Parties related to the Parties' efforts to obtain a Final Order, and dismissal with prejudice shall be submitted to the Court.

## 2.5    Opt-outs.

(A)     The end of the time period to opt-out of the Settlement by filing an Opt-out Statement ("Opt-out Period") shall be on the Opt-out/Objection Bar Date.

(B)     Class Members who choose to opt-out of the Settlement as set forth in this Agreement must mail via overnight mail or First Class United States mail, postage prepaid, a written, signed statement to the Settlement Administrator that states he or she is opting out of the Settlement, and include his or her name, address, and telephone number(s) and a statement indicating his or her intention to opt-out such as: "I opt out of the Call-A-Head wage and hour settlement." To be effective, an Opt-out Statement must be postmarked by the Opt-out/Objection Bar Date. The Settlement Administrator shall send each Opt-out Statement to Class Counsel and Defense Counsel by email delivery no later than three (3) days after the receipt of the Opt-out Statement.

(C)     The Settlement Administrator will send a list of all Settlement Opt-out Statements to Class Counsel and Defense Counsel no less than seven (7) days before the Fairness Hearing.  The Settlement Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Settlement Administrator is relieved of its duties and responsibilities under this Agreement.

(D)     Any Class Member who does not submit a Settlement Opt-out Statement pursuant to this Agreement: (1) will be deemed to have accepted the settlement and the terms of this Agreement; (2) will be bound by the Final Order in this Action; (3) will have released Released State Law claims as set forth in this Agreement; and (4) agrees that the Final Order shall have *res judicata* and collateral estoppel effect with respect to any Released State Law Claims that Class Members may assert against the Defendants in the future.

## 2.6    Objections to Settlement.

(A)     Objectors who wish to present objections to the proposed settlement at the Fairness Hearing must first provide their objections in writing. The end of the time period to submit written objections to the Settlement shall be on the Opt-out/Objection Bar Date (subject to the skip trace provisions set forth above).

(B)     Each written objection must state with specificity the grounds for the objection and must also state whether the objection applies only to the objector, a subset of class members or to the entire class. To be effective, such statement must be mailed to the Settlement Administrator via First-Class United States Mail, the written objections must state each reason for each of the objections and include any supporting documentation.  The statement must also include the name, address and telephone number of the objecting Class Member. The Settlement Administrator shall stamp the date received on the original and send copies of each objection and supporting documents, to Class Counsel and Defense Counsel by email delivery no later than three (3) days after receipt of the objection.

(C)     An Objector, who files a written objection as set forth above, has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections. An Objector may withdraw his or her objections at any time.  An Objector must be a Participating Class Member. An objection does not constitute the filing of a Settlement Opt-out Statement. Any Class Member who files a Settlement Opt-out Statement is prohibited from filing objections to the Settlement.

(D)     The Parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

**2.7     Fairness Hearing and Motion for Final Approval and Dismissal.**

At the Fairness Hearing, the Parties will request that the Court, among other things: (i) approve the Stipulation of Settlement and Release Agreement as fair, reasonable, adequate, and binding on all Participating Class Members who have not timely opted out of the Settlement; (ii) order the attorneys' fees, expenses and costs as approved by the Court to be paid to Class Counsel out of the Qualified Settlement Fund pursuant to the funding and payment schedule set forth in Section 3.1; (iii) order the dismissal with prejudice of all Released State Law Claims on the Effective Date  and Released FLSA Claims of Participating Class Members who did not opt-out of the Settlement upon the endorsement of a Settlement Check; (iv) order entry of Final Judgment in accordance with this Agreement; (v) grant *res judicata* and collateral estoppel effect to the Final Order with respect to any and all claims released pursuant to this Agreement; and (vi) retain jurisdiction over the interpretation, implementation and enforcement of this Agreement as well as any and all matters arising out of, or related to, the interpretation, implementation and enforcement of this Agreement and of the Settlement contemplated thereby.

**2.8**   **Effect of Failure to Grant Final Approval.**  In the event the Court fails to enter the Final Order in accordance with this Agreement, the Action will proceed as if no settlement had been reached.

**3.**   **SETTLEMENT TERMS**

**3.1**   **Funding.**

(A)    Prior to the Court's preliminary approval of the Settlement, payments to the Settlement Fund shall be held in escrow by Defendants' Counsel. Following the preliminary approval of the Settlement, Defendants shall make payments to the QSF in the total sum of $7,140,000 according to the following schedule: (1) a payment of $240,000 currently being held in escrow by Defendants' Counsel shall be transferred to the QSF within ten (10) days of the implementing order; (2) Defendants will make three additional monthly installment payments of $60,000 each on February 15, 2020, March 15, 2020, and April 15, 2020; and (3) Defendants shall thereafter make 48 monthly installment payments of $140,000 each, beginning on May 15, 2020 through April 15, 2024 for a grand total of $7,140,000. Under no circumstances shall Defendants be required to fund more than $7,140,000, absent an Event of Default as described in Section 3.4 of this Agreement. A copy of the Settlement Payment and Declining Security Balance Schedule is annexed as Exhibit C to this Settlement Agreement.

(B)    Within ten days of the Effective Date of the Settlement, the Settlement Administrator shall make the following payments from the monies in the QSF at the time of the Final Order in the following order: (1) mail all Court-approved Service Awards to the recipients; (2) pay itself anticipated notice and administration expenses as authorized by the Parties and approved by the Court; (3) mail, wire, or hand deliver the Court-approved attorney costs, and litigation expenses to Class Counsel.

The remainder, if any, shall be distributed as follows proportionately based on their percentage of recovery from the settlement fund: (1) to Class Counsel in partial payment of attorneys' fees (Attorneys' Fees Payments) as approved by the Court; and (2) Participating Class Members in the amount calculated by the Settlement Administrator.

To the extent that the amount accrued in the QSF is insufficient to cover these payments, such unpaid amounts will be paid from subsequent payments to the QSF prior to distribution of Court-approved attorneys' fees or settlement distributions to class members.

(C)    Every ninety (90) days thereafter, the following distributions shall be made from the Settlement Fund: (1) Attorneys' Fees Payments as authorized by the Court and as described above in the proportion based on percentage of recovery from the Settlement Fund, and (2) the remainder to Participating Class Members on a pro-

rata basis in the amount calculated by the Settlement Administrator and approved by Plaintiffs' Counsel.

**3.2    Settlement Fund Computation and Allocations.**

(A)    The individual settlement allocations to be distributed to each Class Member shall be computed based on the following factors: (1) a base amount of three hundred dollars per class member, (2) consideration of whether the class member is also an Opt-in Plaintiff; (3) the number of weeks worked during the Class Period; and (4) the amount of any settlement or severance previously paid to the participating Class Member for work performed during the Class Period. The method for calculating these amounts shall be determined in accordance with the length of employment indicated by the employment dates provided by Defendants pursuant to Section 2.3 (A) of this Agreement, unless a Class Member disputes those dates and proves to the Claim Administrator by clear and convincing in the evidence that the information is incorrect:

(1)    Participating Class members shall receive a base amount of $300 per class member. Under no circumstances will any participating class member be entitled to less than $300.

(2)    Participating Class Members shall also receive one point per workweek worked during the Class Period. The number of workweeks shall be rounded up to the nearest whole number.

(3)    Opt-in Plaintiffs shall receive an additional one-half of one point per workweek during the Class Period.

(4)    To calculate each Participating Class Members' proportionate share of the installment payments the Settlement Administrator shall:

(a)    Add all points for each Class Member together to receive the total denominator;

(b)    Divide the number of points for each Class Member by the Total Denominator to obtain each Participating Class Members' "Percentage of the Net Settlement Fund."

(c)    Multiply each Participating Class Members' Percentage of the Net Settlement Fund by the Net Settlement Fund (less a $25,000 reserve for unanticipated expenses) to determine each Participating Class Members' Gross Settlement Payment." The sum of the Gross Settlement Payments for all Participating Class Members shall equal the Net Settlement Amount.

(d)    Participating Class Members who have received a severance with a general release or have received any payments from a prior litigation against any of the Defendants, that was not approved by a Court for

14

work performed during the Class Period, will receive a reduction equal to the amount received for work performed during the Class Period. With respect to such severance agreements and settlements, where a Participating Class Member was compensated for work both during and outside the Class Period, the amount of the reduction shall be based on the number of weeks worked during the Class Period and exclude time worked outside the Class Period.

(5)     **Remainder Amount:** Uncashed Settlement Checks to any Participating Class Members shall not be distributed to other Participating Class members until the payment schedule set forth in Section 3.1 of this Agreement is completed. Until that time, Participating Class members may contact the Settlement Administrator to have those checks reissued.

(a)     Following, the payment schedule set forth in Section 3.1 of this Agreement, payments by Defendants, the payment of any outstanding attorneys' fees authorized by the Court, and the payment of any outstanding settlement administration expenses, the remainder of the Settlement Fund (the "Remainder Amount") shall include: (1) the remainder of the $25,000 reserve identified above; (2) any amounts not paid out due to prior severance or settlements not approved by any court; (3) any amounts remaining in the Settlement Fund for any uncashed checks; and (4) any unused administration expenses.

(b)     The Remainder Amount shall be distributed in the following order of priority: (1) any unpaid administration expenses; (2) any unpaid attorneys' fees authorized by the Court; (3) a remainder payment (the "Remainder Payment"), including a distribution to Participating Class Members (excluding those Participating Class Members who cashed no prior checks and could not be located by the Settlement Administrator) on a pro rata basis.

(c)     The Second Remainder Amount shall be the amount remaining in the Settlement Fund, one hundred (100) days after the Remainder Payment checks are issued. In the event that the Second Remainder Amount is greater than or equal to $15,000, payments shall be distributed in the following order of priority: (1) any unpaid administration expenses; (2) any unpaid attorneys' fees authorized by the Court; (3) a remainder payment (the "Second Remainder Payment"), including a distribution to Participating Class Members (excluding those Participating Class Members who did not cash their Remainder Payment checks) on a pro rata basis. In the event that the Second Remainder Amount is less than $15,000, the Second Remainder Amount will be paid to the Cy Pres Recipient.

(d)   In the event that the Second Remainder Payments are issued to Participating Class Members, all funds remaining in the Settlement Fund one hundred (100) days after those payments are issued shall be used to pay any outstanding administration expenses and remaining funds shall be paid to the Cy Pres Recipient.

(e)   In no event shall any portion of the Settlement Fund revert back to Defendants.

(B)   **Allocation and Tax Characterization**. For tax reporting purposes, the funds distributed to Participating Class Members shall be apportioned as follows: 50% shall be reported on IRS Forms W-2 and 50% shall be reported on 1099 income. The Settlement Administrator shall be responsible for deducting reportable payroll, income and other employment related taxes. The Settlement Administrator shall be responsible for issuing tax forms to Participating Class Members in accordance with this Section. All taxes due to any taxing authority relating to payments made to the Participating Class Members as result of this Settlement Agreement shall be paid from the QSF and shall not be paid by the Releasees.

(C)   **Service Awards.** Class Counsel shall seek Court Approval of the payment of Service Awards of $10,000.00 for each of the five Class Representative and $3,000 to two Class Members subject to deposition in the action, Jeury Marte and Carlos Velazquez. These Service Awards will be sought in consideration for work these Plaintiffs performed on behalf of the Class, including providing deposition testimony, sworn statements in support of Plaintiffs' motions and information to Plaintiffs' counsel regarding the claims or defenses associated with the Action. Defendants may not oppose on this application. The substance of Plaintiffs' application for a Service Award is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the settlement of the Action. The outcome of the Court's ruling on the application for Service Awards shall not terminate this Agreement or otherwise affect the Court's Final Approval.

(D)   The Participating Class Members agree to hold the Defendants harmless for any claim for unpaid taxes as the result of, or consequence of, any Participating Class Member's receipt of the settlement proceeds resulting from this Settlement Agreement.

**3.3   Professional Fees, Costs and Expenses.** At the Fairness Hearing, Class Counsel will petition the Court for an award of attorneys' fees not to exceed one-third of the Settlement Fund, in addition to reimbursement of Class Counsel's actual litigation expenses and costs, and Service Awards as set forth above. The fees, costs and Service Awards shall be paid from the Qualified Settlement Fund. These items and the Settlement Administration expenses will therefore reduce the Qualified Settlement Fund by the amount approved by the Court. Defendants may not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court.

### 3.4 Default, Acceleration and Security

(A) An Event of Default occurs when: (i) Defendants fail to make payments pursuant to Section 3.1; (ii) Defendants sell, transfer, assign, mortgage, pledge, grant a security interest in, or in any manner encumber or effectuate a change in ownership of the company, or any property or asset pledged as security under the terms of this Settlement Agreement; (iii) Defendants sell, transfer, assign, mortgage, pledge, grant a security interest in, or in any manner encumber or effectuate a change in ownership of Broad Channel Island Properties, LLC; (iv) Broad Channel Island Properties, LLC sells, transfers, assigns, mortgages, pledges, grants a security interest in, or in any manner encumbers or effectuates a change in ownership of the LLC Owned Property; (v) Defendants sell, transfer, assign, mortgage, pledge, grant a security interest in, or in any manner encumber or effectuate a change in ownership of Wharton Realty, LLC; (vi) Wharton Realty, LLC sells, transfers, assigns, mortgages, pledges, grants a security interest in, or in any manner encumbers or effectuates a change in ownership of the LLC Owned Property; (vii) Defendants borrow funds or commits other acts that would impair Plaintiffs' first priority liens on pledged real or personal properties under the terms of this Settlement Agreement; (vii) Defendants borrow funds or commits other acts that would impair Plaintiffs' first priority liens on pledged real or personal properties under the terms of this Settlement Agreement; (viii) Defendants sell, pledge, transfer or assign stock in Call-A-Head; (ix) the failure to provide attorney certifications provided in Section 3.5; or (x) insolvency or the commencement of Insolvency Proceedings of Kenneth Howard or any Defendant.

(B) In the event Defendants engage in any: (1) corporate transfer; (2) sale of assets (except where explicitly permitted by this agreement), merger, assignment, transfer, mortgage, pledge, grant of a security interest in, or encumbrance of any equity position in Call-A-Head or (3) change of control of Call-A-Head that as a result of those acts results in Howard selling, assigning, transferring, mortgaging, pledging, granting a security interest in, or encumbering any equity position in Call-A-Head, Howard shall: (1) notify the Plaintiffs of such corporate transfer, sale of assets, merger, or change of control of Call-A-Head not less than thirty (30) days before such transfer, sale of assets, merger or change of control of Call-A-Head; and (2) shall pay in full the balance of the Settlement Amount concurrent with any such transfer, sale of assets, merger, assignment, transfer, mortgage, pledge, grant of a security interest in, or encumbrance of any equity position in Call-A-Head. In the event either Charles Howard or Kenneth Howard dies, the estate of such decedent cannot transfer the interests of Call-A-Head out of Charles Howard's estate or Kenneth Howard's estate, as the case may be, until full payment is made under the terms of this Settlement Agreement.

(C) **Security**

(1) In the event that any of the payments described above or required under this Settlement Agreement are not received by the Settlement Administrator by the dates set forth in Section 3.1 the Settlement Administrator shall notify

counsel for the Parties by email and the Defendants' counsel by fax to (516) 747-9100 and by email to: agraff@scherlawfirm.com of said default.  In the event Defendants fail to cure the default within fifteen (15) days of the communication by the Settlement Administrator  of the notice ("Curing Period"), Class Counsel shall be authorized to release from escrow the deeds in lieu of foreclosure as discussed in Section 3.4(C)(5), the Confessions of Judgment as discussed in Section 3.4(C)(7), and enforce the UCC-1s as discussed in Section 3.4.c.vi.

(2)     In order to secure the payments as described in this Settlement Agreement, Howard has agreed to provide deeds in lieu of foreclosure for the following real properties, none of which shall in any manner be sold, transferred, pledged, assigned or encumbered during the pendency of the Settlement Agreement.  If there is a Default of any provision of this Settlement Agreement which is uncured within the Curing Period, then Class Counsel shall be authorized to release the deeds in lieu of foreclosure from escrow and shall be authorized to take all lawful steps necessary and proper to enforce the Plaintiffs' rights with respect to the deeds in lieu of foreclosure, which shall be at the sole and exclusive expense of the Defendants.  Howard shall execute and provide original deeds in lieu of foreclosure to the Plaintiffs or a nominee identified by the Plaintiffs for that purpose on the following real properties:

(a)     106 Crossbay Boulevard, Broad Channel, New York 11693;

(b)     304 Crossbay Boulevard, Broad Channel, New York 11693;

(c)     728 Crossbay Boulevard, Broad Channel, New York 11693;

(d)     701 Crossbay Boulevard, Broad Channel, New York 11693;

(e)     801 Crossbay Boulevard, Broad Channel, New York 11693;

(f)     722 Crossbay Boulevard, Broad Channel, New York 11693;

(g)     901 Crossbay Boulevard, Broad Channel, New York 11693; and

(h)     11 Roosevelt Avenue, Valley Stream, New York 11581 ("11 Roosevelt Avenue")

(properties "(a)" through "(f)" above, each a "Howard Owned Deeded Property", and collectively, "Howard Owned Deeded Properties"; properties "(g)" and "(h)" above, the "LLC Owned Deeded Properties"; and all of the Howard Owned Deeded Properties and the LLC Owned Deeded Property, each individually a "Deeded Property", and collectively, the "Deeded Properties"). Defendant Charles Howard represents and warrants that his ownership interest is the only ownership interest for the Howard

18

Owned Deeded Properties. Defendants Charles Howard and Kenneth Howard represent that they are the sole members of Broad Channel Island Properties, LLC and Wharton Realty, LLC, and further represent and warrant that Broad Channel Island Properties, LLC and Wharton Realty, LLC's ownership interest is the only ownership interest for the LLC Owned Properties. No other individual, trust or entity has, or can claim, any equity interest, participation interest, membership interest, security interest or ownership interest in the Deeded Properties.  No other individual, trust or entity has, or can claim, any equity interest, participation interest, membership interest, security interest or ownership interest in Broad Channel Island Properties, LLC and Wharton Realty, LLC.

(3)     In addition to executing and providing the deeds as set forth in Section 3.4 (A). ii. hereto, the parties shall execute individual Negative Pledge Agreements for each Deeded Properties. Each of the Negative Pledge Agreements may be filed by Class Counsel with the County Clerk, and Defendants shall pay any associated recording fees, upon demand by Class Counsel. Defendants' failure to pay any such associated recording fees, within fifteen days of notice of the amount due, shall be an Event of Default. Without limitation, each Negative Pledge shall include a right of first refusal for any sale, and a purchase option in the sum of $1.00 in the event of an uncured Event of Default by Defendants under this Settlement Agreement with the value of the property to be set upon sale, reducing the amount then due and owing under this Settlement Agreement by the net amount actually received by the Plaintiffs after payment of any commissions, taxes, fines and/or transaction and/or other costs expenses have been satisfied.

(4)     Simultaneous with the execution of the deeds in lieu of foreclosure for each of the Deeded Properties, the Defendants shall execute mortgages for each of the Deeded Properties that shall be held in escrow by Class Counsel, which shall only be released in the Event of Default that remains uncured under the terms of the Settlement Agreement.  Upon the occurrence of an Event of Default that remains uncured after the expiration of the Curing Period, Class Counsel is authorized to release the mortgages from escrow and is authorized to file the mortgages against the Deeded Properties and enforce the mortgages to the extent authorized under New York law.

(5)     Upon the occurrence of an Event of Default under the Settlement Agreement, the Settlement Administrator may, but shall not be obligated to, exercise each, some and/or all of the Deeds in Lieu of Foreclosure and take all steps necessary and property to enforce the Deeds in Lieu of Foreclosure and thereafter apply any received funds to the outstanding Settlement Amount.  In the alternative, Class Counsel may choose to auction and/or transfer the property "AS IS" via a transfer of the Deeds In Lieu Of Foreclosure to a nominee or purchaser.

(6)     In order to further secure the payment as described in this Settlement Agreement, Call-A-Head hereby pledges to Plaintiff a security interest in all of its personal property, machinery and equipment, accounts, general intangibles, inventory and books and records to secure its obligations under this Settlement Agreement. In furtherance of this pledge of a security interest Call-A-Head shall execute UCC-1s in the form annexed as Exhibit D to this Settlement Agreement.   In connection herewith Defendants will provide the Settlement Administrator and Class Counsel with a detailed schedule of all VIN numbers for all motor vehicles titled to the Defendants and a complete inventory of all machinery and equipment owned by the Defendants including serial numbers to the extent the serial numbers or identification numbers exist.  The UCC-1s may be filed with the New York State Department of State after Court approval of the Settlement Agreement.  If, for whatever reason, Call-A-Head requests to sell or transfer to a third party any equipment, truck, and/or vehicle pledged as security hereunder, Call-A-Head shall provide no less than ten (10) days' written notice to Class Counsel and then within ten (10) days following receipt of the notice, the Plaintiffs shall issue a UCC-3 form cancelling the UCC-1 on the identified equipment, truck, and/or vehicle being sold or transferred to a third party without any unreasonable delay so long as the Defendants have not defaulted with respect to payment terms of the Settlement Agreement. If Call-A-Head requests to sell or transfer more than six vehicles in any ninety-day period, then the proceeds of the sales shall be deposited into an Escrow Account maintained by Defendants' Counsel to be held for the sole purpose of purchasing new vehicles. If not used for the purchase of new vehicles, then the money shall be paid to the Settlement Administrator to reduce the outstanding balance of the Settlement Amount. If Call-A-Head purchases any new equipment, truck or vehicle, a UCC-1 in favor of the Plaintiffs shall be provided within ten (10) days of Call-A-Head's purchase of the equipment, truck, or vehicle to further secure the payment as described in this Settlement Agreement.

(7)     In order to secure the payment as described in this Settlement Agreement, Howard) on behalf of himself and Call-A-Head, Call-A-Head Fuel Division Inc and Call-A-Head portable Toilets, Inc.), and  Kenny and shall each execute Confessions of Judgment in the form annexed as Exhibit E to this Settlement Agreement in the amount of $14,280,000.00, with a declining balance as payments are made as set forth in Exhibit C to this Settlement Agreement (which is also Exhibit 1 to the Confessions of Judgment), which judgment amount shall at no time be more than double the amount of the Settlement Amount due and shall at no time be less than $7.28 million. During each calendar year, on or before the anniversary date of the execution of this Agreement, Defendants shall execute new confessions of judgment in the same form.  The confessed to amount and the Declining Security Balance Payment Schedule shall be updated to reflect the payments made during the prior calendar year.  The Confessions of Judgment shall be held in escrow by Class Counsel unless and until a default in a payment as

described in Section 3.4 (A).  Defendant Howard.  If a default is uncured within the Curing Period, then Class Counsel shall be authorized to release the Confessions of Judgment from escrow and shall be authorized to take all steps necessary and proper under the Federal Rules of Civil Procedure and the Local Rules of the Southern District of New York to file the Confessions of Judgment and to obtain a judgment in the amount due pursuant to the schedule as described in Exhibit C to the Settlement Agreement and take all actions necessary and proper to enforce the judgments. In the event that the Defendants default on the Settlement Agreement and the default is uncured within the Curing Period, then the Plaintiffs shall be entitled to reasonable attorneys' fees and costs incurred to enforce the terms of the Settlement Agreement and to prosecute the deeds in lieu of foreclosure, the UCC-1s, and the Confessions of Judgment.

(8)     In the event that Defendants default on the Settlement Agreement and the default is uncured within the Curing Period, then the Plaintiffs shall be entitled to reasonable attorneys' fees and costs incurred to enforce the terms of the Settlement Agreement and to prosecute the deeds in lieu of foreclosure, the UCC-1s, and the Confessions of Judgment.

(9)     Representations and Warranties.  In the event that any of the representations and/or warranties below shall be false, it shall be deemed to be an event of default, in which such event the entire remaining balance of the sum due hereunder shall deemed to be immediately due and payable.

(a)     Charles Howard is authorized to execute and bind Defendants to this Agreement.

(b)     Charles Howard and Kenneth Howard are the sole shareholders, officers, and/or directors of all of the Defendant entities released hereunder.

(c)     All of the Defendant entities released hereunder are the sole entities which operate Defendants' business.

(d)     Beginning on a date one (1) year prior to the commencement of the instant litigation, up to and including the date hereof, there has been no sale or transfer of assets of any Call-A-Head entity other than in the ordinary course of business.

(e)     Beginning on a date one (1) year prior to the commencement of the instant litigation, up to and including the date hereof, there has been no sale or transfer of stock or ownership interest of any Call-A-Head entity other than in the ordinary course of business.

(f)     Defendants represent that there exist no financing agreements or loans to any party secured by any of Defendants' assets,

21

3.5     **Financial Monitoring**

(A)     Call-A-Head shall provide The Scher Law Firm, LLP a list of Call-A-Head clients who have outstanding accounts receivables no later than the 15th day of each month. Such list shall contain the full contact information for each of the Call-A-Head client and amounts owed for each Call-A-Head client. Within five (5) days of the receipt of the list, counsel for the Defendants' will certify to the Settlement Administrator and Class Counsel that they are in receipt of the list of Call-A-Head's clients.

(B)     Upon any uncured Event of Default under the Settlement Agreement counsel for the Defendants shall, within three (3) days of the Plaintiffs declaring an uncured Event of Default, turn over to Class Counsel copies of all of lists of the Defendants' clients and Class Counsel shall be authorized to contact with any of the Call-A-Head clients for the purpose of debt collection pursuant to the Plaintiffs' rights under the Settlement Agreement.

4.      **RELEASE**

4.1     **Released Class and FLSA Collective Claims.**

(A)     **Release of State Law Claims.**  By operation of the entry of the Judgment and Final Approval, except as to such rights or claims as may be created by this Agreement, each individual Class Member, who worked at any time as a Portable Toilet Service Technician, and who does not timely opt-out pursuant to this Agreement, on his or her behalf and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, forever and fully releases Releasees, as well as their owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, insurers, reinsures, parents, subsidiaries, affiliates, benefit plans, plan fiduciaries, and/or administrators, and all persons acting by, through, under or in concert with any of them, from all wage and hour claims or claims derivative of wage and hour claims asserted, or such claims that could have been asserted under New York state law by and on behalf of the Class Members in the Litigation relating to work performed during the Class Period. The Released State Law Claims include the following: (1) relating to or governing the failure to pay wages, minimum wages, overtime wages, for all hours worked, for compensable working time, mileage reimbursement, expense reimbursement, or spread of hours pay; (2) for failure to provide meal and rest breaks claims; (3) for failure to reimburse for business expenses; (4) for unlawful deductions from wages or unpaid costs; (5) for failure to provide wage notices, wage statements, or other notices as required by state, or local law; (6) for failure to keep, make, preserve and furnish accurate records of time worked; (7) of joint or single employment; and/or (8) breach of the covenant of good faith and fair dealing relating to the payment of wages; (9) derivative benefit claims (resulting from alleged failure to pay any wages and/or overtime); (10) failure to comply with the wage statement and notification of pay rate requirements of the Wage Theft

Prevention Act; and (11)  claims for liquidated damages, interest, penalties (including late payment penalties), premium pay, Services Awards, restitution, equitable relief, settlement administration fees and costs, and attorneys' fees, costs, interest and expenses related to any such claims.

(B)     By operation of the entry of the Final Order, and except as to such rights or claims as may be specifically created by this Agreement, each Class Member who does not timely opt-out pursuant to this Agreement, on behalf of themselves, their heirs, executors, administrators, successors, assigns, estates, representatives, subsidiaries, affiliates, and agents forever and fully releases and discharges Releasees from all Released State Law Claims.

(C)     The Final Order and Judgment shall bind and have *res judicata* effect and collateral estoppel effect to all Class Members who do not opt-out pursuant to the Agreement with respect to any Released State Law Claims in this Agreement.

(D)     The Parties agree to request that the Court include in its Final Order: "The entire case is dismissed on the merits and with prejudice, with each side to bear its own attorneys' fees and costs except as set forth in the Settlement Agreement.  The Final Order and Judgment binds and has *res judicata* and collateral estoppel effect to all Class Members who did not opt-out pursuant to the Settlement Agreement with Respect to Any Released State Law Claims"

(E)     **Release of FLSA Claims.** Any Participating Class Member who endorses and/or deposits or cashes any of his/her  settlement checks fully release and discharge the Releasees from any and all claims, charges, demands, sums of money, actions, rights promises, agreements, causes of action, obligations, and liabilities of anykind or nature whatsoever, at law or in equity, whether known or unknown,existing or contingent, suspected or unsuspected, apparent or concealed, which the Participating Class Member may have or claim to have against Defendants based upon or arising out of any facts, acts, conduct, omissions, transactions, occurrences, contracts, events, causes, matters, or things of any conceivable kind or character existing or occurring or claimed to exist or to have occurred which relate to the nonpayment or inaccurate payment of minimum, overtime wages  or other compensation under the Fair Labor Standards Act, as amended, 29 U.S.C. § 201, et. seq., and any and all regulations issued thereunder during the Class Period. Participating Class Members shall be issued settlement checks with the following language:

> By endorsing this check, I consent to join the FLSA collective styled *Vargas v. Howard et al.*, 15-cv-05101 and expressly release Defendants from all wage and hour claims under the Fair Labor Standards Act and the New York Labor Law between June 30, 2009 and January 10, 2018, which have been brought in the Action or that are based on the same facts and circumstances as the claims in the Action, including but not limited to overtime and minimum wage claims during the same period.

23

Any modification or amendment of the above language by a Participating Class Member may not be accepted and may void the Settlement Check at Defendants' discretion. The Settlement Administrator will provide Defendants with a photocopy of each endorsed check.

(F) **Further Release by Class Representatives.**  Class Representatives hereby affirm that, other than settlement payments in this Agreement, they have been paid and/or have received all leave entitlements (paid or unpaid), compensation, wages for hours worked (including overtime, if applicable), bonuses and/or benefits to which he/she may have been entitled in connection with his/her employment with Defendants during the Class Period, and that other than monetary payments set forth in this Release, no other monies shall be due, become due, or paid to them by Defendants relating claims asserted in this Action or work performed during the Class Period unless those individuals opt-out of the Settlement.  Specifically, unless he opts-out of the Settlement, Named Plaintiff and Class Representative Juan Vargas explicitly releases his claims for retaliation under the New York Labor Law and the Fair Labor Standards Act.

**4.2   Released Defendants' Claims.**

"Defendants' Released Claims" shall mean any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, remedies, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorneys' fees and costs) of any nature whatsoever, known or unknown, whether in law or equity and whether arising under contract or under federal, state or local law, which the Defendants had, now have, or may in the future have, against each or any of the Participating Class Members, their agents, heirs and assigns arising up to and including the date of this Agreement relating to claims governed by the New York Labor Law and the Fair Labor Standards Act. Defendants reserve their rights to assert any and all defenses to any claims that could be asserted by a Class Member relating to any claim the Class Member has not released in this Agreement.

**4.3   Non-Assignment and Non-Admission**

(A) **No Assignment.** Each Class Representative represents and warrants that he has not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Action or any related action.

(B) **Non-Admission of Liability.** By entering into this Agreement, Defendants in no way admit any violation of law or any liability whatsoever to Class Representatives and/or any Class Members, individually or collectively, all such liability being expressly denied. Settlement of this Action, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants or of the truth of any of the factual allegations in any and

all Complaints filed in this Action; and (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative or arbitral proceeding. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

(C)     If, after the Court issues the Final Order, any Participating Class Member: (a) commences an action against the Defendants concerning any claim released under this Agreement, (b) asserts any claim in any forum against the Defendants concerning any claim released under this Agreement; or (c) demands payment from the Defendants concerning a claim released under this Agreement, Defendants shall be entitled to make an application for attorneys' fees and costs, before this Court (if the Court retains jurisdiction) or to any Court for breach of this Settlement Agreement against that Class Member for attorneys' fees and costs incurred as a consequence of the new claim filed by the Participating Class Member.

## 5.     TERMINATION OF AGREEMENT

### 5.1     Grounds and Procedures for Settlement Termination

(A)     Defendants have the right to terminate this Agreement only if: individuals comprising fifteen percent (15%) of the total number of Class Members submits an Opt-out Statement.

(B)     Termination of this Agreement shall be accomplished by email or facsimile transmitted to Class Counsel at least five (5) calendar days prior to the scheduled Fairness Hearing.

### 5.2     Effect of Termination. Termination shall have the following effects;

(A)     In the event this Agreement is terminated, subject to the provisions of Section 5.1(A), the Parties will continue with the Action as of the date of this Agreement with all rights and defenses intact as if no agreement had been entered into by the Parties.

(B)     Defendants shall have no obligation to make any payments to any Party, Class Representative, Class Member, Class Counsel or otherwise. Defendants will be responsible for any notice and administration costs associated with Class Certification and the Settlement.

(C)     The Parties shall advise the Court of the termination and shall apply to the Court to have a single approved notice mailed to Class Members and Settlement Opt-outs advising them of the termination. If approved by the Court, then the Settlement Administrator shall provide a Court-approved notice to Class Members that the Agreement did not receive Court Approval and that, as a result, no payments will be made to Participating Class Members under this Agreement. Such notice shall

be mailed by the Settlement Administrator via overnight mail or First Class United States mail.

(D)     If the Settlement is terminated, Defendants retain the right to: (1) contest the merits of the claims being asserted in the Action; and (2) oppose contentions by the Class Representatives and Participating Class Members and assert all other rights and/or defenses.

(E)     If this settlement is not consummated for any reason, including: (1) a termination under this Agreement; (2) a ruling by the Court declining to enter a Preliminary Order or Final Order substantially in the form submitted by the Parties (including a reversal and/or modification on appeal of the Court's Preliminary Approval Order or Final Order); or (3) for any other reason not presently contemplated, then the Parties shall continue to litigate the Action as if there was no Agreement.

(F)     By operation of entry of the Final Order, all Released Claims shall be deemed forever and fully released, discharged, and merged into this Agreement.

## 6.     INTERPRETATION AND ENFORCEMENT

**6.1     Cooperation Between the Parties; Further Acts**.  The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**6.2     Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**6.3     Binding Effect.**  This Agreement is a binding agreement and contains all material agreed-upon terms.

**6.4     Arms' Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**6.5     Captions.**  The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**6.6     Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated in the drafting of this

Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

6.7 **Voidable Provisions.** If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

6.8 **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, excluding the conflict of law principles thereof, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

6.9 **Continuing Jurisdiction.** The Parties shall request the Court retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation, enforcement or implementation of this Agreement and of the settlement contemplated thereby.

6.10 **Waivers, Modification or Amendment.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

6.11 **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its full execution and final approval by the Court. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

6.12 **Notice.** All other notices and documents set forth herein shall be delivered to counsel for Defendants, Austin Graff, Esq., The Scher Law Firm, LLP, One Old Country Road, Suite 385, Carle Place, New York 11514; (516) 746-5040; facsimile (516) 747-9100, agraff@scherlawfirm.com; and Class Counsel: (1) The Marlborough Law Firm, P.C., 445 Broad Hollow Road, Suite 400, Melville, New York 11747, chris@marlboroughlawfirm.com, and (2) Slater Slater Schulman, LLP, 488 Madison Avenue, 20th Floor, New York, New York 10022, jschulman@sssfirm.com.

6.13 **Recitals and Background Clauses**. The Recitals and Background Clauses are incorporated into this Agreement and made an integral part of this Agreement.

6.14    **Signatures.** This Agreement is valid and binding if signed by the Parties' authorized representatives.

6.15    **Facsimile and Email Signatures.** Any pen-to paper signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email. This Agreement may be executed in counterparts.

AGREED:


**On Behalf of the Releasees:**

_____          Dated: _2/12/12_
Kenneth Howard

_____          Dated: _2/12/10_
Charles W. Howard, Individually and on
Behalf of Call-A-Head Corp., Call-A-Head
Portable Toilets, Inc. and Call-A-Head
Fuel Division


**As Escrow Agent:**

_____          Dated: _2/12/2020_
Martin H. Scher, Senior Partner of
the Scher Law Firm, LLP


**On behalf of Class Representatives and the Certified Class:**


_____          Dated: _____
Juan Vargas

_____          Dated: _____
Peter Fowler

_____          Dated: _____
Girolamo Genova

_____          Dated: _____
Edward Kubinski

6.14 **Signatures.** This Agreement is valid and binding if signed by the Parties' authorized representatives.

6.15 **Facsimile and Email Signatures.** Any pen-to paper signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email. This Agreement may be executed in counterparts.

AGREED:

**On Behalf of the Releasees:**

_____                    Dated: _____
Kenneth Howard

_____                    Dated: _____
Charles W. Howard, Individually and on
Behalf of Call-A-Head Corp., Call-A-Head
Portable Toilets, Inc. and Call-A-Head
Fuel Division

**As Escrow Agent:**

_____                    Dated: _____
Martin H. Scher, Senior Partner of
the Scher Law Firm, LLP

**On behalf of Class Representatives and the Certified Class:**

_Juan Vargas_                                        Dated: 2/12/20
Juan Vargas

_____                    Dated: _____
Peter Fowler

_____                    Dated: _____
Girolamo Genova

_____                    Dated: _____
Edward Kubinski

28

**6.14  Signatures.** This Agreement is valid and binding if signed by the Parties' authorized representatives.

**6.15  Facsimile and Email Signatures.**  Any pen-to paper signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.  This Agreement may be executed in counterparts.

AGREED:


**On Behalf of the Releasees:**

_____          Dated: _____
Kenneth Howard


_____          Dated: _____
Charles W. Howard, Individually and on
Behalf of Call-A-Head Corp., Call-A-Head
Portable Toilets, Inc. and Call-A-Head
Fuel Division


**As Escrow Agent:**

_____          Dated: _____
Martin H. Scher, Senior Partner of
the Scher Law Firm, LLP


**On behalf of Class Representatives and the Certified Class:**


_____          Dated: _____
Juan Vargas

_____          Dated: 2/12/20
Peter Fowler


_____          Dated: _____
Girolamo Genova


_____          Dated: _____
Edward Kubinski

**6.14    Signatures.** This Agreement is valid and binding if signed by the Parties' authorized representatives.

**6.15    Facsimile and Email Signatures.** Any pen-to paper signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email. This Agreement may be executed in counterparts.

AGREED:

**On Behalf of the Releasees:**

_____                Dated: _____
Kenneth Howard

_____                Dated: _____
Charles W. Howard, Individually and on
Behalf of Call-A-Head Corp., Call-A-Head
Portable Toilets, Inc. and Call-A-Head
Fuel Division

**As Escrow Agent:**

_____                Dated: _____
Martin H. Scher, Senior Partner of
the Scher Law Firm, LLP

**On behalf of Class Representatives and the Certified Class:**

_____                Dated: _____
Juan Vargas

_____                Dated: _____
Peter Fowler

_____                Dated: 2/13/2020
Girolamo Genova

Dated: _____

**6.14    Signatures.** This Agreement is valid and binding if signed by the Parties' authorized representatives.

**6.15    Facsimile and Email Signatures.** Any pen-to paper signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email. This Agreement may be executed in counterparts.

AGREED:


**On Behalf of the Releasees:**


_____                Dated: _____
Kenneth Howard


_____                Dated: _____
Charles W. Howard, Individually and on
Behalf of Call-A-Head Corp., Call-A-Head
Portable Toilets, Inc. and Call-A-Head
Fuel Division


**As Escrow Agent:**

_____                Dated: _____
Martin H. Scher, Senior Partner of
the Scher Law Firm, LLP


**On behalf of Class Representatives and the Certified Class:**


_____                Dated: _____
Juan Vargas


_____                Dated: _____
Peter Fowler


_____                Dated: _____
Girolamo Genova

_____                Dated: 2-13-2020
Edward Kubinski

28

_____        Dated: 2.12.2020
Ricardo Whittaker


_____        Dated: 2/12/20
Christopher Marlborough, Esq., as Class
Counsel and Counsel for Opt-in Plaintiffs
and the Certified Class


_____        Dated: _____
Jonathan Schulman, Esq., as Class
Counsel and Counsel for Opt-in Plaintiffs
and the Certified Class

29

_____
Ricardo Whittaker

Dated: _____


_____
Christopher Marlborough, Esq., as Class
Counsel and Counsel for Opt-in Plaintiffs
and the Certified Class

Dated: 2/12/20


_____
Jonathan Schulman, Esq., as Class
Counsel and Counsel for Opt-in Plaintiffs
and the Certified Class

Dated: 2/13/2020


29

Exhibit A

CORRECTIVE NOTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
JUAN VARGAS, individually, and on behalf
of all others similarly situated,                                        15-CV-05101 (DCF)

                     Plaintiffs,

          -against-

CHARLES W. HOWARD and
CALL-A-HEAD CORP.,
                    Defendants.
---------------------------------------------------------X

### Class Action Corrective Notice

You are receiving this Corrective Notice because you mistakenly received notice of this lawsuit indicating you may be a member of the Certified Class in this lawsuit.

**According to Defendants' records, you are not a member of the class and your rights will not be affected by the outcome of this lawsuit.**

On January 10, 2018, the Court certified a class of all Portable Toilet Service Technicians who worked for Defendants Charles W. Howard and Call-A-Head Corp. between June 30, 2009 and January 10, 2018.  The class includes water truck drivers, pump truck drivers, flatbed truck drivers, rout drivers, plumbers and individuals identified by the following job titles in Defendants' records as "pimp," "field," "route" or "swing."

Defendants' records indicate that you are not a member of the class because you did not work as a Portable Toilet Service Technician during the Class Period.

If you have any questions about this notice or believe that you were a Portable Toilet Service Technician within the time period identified above, please contact Plaintiffs' Counsel John Luke at (631) 420-9300 on or before _____ __, 2020 [THIRTY DAYS FROM INITIAL MAILING OF THE NOTICE].

Please do not contact the Court. The Court will not answer any questions or discuss the lawsuit.


Dated: _____ __, 2020        BY ORDER OF THE UNITED STATES DISTRICT
                                    COURT SOUTHERN DISTRICT OF NEW YORK

Exhibit B

NOTICE OF PROPOSED SETTLEMENT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
JUAN VARGAS, individually, and on behalf
of all others similarly situated,                                    Docket No.
                                                                                  15-CV-05101 (DCF)
                                            Plaintiffs,

                        -against-

CHARLES W. HOWARD and
CALL-A-HEAD CORP.,
                                            Defendants.
---------------------------------------------------------X

### [PROPOSED] COURT AUTHORIZED NOTICE OF SETTLEMENT OF CLASS ACTION AND FLSA COLLECTIVE ACTION LAWSUIT

**TO:** *All current and former employees who worked for Call-A-Head Corporation as Portable Toilet Service Technicians (defined as pump truck drivers, water truck drivers, plumbers, flatbed truck drivers, and workers identified in Call-A-Heads records as "field," pimp or swing) between June 30, 2009 and January 10, 2018, excluding individuals who previously opted out of the lawsuit and individuals who previously settled overtime claims for all work performed during the same period in a judicially approved settlement.*

### PLEASE READ THIS NOTICE CAREFULLY

This Notice relates to a proposed settlement of all wage and hour claims by all current and former employees of Call-A-Head Corp. at any time between June 30, 2009 and January 10, 2018 (the "Class Period"). This notice has been authorized by the United States District Court for the Southern District of New York. It contains important information about your right to receive a series of settlement checks, to object to the settlement, or to elect not to be included in the settlement by excluding yourself from the case ("opt-out").

Defendants have agreed to settle the wage and hour and recordkeeping claims of Portable Toilet Service Technicians during the Class Period. The total settlement amount is $7,140,000. The Court has not decided who is right and who is wrong in this lawsuit. Your legal rights may be affected, and you have a choice to make now. These rights and options are summarized below and are fully explained in this Notice.

### YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT

**PARTICIPATE:** If you wish to participate in the settlement and receive settlement checks, you should do nothing unless your contact information or employment information is incorrect.  If any of this information is incorrect, you should contact the Settlement Administrator within thirty days of receipt of this notice. If the Settlement Approved, a series of settlement checks will be sent to you at the address on file with the Settlement Administrator.

**EXCLUDE YOURSELF:** If you wish to exclude yourself ("opt-out") from the lawsuit, you must follow the directions outlined in response to Question 6 below. If you opt out, you will not be part of the settlement, but you will keep the right to bring your own case against Defendants with your own lawyers at your own expense.

**OBJECT:** You can object by telling the Court what you do not like about the settlement and why it should not be approved. If you wish to object to the settlement, you must write to us, at the address listed in response to Question 10 below, about why you believe the settlement is unreasonable, and must do so no later than [**Insert Objection Bar Date**], **2020.** If the Court rejects your objection, you will still be bound by the terms of the settlement.

## 1. Why did I receive this notice?

You received this notice because Defendants' records indicate that you worked as a Portable Toilet Service Technician during the Class Period.

## 2. Why is there a settlement?

Class Counsel has analyzed and evaluated the merits of the individual and collective claims made against Defendants in this action. Specifically, Class Counsel has performed extensive legal research, analyzed and projected damages for the individual members of the Class, and engaged in the exchange of discovery, including written discovery for more than ninety-five class members and depositions. Based upon Class Counsel's analysis of this data, relevant law, and the substantial risks of continued litigation, including the possibility that the litigation, if not settled now, might not result in any recovery whatsoever for Class Members, or might result in a recovery that is less favorable and/or that would not occur for several years, Class Counsel entered into this proposed settlement.

## 3. How much will I receive if I file a claim?

The total value of the settlement is $7,140,000.00. In addition to paying class members, the recovery will be used to pay attorneys' fees, costs, expenses, and service awards. Plaintiffs' counsel may apply to the Court for an award of attorneys' fees of up to one-third of the settlement fund, plus service awards to the class representatives (up to $10,000 each to Peter Fowler, Juan Vargas, Edward Kubinski, Girolamo Genova and Riccardo Whittaker), and two class members (up to $3,000 each to Jeury Marte and Carlos Velazquez), as well as costs and expenses in the case.

The settlement provides for a base payment of $300.00 for each participating class member, plus an additional amount based on the following criteria: 1) the number of weeks each participating class member worked for Call-A-Head as a Portable Toilet Service Technician; 2) whether the participating class member previously filed a consent to join the action under the Fair Labor Standards Act and participated in the discovery phase of the litigation; and 3) whether the participating class member has previously released his/her claims pursuant to any severance agreement, or litigation (where the terms of the settlement were not approved by any court). Under no circumstances will any class member receive less than $300.00 under the settlement.

According to the terms of the settlement, participating class members who have not previously filed a consent to join the action and have not participated in the discovery process will receive two-thirds of the amount of those who have filed consents. According to Defendants' records:

- you worked [__] weeks during the Class Period as a Portable Toilet Service Technician;
- you [did/did not] submit a consent to join this action; and
- you [did/did not] not previously sign a release as a part of a prior settlement or severance agreement.

**If you believe that any of the information in Defendants' records is inaccurate and you wish to participate in the settlement, please contact the settlement administrator (whose contact information is provided below) within thirty days of receipt of this notice with proof that the information is incorrect.**

The amount you will receive is subject to change based on a number of factors including, but not limited to: 1) the actual amount of expenses incurred in administering the settlement, 2) the amount of attorneys' fees, service awards, costs and expenses approved by the Court; and 3) the potential redistribution of any settlements fund which are not cashed in a timely manner, to other class members.

If you wish to participate in the Settlement and receive an award as indicated above, you should do nothing. You should not file an Opt-Out Statement. You should cash any settlement checks that you receive within 90 days of the date the check is issued and notify the settlement administrator of any change of address.

The Settlement will be paid over time. If you participate in the settlement, you should expect to receive a series of quarterly payments through April 2024.

All payments distributed to each claimant for their minimum wage, overtime and notice claims shall be split evenly between wages and liquidated and/or other non-wage damages for tax purposes, and the employee's share of taxes shall be withheld from the wage Settlement Check that you will receive if you file a claim.

## 4. How Do I Get a Payment

If the Settlement is approved by the Court, you do not need to do anything to receive settlement checks. If you change your address or this notice was not sent to your correct address, you should contact the Settlement Administrator immediately to ensure that they have your current contact information to send your payments to.

## 5. Settlement Fund and Termination Provisions

The parties have agreed that the maximum that Defendants will pay under the parties' settlement agreement, inclusive of payments to workers, employer and employee taxes, Class Counsel's attorneys' fees, costs, and expenses, Settlement Claims Administrator's costs and fees, and approved service awards, is $7,140,000. Defendants may terminate this settlement if 15% or more Settlement Class Members opt-out.

## 6. How do I exclude myself ("opt-out") from the settlement?

You may exclude yourself ("opt-out") from this case if you do not want to receive a settlement payment, but you want to maintain your right to sue Defendants on your own for the claims released by the Settlement. To withdraw from this case, you **must** mail a written, signed statement to Class Counsel clearly indicating your wish to opt out of the "Call-A-Head Class Action Settlement." You **must** include your name, address, and telephone number in your opt-out letter to Class Counsel. To be effective, your opt-out letter **must** be faxed, emailed, or mailed via First Class United States Mail, postage prepaid, to the address below, and postmarked by **[Insert Opt-Out Bar Date when set by Court].**

> **Angeion Group**
> **_____, PA**
> **Tel: _____ Fax: _____**
> **E-Mail: info@_____.com**
> **RE: Call-A-Head Class Action Settlement**

## 7. What happens if I do not opt-out by _____ 2020.

If you fail to opt-out by **[Insert Opt-Out Bar Date]**, 2020 then you will automatically be part of this settlement and will be deemed to have released all wage and hour claims under New York law which have been brought in the lawsuit or that are based on the same facts and circumstances as the claims in the lawsuit, including but not limited to unpaid regular and overtime wage claims, all related wage and hour and wage payment claims, all derivative benefit claims (i.e., claims for benefits, both ERISA and non- ERISA, resulting from alleged failure to pay overtime or other wages) during the Class Period and all interest on such claims, liquidated damages, punitive damages, and/or other damages, attorneys' fees, expenses, and costs.  In addition, if you do not cash any settlement checks, you will not agree to release all overtime and minimum wage claims under the federal Fair Labor Standards Act and will not be entitled to receive your allocated share of the settlement.

## 8. If I exclude myself ("opt-out"), can I get money from this settlement?

No. If you exclude yourself, you will not receive any money from this lawsuit.

## 9. Who are the lawyers and how will the lawyers be paid?

The following law firms represent you in this case.

| | |
|---|---|
| The Marlborough Law Firm, P.C. | Slater, Slater, Schulman, PLLC |
| Christopher Marlborough | John C. Luke      Jonathan E. Schulman |
| 445 Broad Hollow Road, Suite 400 | 400 Madison Avenue, 20th Floor |
| Melville, New York 11747 | New York, New York 10022 |

Telephone: (212) 991-8960          Telephone: (212) 922-0906
Email: chris@marlboroughlawfirm.com          Email: jluke@sssfirm.com

Class Counsel will ask the Court to approve a fee of up to one-third of the maximum settlement amount described above ($2,380,000.00). Any fee award will be deducted from the $7,140,000 fund. The Court will ultimately decide the amount that will be paid to Class Counsel.

## 10. How do I object to the settlement?

You can object to the settlement if you don't like any part of it. You must give reasons why you think the Court should not approve it. The Court will consider your views. If the Court rejects your objection, you will still be bound by the terms of the settlement. To object, you must send a letter saying that you object to this proposed settlement. Your statement must include all reasons for the objection and any supporting documentation. Your statement must also include your name, address, and telephone number. If you wish to present your objection at the Fairness Hearing described below, you must state your intention to do so in your written objection. You will not be allowed to present reasons for your objection at the Fairness Hearing that you did not describe in your written objection. Fax, email, or mail via First-Class United States Mail, postage prepaid, your objection to the address below. Your objection may not be heard unless it is received by the Settlement Claims Administrator by **[Insert Objection Bar Date]**, 2020**.**

**Settlement Claims Administrator**
**_____, NY**
**Tel: _____  Fax: _____**
**E-Mail: info@_____.com**
**RE: Call-A-Head Class Action Settlement**

Class Counsel will file your objection with the Court. You may not both object to the settlement **and** opt-out of this case.

## 11. What's the difference between objecting and opting out?

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Class. Excluding yourself ("opting out") is telling the Court that you don't want to be part of the Class and this proposed settlement. If you opt out, you have no basis to object because you will no longer remain a party to this action. If you do not opt-out of the settlement you will be deemed to have released your New York State law wage and hour claims in this lawsuit against Defendants in this action and if you cash any settlement checks you will release all minimum wage and overtime claims under the Fair Labor Standards Act.

## 12. When and where will the Court decide whether to approve the settlement?

The Court will hold a Fairness Hearing at _____.m. on _____ 2020, at the United States District Court, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York, in Courtroom 17A. At this hearing the Court will consider whether the terms of the settlement are fair, reasonable, and adequate.

If there are objections, the Court will consider them as well. After the hearing, the Court will decide whether to approve the settlement. If the settlement is approved, the Court may also decide how much to pay to Class Counsel. We do not know how long these decisions will take. **YOU MAY, BUT ARE NOT REQUIRED TO, ATTEND THE FAIRNESS HEARING**

## 13. Are there more details about the settlement?

This notice summarizes the proposed settlement. More details are contained in the Settlement Agreement. You can review the Settlement Agreement by asking for a copy by contacting the Settlement Claims Administrator or Class Counsel (see contact information in Questions 9 and 10). **Please do not contact the court with questions about the settlement.**

Exhibit C

SETTLEMENT PAYMENT AND DECLINING SECURITY
BALANCE SCHEDULE

**SETTLEMENT PAYMENT AND DECLINING BALANCE SCHEDULE**     Page 1 of 2

| | Payment Due Date | Payment Amount | Cumulative Payments | Declining $7.14 million Balance | Declining $14.28 million Security Balance |
|---|---|---|---|---|---|
| | Upon Execution | $240,000 | $240,000 | $6,900,000 | $13,800,000 |
| 1 | 2/15/2020 | $60,000 | $300,000 | $6,840,000 | $13,680,000 |
| 2 | 3/15/2020 | $60,000 | $360,000 | $6,780,000 | $13,560,000 |
| 3 | 4/15/2020 | $60,000 | $420,000 | $6,720,000 | $13,440,000 |
| 4 | 5/15/2020 | $140,000 | $560,000 | $6,580,000 | $13,160,000 |
| 5 | 6/15/2020 | $140,000 | $700,000 | $6,440,000 | $12,880,000 |
| 6 | 7/15/2020 | $140,000 | $840,000 | $6,300,000 | $12,600,000 |
| 7 | 8/15/2020 | $140,000 | $980,000 | $6,160,000 | $12,320,000 |
| 8 | 9/15/2020 | $140,000 | $1,120,000 | $6,020,000 | $12,040,000 |
| 9 | 10/15/2020 | $140,000 | $1,260,000 | $5,880,000 | $11,760,000 |
| 10 | 11/15/2020 | $140,000 | $1,400,000 | $5,740,000 | $11,480,000 |
| 11 | 12/15/2020 | $140,000 | $1,540,000 | $5,600,000 | $11,200,000 |
| 12 | 1/15/2021 | $140,000 | $1,680,000 | $5,460,000 | $10,920,000 |
| 13 | 2/15/2021 | $140,000 | $1,820,000 | $5,320,000 | $10,640,000 |
| 14 | 3/15/2021 | $140,000 | $1,960,000 | $5,180,000 | $10,360,000 |
| 15 | 4/15/2021 | $140,000 | $2,100,000 | $5,040,000 | $10,080,000 |
| 16 | 5/15/2021 | $140,000 | $2,240,000 | $4,900,000 | $9,800,000 |
| 17 | 6/15/2021 | $140,000 | $2,380,000 | $4,760,000 | $9,520,000 |
| 18 | 7/15/2021 | $140,000 | $2,520,000 | $4,620,000 | $9,240,000 |
| 19 | 8/15/2021 | $140,000 | $2,660,000 | $4,480,000 | $8,960,000 |
| 20 | 9/15/2021 | $140,000 | $2,800,000 | $4,340,000 | $8,680,000 |
| 21 | 10/15/2021 | $140,000 | $2,940,000 | $4,200,000 | $8,400,000 |
| 22 | 11/15/2021 | $140,000 | $3,080,000 | $4,060,000 | $8,120,000 |
| 23 | 12/15/2021 | $140,000 | $3,220,000 | $3,920,000 | $7,840,000 |
| 24 | 1/15/2022 | $140,000 | $3,360,000 | $3,780,000 | $7,560,000 |
| 25 | 2/15/2022 | $140,000 | $3,500,000 | $3,640,000 | $7,280,000 |
| 26 | 3/15/2022 | $140,000 | $3,640,000 | $3,500,000 | $7,280,000 |
| 27 | 4/15/2022 | $140,000 | $3,780,000 | $3,360,000 | $7,280,000 |
| 28 | 5/15/2022 | $140,000 | $3,920,000 | $3,220,000 | $7,280,000 |
| 29 | 6/15/2022 | $140,000 | $4,060,000 | $3,080,000 | $7,280,000 |
| 30 | 7/15/2022 | $140,000 | $4,200,000 | $2,940,000 | $7,280,000 |
| 31 | 8/15/2022 | $140,000 | $4,340,000 | $2,800,000 | $7,280,000 |
| 32 | 9/15/2022 | $140,000 | $4,480,000 | $2,660,000 | $7,280,000 |
| 33 | 10/15/2022 | $140,000 | $4,620,000 | $2,520,000 | $7,280,000 |
| 34 | 11/15/2022 | $140,000 | $4,760,000 | $2,380,000 | $7,280,000 |
| 35 | 12/15/2022 | $140,000 | $4,900,000 | $2,240,000 | $7,280,000 |

**SETTLEMENT PAYMENT AND DECLINING BALANCE SCHEDULE**    Page 2 of 2

| | | | | | |
|---|---|---|---|---|---|
| 36 | 1/15/2023 | $140,000 | $5,040,000 | $2,100,000 | $7,280,000 |
| 37 | 2/15/2023 | $140,000 | $5,180,000 | $1,960,000 | $7,280,000 |
| 38 | 3/15/2023 | $140,000 | $5,320,000 | $1,820,000 | $7,280,000 |
| 39 | 4/15/2023 | $140,000 | $5,460,000 | $1,680,000 | $7,280,000 |
| 40 | 5/15/2023 | $140,000 | $5,600,000 | $1,540,000 | $7,280,000 |
| 41 | 6/15/2023 | $140,000 | $5,740,000 | $1,400,000 | $7,280,000 |
| 42 | 7/15/2023 | $140,000 | $5,880,000 | $1,260,000 | $7,280,000 |
| 43 | 8/15/2023 | $140,000 | $6,020,000 | $1,120,000 | $7,280,000 |
| 44 | 9/15/2023 | $140,000 | $6,160,000 | $980,000 | $7,280,000 |
| 45 | 10/15/2023 | $140,000 | $6,300,000 | $840,000 | $7,280,000 |
| 46 | 11/15/2023 | $140,000 | $6,440,000 | $700,000 | $7,280,000 |
| 47 | 12/15/2023 | $140,000 | $6,580,000 | $560,000 | $7,280,000 |
| 48 | 1/15/2024 | $140,000 | $6,720,000 | $420,000 | $7,280,000 |
| 49 | 2/15/2024 | $140,000 | $6,860,000 | $280,000 | $7,280,000 |
| 50 | 3/15/2024 | $140,000 | $7,000,000 | $140,000 | $7,280,000 |
| 51 | 4/15/2024 | $140,000 | $7,140,000 | $0 | $0 |

Exhibit D

UCC-1 EXEMPLAR

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:   (Name and Address)

> 5101 Settlement Holding Company LLC
> c/o Slater Slater & Schulman LLP
> 488 Madison Avenue, 20th Floor
> New York, NY 10065

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| OR | 1a. ORGANIZATION'S NAME **Call-A-Head Corp.** | | | |
| | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **304 Cross Bay Boulevard** | **Broad Channel** | **NY** | **11693** | **USA** |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| OR | 2a. ORGANIZATION'S NAME | | | |
| | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| OR | 3a. ORGANIZATION'S NAME **5101 Settlement Holding Company LLC c/o Slater Slater & Schulman LLP** | | | |
| | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **488 Madison Ave 20th Floor** | **New York** | **NY** | **10065** | **USA** |

4. THIS FINANCING STATEMENT covers the following collateral:

| 5. ALTERNATIVE DESIGNATION (if applicable): | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☐ THIS FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum    [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA

---

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Instructions for UCC Financing Statement (Form UCC1)

Please type or laser-print this form.  Be sure it is completely legible.  Read all Instructions, especially Instruction 1; correct Debtor name is crucial.  Follow Instructions completely.

Fill in form very carefully; mistakes may have important legal consequences.  If you have questions, consult your attorney.  Filing office cannot give legal advice.

Do not insert anything in the open space in the upper portion of this form; it is reserved for filing office use.

When properly completed, send Filing Office Copy, with required fee, to filing office.  If you want an acknowledgment, complete item B and, if filing in a filing office that returns an acknowledgment copy furnished by filer, you may also send Acknowledgment Copy; otherwise detach.  If you want to make a search request, complete item 7 (after reading Instruction 7 below) and send Search Report Copy, otherwise detach.  Always detach Debtor and Secured Party Copies.

If you need to use attachments, you are encouraged to use either Addendum (Form UCC1Ad) or Additional Party (Form UCC1AP).

A. To assist filing offices that might wish to communicate with filer, filer may provide information in item A.  This item is optional.

B. Complete item B if you want an acknowledgment sent to you.  If filing in a filing office that returns an acknowledgment copy furnished by filer, present simultaneously with this form a carbon or other copy of this form for use as an acknowledgment copy.

1. **Debtor name:** Enter <u>only one Debtor name in item 1</u>, an organization's name (1a) <u>or</u> an individual's name (1b).  Enter Debtor's <u>exact full legal name</u>.  Don't abbreviate.

1a. <u>Organization Debtor</u>.  "Organization" means an entity having a legal identity separate from its owner.  A partnership is an organization; a sole proprietorship is not an organization, even if it does business under a trade name.  If Debtor is a partnership, enter exact full legal name of partnership; you need not enter names of partners as additional Debtors.  If Debtor is a registered organization (e.g., corporation, limited partnership, limited liability company), it is advisable to examine Debtor's current filed charter documents to determine Debtor's correct name, organization type, and jurisdiction of organization.

1b. <u>Individual Debtor</u>.  "Individual" means a natural person; this includes a sole proprietorship, whether or not operating under a trade name.  Don't use prefixes (Mr., Mrs., Ms.).  Use suffix box only for titles of lineage (Jr., Sr., III) and not for other suffixes or titles (e.g., M.D.).  Use married woman's personal name (Mary Smith, not Mrs. John Smith).  Enter individual Debtor's family name (surname) in Last Name box, first given name in First Name box, and all additional given names in Middle Name box.

For <u>organization and individual Debtors</u>: Don't use Debtor's trade name, DBA, AKA, FKA, Division name, etc. in place of or combined with Debtor's legal name; you may add such other names as additional Debtors if you wish (but this is neither required nor recommended).

1c. An address is always required for the Debtor named in 1a or 1b.

1d. Reserved for Financing Statements to be filed in North Dakota or South Dakota <u>only</u>.  If this Financing Statement is to be filed in North Dakota or South Dakota, the Debtor's taxpayer identification number (tax ID#) — social security number or employer identification number must be placed in this box.

1e,f,g. "Additional information re organization Debtor" is always required.  Type of organization and jurisdiction of organization as well as Debtor's exact legal name can be determined from Debtor's current filed charter document.  Organizational ID #, if any, is assigned by the agency where the charter document was filed; this is different from tax ID #; this should be entered preceded by the 2-character U.S. Postal identification of state of organization if one of the United States (e.g., CA12345, for a California corporation whose organizational ID # is 12345); if agency does not assign organizational ID #, check box in item 1g indicating "none."

*Note:* If Debtor is a trust or a trustee acting with respect to property held in trust, enter Debtor's name in item 1 and attach Addendum (Form UCC1Ad) and check appropriate box in item 17.  If Debtor is a decedent's estate, enter name of deceased individual in item 1b and attach Addendum (Form UCC1Ad) and check appropriate box in item 17.  If Debtor is a transmitting utility or this Financing Statement is filed in connection with a Manufactured-Home Transaction or a Public-Finance Transaction as defined in applicable Commercial Code, attach Addendum (Form UCC1Ad) and check appropriate box in item 18.

2. If an additional Debtor is included, complete item 2, determined and formatted per Instruction 1.  To include further additional Debtors, attach either Addendum (Form UCC1Ad) or Additional Party (Form UCC1AP) and follow Instruction 1 for determining and formatting additional names.

3. Enter information for Secured Party or Total Assignee, determined and formatted per Instruction 1.  To include further additional Secured Parties, attach either Addendum (Form UCC1Ad) or Additional Party (Form UCC1AP) and follow Instruction 1 for determining and formatting additional names.  If there has been a total assignment of the Secured Party's interest prior to filing this form, you may either (1) enter Assignor S/P's name and address in item 3 and file an Amendment (Form UCC3) [see item 5 of that form]; or (2) enter Total Assignee's name and address in item 3 and, if you wish, also attaching Addendum (Form UCC1Ad) giving Assignor S/P's name and address in item 12.

4. Use item 4 to indicate the collateral covered by this Financing Statement.  If space in item 4 is insufficient, put the entire collateral description or continuation of the collateral description on either Addendum (Form UCC1Ad) or other attached additional page(s).

5. If filer desires (at filer's option) to use titles of lessee and lessor, or consignee and consignor, or seller and buyer (in the case of accounts or chattel paper), or bailee and bailor instead of Debtor and Secured Party, check the appropriate box in item 5.  If this is an agricultural lien (as defined in applicable Commercial Code) filing or is otherwise not a UCC security interest filing (e.g., a tax lien, judgment lien, etc.), check the appropriate box in item 5, complete items 1-7 as applicable and attach any other items required under other law.

6. If this Financing Statement is filed as a fixture filing or if the collateral consists of timber to be cut or as-extracted collateral, complete items 1-5, check the box in item 6, and complete the required information (items 13, 14 and/or 15) on Addendum (Form UCC1Ad).

7. This item is optional.  Check appropriate box in item 7 to request Search Report(s) on all or some of the Debtors named in this Financing Statement.  The Report will list all Financing Statements on file against the designated Debtor on the date of the Report, including this Financing Statement.  There is an additional fee for each Report.  If you have checked a box in item 7, file Search Report Copy together with Filing Officer Copy (and Acknowledgment Copy).  Note: Not all states do searches and not all states will honor a search request made via this form; some states require a separate request form.

8. This item is optional and is for filer's use only.  For filer's convenience of reference, filer may enter in item 8 any identifying information (e.g., Secured Party's loan number, law firm file number, Debtor's name or other identification, state in which form is being filed, etc.) that filer may find useful.

EXHIBIT E

CONFESSIONS OF JUDGMENT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JUAN VARGAS, on behalf of himself and all other
similarly situated,                                                                         Docket No. 15-cv-5101

                      Plaintiff,          **AFFIDAVIT FOR JUDGMENT**
                                                  **BY CONFESSION**

          -against-

CHARLES W. HOWARD, and CALL-A-HEAD
CORP.,

                      Defendants.
-------------------------------------------------------------------X

STATE OF NEW YORK    )
                        ) ss.
COUNTY OF _____    )

      **KENNETH HOWARD**, being duly sworn, deposes and states:

      1.      I am an individual residing in the County of Queens, State of New York.  I am also a Vice President of Call-A-Head Corp. ("CAH"), Call-A-Head Portable Toilets, Inc. ("Toilets"), and Call-A-Head Fuel Division, Inc. ("Fuel").

      2.      CAH's, Toilets', and Fuel's principal place of business is located at 304 Cross Bay Boulevard, Broad Channel, New York 11693.

      3.      I confess judgment on behalf of myself, CAH, Toilets, and Fuel and authorize the Clerk of the Southern District of New York, or the Clerk for the County of Queens, New York in the event of default, to enter judgment in favor of Class Representatives Juan Vargas, Girolamo Genova, Edward Kubinski, Riccardo Whittaker, and Peter Fowler ("Class Representatives") on behalf of themselves and the certified class in the above-referenced Action, in the full sum of FOURTEEN MILLION TWO HUNDRED EIGHTY THOUSAND DOLLARS and ZERO CENTS ($14,280,000.00), pursuant to the Settlement Agreement dated February __, 2020, less credit for any payments made, which shall be provable by an Affirmation from Class Counsel in the above-referenced Action (the Marlborough Law Firm, P.C., and/or Slater Slater Schulman, LLP) and pursuant to the attached Declining Security Balance Schedule, and hereby authorize entry of judgment against me CAH, Toilets, and Fuel based on the outstanding security balance on the Declining Security Balance Schedule attached to this Affidavit at **Exhibit 1** in the United States District Court for the Southern District of New York or the Clerk for the County of Queens, New York.

      4.      This confession is for a debt justly due to Class Representatives and the Certified Class in the above-referenced action by reason of the following facts:  A settlement agreement

was negotiated between Class Representatives and me and entered into by me on February __, 2020 ("Settlement Agreement").  I hereby acknowledge that CAH, Toilets, and Fuel, and I have breached the terms of the Settlement Agreement by failing to pay and cure in a timely manner, the payment of money pursuant to the Settlement Agreement dated February __, 2020.

5.      As provided in the Settlement Agreement, the security balance due to Class Representatives is FOURTEEN MILLION TWO HUNDRED EIGHTY THOUSAND DOLLARS and ZERO CENTS ($14,280,000.00), pursuant to the Settlement Agreement dated February __, 2020, less credit for any payments made pursuant to the Declining Security Balance Schedule.  *See,* **Exhibit 1**.

6.      This confession of judgment is not for the purpose of securing Class Representatives against a contingent liability.

7.      During each calendar year, on or before the anniversary of the date of the execution of the Settlement Agreement, I shall execute a new confession of judgment in the same form.  The confessed to amount and the Declining Security Balance Payment Schedule shall be updated to reflect the payments made during the prior calendar year.

**KENNETH HOWARD**

_____

By: Kenneth Howard

Call-A-Head Corp. ("CAH"), Call-A-Head Portable Toilets, Inc. ("Toilets"), and Call-A-Head Fuel Division, Inc. ("Fuel")


CALL-A-HEAD CORP.

_____

By:      Kenneth Howard, Vice President


CALL-A-HEAD PORTABLE TOILETS, INC.

_____

By:      Kenneth Howard, Vice President


CALL-A-HEAD FUEL DIVISION, INC.

_____

By:      Kenneth Howard, Vice President

Sworn before me this
__ day of February 2020

_____

Notary Public

2

**SETTLEMENT PAYMENT AND DECLINING BALANCE SCHEDULE**     Page 1 of 2

**EXHIBIT 1**

|  | Payment Due Date | Payment Amount | Cumulative Payments | Declining $7.14 million Balance | Declining $14.28 million Security Balance |
|---|---|---|---|---|---|
|  | Upon Execution | $240,000 | $240,000 | $6,900,000 | $13,800,000 |
| 1 | 2/15/2020 | $60,000 | $300,000 | $6,840,000 | $13,680,000 |
| 2 | 3/15/2020 | $60,000 | $360,000 | $6,780,000 | $13,560,000 |
| 3 | 4/15/2020 | $60,000 | $420,000 | $6,720,000 | $13,440,000 |
| 4 | 5/15/2020 | $140,000 | $560,000 | $6,580,000 | $13,160,000 |
| 5 | 6/15/2020 | $140,000 | $700,000 | $6,440,000 | $12,880,000 |
| 6 | 7/15/2020 | $140,000 | $840,000 | $6,300,000 | $12,600,000 |
| 7 | 8/15/2020 | $140,000 | $980,000 | $6,160,000 | $12,320,000 |
| 8 | 9/15/2020 | $140,000 | $1,120,000 | $6,020,000 | $12,040,000 |
| 9 | 10/15/2020 | $140,000 | $1,260,000 | $5,880,000 | $11,760,000 |
| 10 | 11/15/2020 | $140,000 | $1,400,000 | $5,740,000 | $11,480,000 |
| 11 | 12/15/2020 | $140,000 | $1,540,000 | $5,600,000 | $11,200,000 |
| 12 | 1/15/2021 | $140,000 | $1,680,000 | $5,460,000 | $10,920,000 |
| 13 | 2/15/2021 | $140,000 | $1,820,000 | $5,320,000 | $10,640,000 |
| 14 | 3/15/2021 | $140,000 | $1,960,000 | $5,180,000 | $10,360,000 |
| 15 | 4/15/2021 | $140,000 | $2,100,000 | $5,040,000 | $10,080,000 |
| 16 | 5/15/2021 | $140,000 | $2,240,000 | $4,900,000 | $9,800,000 |
| 17 | 6/15/2021 | $140,000 | $2,380,000 | $4,760,000 | $9,520,000 |
| 18 | 7/15/2021 | $140,000 | $2,520,000 | $4,620,000 | $9,240,000 |
| 19 | 8/15/2021 | $140,000 | $2,660,000 | $4,480,000 | $8,960,000 |
| 20 | 9/15/2021 | $140,000 | $2,800,000 | $4,340,000 | $8,680,000 |
| 21 | 10/15/2021 | $140,000 | $2,940,000 | $4,200,000 | $8,400,000 |
| 22 | 11/15/2021 | $140,000 | $3,080,000 | $4,060,000 | $8,120,000 |
| 23 | 12/15/2021 | $140,000 | $3,220,000 | $3,920,000 | $7,840,000 |
| 24 | 1/15/2022 | $140,000 | $3,360,000 | $3,780,000 | $7,560,000 |
| 25 | 2/15/2022 | $140,000 | $3,500,000 | $3,640,000 | $7,280,000 |
| 26 | 3/15/2022 | $140,000 | $3,640,000 | $3,500,000 | $7,280,000 |
| 27 | 4/15/2022 | $140,000 | $3,780,000 | $3,360,000 | $7,280,000 |
| 28 | 5/15/2022 | $140,000 | $3,920,000 | $3,220,000 | $7,280,000 |
| 29 | 6/15/2022 | $140,000 | $4,060,000 | $3,080,000 | $7,280,000 |
| 30 | 7/15/2022 | $140,000 | $4,200,000 | $2,940,000 | $7,280,000 |
| 31 | 8/15/2022 | $140,000 | $4,340,000 | $2,800,000 | $7,280,000 |
| 32 | 9/15/2022 | $140,000 | $4,480,000 | $2,660,000 | $7,280,000 |
| 33 | 10/15/2022 | $140,000 | $4,620,000 | $2,520,000 | $7,280,000 |
| 34 | 11/15/2022 | $140,000 | $4,760,000 | $2,380,000 | $7,280,000 |
| 35 | 12/15/2022 | $140,000 | $4,900,000 | $2,240,000 | $7,280,000 |

**SETTLEMENT PAYMENT AND DECLINING BALANCE SCHEDULE**     Page 2 of 2

| 36 | 1/15/2023 | $140,000 | $5,040,000 | $2,100,000 | $7,280,000 |
|----|-----------|----------|------------|------------|------------|
| 37 | 2/15/2023 | $140,000 | $5,180,000 | $1,960,000 | $7,280,000 |
| 38 | 3/15/2023 | $140,000 | $5,320,000 | $1,820,000 | $7,280,000 |
| 39 | 4/15/2023 | $140,000 | $5,460,000 | $1,680,000 | $7,280,000 |
| 40 | 5/15/2023 | $140,000 | $5,600,000 | $1,540,000 | $7,280,000 |
| 41 | 6/15/2023 | $140,000 | $5,740,000 | $1,400,000 | $7,280,000 |
| 42 | 7/15/2023 | $140,000 | $5,880,000 | $1,260,000 | $7,280,000 |
| 43 | 8/15/2023 | $140,000 | $6,020,000 | $1,120,000 | $7,280,000 |
| 44 | 9/15/2023 | $140,000 | $6,160,000 | $980,000 | $7,280,000 |
| 45 | 10/15/2023 | $140,000 | $6,300,000 | $840,000 | $7,280,000 |
| 46 | 11/15/2023 | $140,000 | $6,440,000 | $700,000 | $7,280,000 |
| 47 | 12/15/2023 | $140,000 | $6,580,000 | $560,000 | $7,280,000 |
| 48 | 1/15/2024 | $140,000 | $6,720,000 | $420,000 | $7,280,000 |
| 49 | 2/15/2024 | $140,000 | $6,860,000 | $280,000 | $7,280,000 |
| 50 | 3/15/2024 | $140,000 | $7,000,000 | $140,000 | $7,280,000 |
| 51 | 4/15/2024 | $140,000 | $7,140,000 | $0 | $0 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JUAN VARGAS, on behalf of himself and all other
similarly situated,                                                            Docket No. 15-cv-5101

                                        Plaintiff,                    **AFFIDAVIT FOR JUDGMENT
                                                                        BY CONFESSION**

                        -against-

CHARLES W. HOWARD, and CALL-A-HEAD
CORP.,

                                        Defendants.
-------------------------------------------------------------------X

STATE OF NEW YORK      )
                       ) ss.
COUNTY OF _____    )

        **CHARLES W. HOWARD**, being duly sworn, deposes and states:

        1.      I am an individual residing in the County of Queens, State of New York.  I am also a President of Call-A-Head Corp. ("CAH"), Call-A-Head Portable Toilets, Inc. ("Toilets"), and Call-A-Head Fuel Division, Inc. ("Fuel").

        2.      CAH's, Toilets', and Fuel's principal place of business is located at 304 Cross Bay Boulevard, Broad Channel, New York 11693.

        3.      I confess judgment on behalf of myself, CAH, Toilets, and Fuel and authorize the Clerk of the Southern District of New York, or the Clerk for the County of Queens, New York in the event of default, to enter judgment in favor of Class Representatives Juan Vargas, Girolamo Genova, Edward Kubinski, Riccardo Whittaker, and Peter Fowler ("Class Representatives") on behalf of themselves and the certified class in the above-referenced Action, in the full sum of FOURTEEN MILLION TWO HUNDRED EIGHTY THOUSAND DOLLARS and ZERO CENTS ($14,280,000.00), pursuant to the Settlement Agreement dated February __, 2020, less credit for any payments made, which shall be provable by an Affirmation from Class Counsel in the above-referenced Action (the Marlborough Law Firm, P.C., and/or Slater Slater Schulman, LLP) and pursuant to the attached Declining Security Balance Schedule, and hereby authorize entry of judgment against me CAH, Toilets, and Fuel based on the outstanding security balance on the Declining Security Balance Schedule attached to this Affidavit at **Exhibit 1** in the United States District Court for the Southern District of New York or the Clerk for the County of Queens, New York.

        4.      This confession is for a debt justly due to Class Representatives and the Certified Class in the above-referenced action by reason of the following facts:  A settlement agreement

1

was negotiated between Class Representatives and me and entered into by me on February __, 2020 ("Settlement Agreement").  I hereby acknowledge that CAH, Toilets, and Fuel, and I have breached the terms of the Settlement Agreement by failing to pay and cure in a timely manner, the payment of money pursuant to the Settlement Agreement dated February __, 2020.

5.      As provided in the Settlement Agreement, the security balance due to Class Representatives is FOURTEEN MILLION TWO HUNDRED EIGHTY THOUSAND DOLLARS and ZERO CENTS ($14,280,000.00), pursuant to the Settlement Agreement dated February __, 2020, less credit for any payments made pursuant to the Declining Security Balance Schedule.  *See,* **Exhibit 1**.

6.      This confession of judgment is not for the purpose of securing Class Representatives against a contingent liability.

7.      During each calendar year, on or before the anniversary of the date of the execution of the Settlement Agreement, I shall execute a new confession of judgment in the same form.  The confessed to amount and the Declining Security Balance Payment Schedule shall be updated to reflect the payments made during the prior calendar year.

CHARLES W. HOWARD

_____

By: Charles W. Howard

Call-A-Head Corp. ("CAH"), Call-A-Head Portable Toilets, Inc. ("Toilets"), and Call-A-Head Fuel Division, Inc. ("Fuel")

CALL-A-HEAD CORP.

_____

By: Charles W. Howard, President

CALL-A-HEAD PORTABLE TOILETS, INC.

_____

By:     Charles W. Howard, President

CALL-A-HEAD FUEL DIVISION, INC.

_____

By:     Charles W. Howard, President

Sworn before me this
__ day of February 2020

_____

Notary Public

2

**SETTLEMENT PAYMENT AND DECLINING BALANCE SCHEDULE**      Page 1 of 2

**EXHIBIT 1**

|  | Payment Due Date | Payment Amount | Cumulative Payments | Declining $7.14 million Balance | Declining $14.28 million Security Balance |
|---|---|---|---|---|---|
|  | Upon Execution | $240,000 | $240,000 | $6,900,000 | $13,800,000 |
| 1 | 2/15/2020 | $60,000 | $300,000 | $6,840,000 | $13,680,000 |
| 2 | 3/15/2020 | $60,000 | $360,000 | $6,780,000 | $13,560,000 |
| 3 | 4/15/2020 | $60,000 | $420,000 | $6,720,000 | $13,440,000 |
| 4 | 5/15/2020 | $140,000 | $560,000 | $6,580,000 | $13,160,000 |
| 5 | 6/15/2020 | $140,000 | $700,000 | $6,440,000 | $12,880,000 |
| 6 | 7/15/2020 | $140,000 | $840,000 | $6,300,000 | $12,600,000 |
| 7 | 8/15/2020 | $140,000 | $980,000 | $6,160,000 | $12,320,000 |
| 8 | 9/15/2020 | $140,000 | $1,120,000 | $6,020,000 | $12,040,000 |
| 9 | 10/15/2020 | $140,000 | $1,260,000 | $5,880,000 | $11,760,000 |
| 10 | 11/15/2020 | $140,000 | $1,400,000 | $5,740,000 | $11,480,000 |
| 11 | 12/15/2020 | $140,000 | $1,540,000 | $5,600,000 | $11,200,000 |
| 12 | 1/15/2021 | $140,000 | $1,680,000 | $5,460,000 | $10,920,000 |
| 13 | 2/15/2021 | $140,000 | $1,820,000 | $5,320,000 | $10,640,000 |
| 14 | 3/15/2021 | $140,000 | $1,960,000 | $5,180,000 | $10,360,000 |
| 15 | 4/15/2021 | $140,000 | $2,100,000 | $5,040,000 | $10,080,000 |
| 16 | 5/15/2021 | $140,000 | $2,240,000 | $4,900,000 | $9,800,000 |
| 17 | 6/15/2021 | $140,000 | $2,380,000 | $4,760,000 | $9,520,000 |
| 18 | 7/15/2021 | $140,000 | $2,520,000 | $4,620,000 | $9,240,000 |
| 19 | 8/15/2021 | $140,000 | $2,660,000 | $4,480,000 | $8,960,000 |
| 20 | 9/15/2021 | $140,000 | $2,800,000 | $4,340,000 | $8,680,000 |
| 21 | 10/15/2021 | $140,000 | $2,940,000 | $4,200,000 | $8,400,000 |
| 22 | 11/15/2021 | $140,000 | $3,080,000 | $4,060,000 | $8,120,000 |
| 23 | 12/15/2021 | $140,000 | $3,220,000 | $3,920,000 | $7,840,000 |
| 24 | 1/15/2022 | $140,000 | $3,360,000 | $3,780,000 | $7,560,000 |
| 25 | 2/15/2022 | $140,000 | $3,500,000 | $3,640,000 | $7,280,000 |
| 26 | 3/15/2022 | $140,000 | $3,640,000 | $3,500,000 | $7,280,000 |
| 27 | 4/15/2022 | $140,000 | $3,780,000 | $3,360,000 | $7,280,000 |
| 28 | 5/15/2022 | $140,000 | $3,920,000 | $3,220,000 | $7,280,000 |
| 29 | 6/15/2022 | $140,000 | $4,060,000 | $3,080,000 | $7,280,000 |
| 30 | 7/15/2022 | $140,000 | $4,200,000 | $2,940,000 | $7,280,000 |
| 31 | 8/15/2022 | $140,000 | $4,340,000 | $2,800,000 | $7,280,000 |
| 32 | 9/15/2022 | $140,000 | $4,480,000 | $2,660,000 | $7,280,000 |
| 33 | 10/15/2022 | $140,000 | $4,620,000 | $2,520,000 | $7,280,000 |
| 34 | 11/15/2022 | $140,000 | $4,760,000 | $2,380,000 | $7,280,000 |
| 35 | 12/15/2022 | $140,000 | $4,900,000 | $2,240,000 | $7,280,000 |

**SETTLEMENT PAYMENT AND DECLINING BALANCE SCHEDULE**     Page 2 of 2

| | | | | | |
|---|---|---|---|---|---|
| 36 | 1/15/2023 | $140,000 | $5,040,000 | $2,100,000 | $7,280,000 |
| 37 | 2/15/2023 | $140,000 | $5,180,000 | $1,960,000 | $7,280,000 |
| 38 | 3/15/2023 | $140,000 | $5,320,000 | $1,820,000 | $7,280,000 |
| 39 | 4/15/2023 | $140,000 | $5,460,000 | $1,680,000 | $7,280,000 |
| 40 | 5/15/2023 | $140,000 | $5,600,000 | $1,540,000 | $7,280,000 |
| 41 | 6/15/2023 | $140,000 | $5,740,000 | $1,400,000 | $7,280,000 |
| 42 | 7/15/2023 | $140,000 | $5,880,000 | $1,260,000 | $7,280,000 |
| 43 | 8/15/2023 | $140,000 | $6,020,000 | $1,120,000 | $7,280,000 |
| 44 | 9/15/2023 | $140,000 | $6,160,000 | $980,000 | $7,280,000 |
| 45 | 10/15/2023 | $140,000 | $6,300,000 | $840,000 | $7,280,000 |
| 46 | 11/15/2023 | $140,000 | $6,440,000 | $700,000 | $7,280,000 |
| 47 | 12/15/2023 | $140,000 | $6,580,000 | $560,000 | $7,280,000 |
| 48 | 1/15/2024 | $140,000 | $6,720,000 | $420,000 | $7,280,000 |
| 49 | 2/15/2024 | $140,000 | $6,860,000 | $280,000 | $7,280,000 |
| 50 | 3/15/2024 | $140,000 | $7,000,000 | $140,000 | $7,280,000 |
| 51 | 4/15/2024 | $140,000 | $7,140,000 | $0 | $0 |